# Exhibit A

J897HIRC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

ESTATE OF YONADAV HIRSHFELD,
et al.,

                    Plaintiffs,

          v.                              18 Civ. 1982 (KPF)

THE BANK OF CHINA LIMITED,

                    Defendant.

------------------------------x
                                          New York, N.Y.
                                          August 9, 2019
                                          12:00 p.m.

Before:

                    HON. KATHERINE POLK FAILLA

                                          District Judge

               APPEARANCES (via telephone)

LAW OFFICES OF PAUL G. GASTON
     Attorneys for Plaintiffs
BY:  PAUL G. GASTON

SCHER & SCHER P.C.
     Attorneys for Plaintiffs
BY:  DANIEL J. SCHER

DORSEY & WHITNEY LLP
     Attorneys for Defendant
BY:  LANIER SAPERSTEIN
     JOSHUA KORNFIELD
     MARK SULLIVAN
     SHAN JIANG

                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

J897HIRC

(In open court)

THE COURT:  Counsel, good afternoon.  This is Judge Failla.  I thank you very much for participating in this call by phone.  Please state your appearances.

MR. GASTON:  Good afternoon, your Honor.  This is Paul Gaston on behalf of plaintiffs.  And Mr. Perlin regrets he cannot join us today because it's already Friday night in Israel, and he did not want to ask for another continuance, so I will be handling the conference with Mr. Scher.

MR. SCHER:  Mr. Scher is on the line also for the plaintiff.  Dan Scher.

THE COURT:  Yes.  And welcome to you both.  I certainly understand did Mr. Perlin, and we understand and that's fine.  My expectation, gentlemen, is I will be presenting my opinion, but I don't know that I would have much in the way of colloquy with the parties.

Representing Bank of China, may I have appearances, please.

MR. SAPERSTEIN:  This is Lanier Saperstein on behalf of Bank of China from Dorsey & Whitney.  I have three of my colleagues with me:  Mr. Mark Sullivan, Josh Kornfield and Shan Jiang.

THE COURT:  OK.  Welcome to all of you, and thank you very much.

All right.  Let me then please begin.  And let me

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

J897HIRC

begin by not apologizing but recognizing that there are more exciting things to do than listen to a judge read into the record a decision, but I want to give you a decision at the earliest opportunity I had, and I didn't want to trouble you all to come in here just to hear me read it, so I appreciate your accommodations in that regard.

And I also wanted you to know -- and I am sure you all know -- that the Second Circuit issued a decision yesterday -- I don't have a number for the case other than the name is Siegel v. HSBC Bank -- upholding a decision of Judge Cote's. I believe that there are some similarities and some differences, but to the extent you wanted to make me aware of a very recently issued decision in this area, I wanted you to know that I am aware of a recently issued decision in this area. So, I'll just put that to the side for a moment.

Our conference this afternoon is for me to render an oral decision on defendant's motion for judgment on the pleadings, and I will just cut to the chase and explain, for the reasons I'm about to address, I am denying the motion.

I do want to make clear that I found both side's materials, but particularly the defense's materials and oral presentation, to be excellent, and so I imagine that's cold comfort to you given the result I'm about to give, but really it was very good and made me think a lot.

The issue, the way I see it -- and I think this will

J897HIRC

be reflected at various points in my decision -- is that both sides are very well versed in this area of the law, and I think as a result the defense is able to call to my attention so many cases that touch on these areas of the law.  And the plaintiffs, through their very experienced counsel, are able to submit pleadings that address -- within the bounds of Rule 11 of course -- each of the issues that have been raised in these cases.

So, I find ultimately that the plaintiffs have, if you will, threaded the needle necessary to have this case survive a motion for judgment on the pleadings.

You are all familiar with the allegations of the amended complaint, so to keep you from remaining on this call forever, I'm not giving a full recitation of the facts.  I will be addressing the procedural history only as necessary.

Although this decision touches on all of the issues raised by the parties, I'm discussing some in greater depth than others.  I will briefly resolve the issues regarding the political question and Totten doctrines, and devote more of my time to the personal jurisdiction arguments and as well the arguments for primary and secondary liability under the ATA and JASTA.  If there is a point on any of these issues that hasn't been addressed fully, I promise you that it has been considered, and I am not going to get to that level of granularity in resolving this motion at this stage.

J897HIRC

I will speak very briefly, because again you all are very well aware of the law in this area, but a motion for a judgment on the pleadings is subject to the same standards as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). There are so many cases for that proposition; I will give you one: *Bank of New York v. First Millennium, Inc.*, 607 F.3d 905 (2d Cir. 2010). And in this setting I am to "draw all reasonable inferences in the non-moving party's favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." I am quoting there from *Faber v. Metropolitan Life Insurance Company*, 648 F.3d 98, 104 (2d Cir. 2011). "To survive a motion to dismiss, a pleading must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" I will just say *Ashcroft v. Iqbal* and *Bell Atlantic Corporation v. Twombly*, I'm confident everyone on this call is aware of those cases. "While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge a non-moving party's claims across the line from conceivable to plausible.'" "Where a pleading alleges facts that are merely consistent with liability, it stops short of the line between possibility and plausibility of entitlement to relief." That said, I am not to accept legal conclusions or threadbare recitals or conclusory statements. Those do not suffice.

J897HIRC

Let me turn, please, to the political question doctrine. "Prominent on the surface of any case held to involve a political question is found, one, a textually demonstrable constitutional commitment of the issue to a coordinate political department; or, two, a lack of judicially discoverable and manageable standards for resolving it; or, three, the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or, four, the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of the government; or, five, an unusual need for unquestioning adherence to a political decision already made; or, six, the potentiality of embarrassment from multifarious pronouncements by various departments on one question." And that is a long quote from *Baker v. Carr*, 369 U.S. 186, a Supreme Court decision from 1962.

Defendant here argues that this case should be dismissed primarily under the second, but also under the first, fourth and sixth *Baker* factors, and principally defendant argues that the instant action is nonjusticiable because plaintiffs do not have the power or ability to compel the production of evidence -- namely from Israel or the People's Republic of China -- that would be necessary to support the core claims in this case.

I want to be clear -- and that's why I'm reading this

J897HIRC

statement -- to be sure, in the related lawsuits, as the parties have defined them, plaintiffs were unable to obtain the necessary evidentiary cooperation from Israel and the PRC, but I cannot automatically discredit plaintiffs' arguments that the passage of time may have altered the landscape or that similar evidence might be available from third parties.  At the very least, I cannot definitively decide this issue until I am presented with a discovery dispute or told myself about Israel's or the PRC's unwillingness to cooperate, and, accordingly, the motion to dismiss under the political question doctrine is denied.

Turning to the Totten doctrine, which was set forth initially in *Totten v. United States*, 92 U.S. 105, from 1875, and expanded upon by *Tenet v. Doe*, 544 U.S. 1, in 2005, I have been asked by the defense to apply the Totten rule to bar plaintiffs' claims, all of which defendant claims are impossible to litigate without improperly disclosing classified information.

At the moment, I find the instant case to be too tenuous a connection to the ideas and the policy goals of *Totten* or *Tenant*.  While *Totten* concerned a contract dispute between a U.S. spy and the federal government, the instant matter involves Bank of China's support of Hamas.  Here, the very subject matter of the action is not a state secret.  Even if it were, the Court is not convinced that it is required to

J897HIRC

expand *Totten* to cases involving state secrets of foreign states. And for this reason the motion to dismiss under the Totten doctrine is denied.

I'm going to spend a little bit more time on this issue of personal jurisdiction. The parties do not dispute that Bank of China is not subject to general jurisdiction, and so we're really focusing on specific jurisdiction in this case. And in the framework of specific jurisdiction, I may exercise personal jurisdiction over a defendant if it has been properly served, if I have a statutory basis for exercising personal jurisdiction, and if the exercise of personal jurisdiction comports with constitutional due process. I am citing here to *Licci v. Lebanese Canadian Bank*, 673 F.3d 50 (2d Cir). And the parties are disputing whether under Federal Rule of Civil Procedure 4(k)(1)(A), personal jurisdiction lies under New York CPLR 302(a)(1), which is the New York long arm statute relating to non-domiciliaries that transact business in New York. To establish personal jurisdiction under this provision, the defendant must have transacted business within the state and the claim asserted must have arisen from that business activity.

The crux of the issue in this regard is the role played by a correspondent bank, more precisely whether Bank of China's use of a correspondent account in New York to send money from Iran to a Bank of China account in China meets the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

J897HIRC

requirements of New York's long arm statute.

In the complaint plaintiffs allege that "Bank of China repeatedly used its New York branch office to transfer or aid in the transfer of substantial sums of money to, from, and on behalf of Hamas, Iran, and others to enable Hamas to carry out its terrorist activities, including the terrorist shooting." Conversely, defendant argues that Bank of China merely maintained a correspondent account in New York, which is insufficient in and of itself to confer jurisdiction under CPLR 302(a)(1). And for the reasons that follow, I find that plaintiffs have sufficiently pleaded the requirements of New York's long arm statute.

Now, as a threshold matter, I agree with the defendant that the use of a correspondent bank account isn't *per se* jurisdictional -- I am citing here to *Amigo Foods Corporation v. Marine Midland Bank of New York*, 39 N.Y.2d 391, a Court of Appeals New York decision from 1976 -- and, rather, the key jurisdictional inquiry relates to the frequency and the deliberate nature of the defendant's role in these transactions. And that is another *Licci* decision, this one from New York State Court, 20 N.Y.3d 327 (2012). The most recent cases on this issue in New York courts would be this third *Licci* decision and *Al Rushaid v. Pictet & Cie*, 28 N.Y.3d 316 (2016), which focus my attention on several factors including the number of transfers, by whom the transfers were

initiated, through what banks, and the degree to which the correspondent bank was aware of and permitted rather than rejected the transfers.

Now, considering Bank of China's activities in light of these factors, I find that defendant's correspondent banking activity, as pleaded, is sufficient to establish a purposeful course of dealing constituting the transaction of business in New York under CPLR Section 302(a)(1). As alleged in the operative complaint, Bank of China conducted dozens of wire transfers for Hamas, totaling millions of dollars and, according to plaintiffs, these dollar transfers were initiated by Hamas and Iranian officials in Iran, Syria and other Middle Eastern countries, and they were executed by and through Bank of China's branches in the United States. The operative complaint further asserts that Bank of China had a policy of turning a blind eye to its customers' involvement in terrorism, going so far as to advise its customers as to how it might conceal the nature and identity of their U.S. banking transactions. I am accepting -- as I must at this stage -- the well-pleaded but nonconclusory allegations in the operative complaint as true, and I find that those allegations suffice to give the Court personal jurisdiction over Bank of China.

Defendants argue that Bank of China did not have an active role in the correspondent banking process because the transfers were initiated by customers at Middle Eastern banks,

J897HIRC

and I find that ultimately to be unavailing, because I believe this argument ignores the fact that while Bank of China allegedly provided banking services to Hamas, it was Hamas itself who was sending the money and therefore initiating the transfers, not Bank of China. Quoting from *Al Rushaid*, "A foreign bank with a correspondent account that repeatedly approves deposits and the movement of funds through that account for the benefit of its customer is no less 'transacting business in New York' because the customer, or a third party at the customer's direction, actually deposits or transfers the funds to New York." That quote is from 28 N.Y.3d at 328. Here, as in *Licci* and *Al Rushaid*, the quantity and quality of the alleged contacts, as pleaded in the complaint, establish a course of dealing with New York, and the transaction and claim are not merely coincidental.

Plaintiffs have made a *prima facie* showing of personal jurisdiction pursuant to New York's long arm statute, and precisely for this reason I am not addressing plaintiffs' proffered alternative bases for personal jurisdiction, including New York corporations law, the New York banking law and Federal Rules of Civil Procedure 4(k)(1)(C) and 4(k)(2), and I am denying the motion to dismiss for lack of personal jurisdiction.

I am now addressing the issues of primary and secondary liability under the ATA and JASTA, and I am denying

J897HIRC

defendant's motion on these bases as well.  But I will note, as I suggested at the beginning of this decision, I'm at the motion for the judgment on the pleadings stage, and I am obligated, based on the cases that I have read to you earlier, to accept the well-pleaded allegations of the operative complaint.

Letting this case go forward, I am saying nothing about my view of the strength of the allegations or the likely disposition in a summary judgment motion.  And for this reason, and given how I am bound to accept the well-pleaded allegations, I am addressing these arguments somewhat briefly.

The ATA defines the term "international terrorism" as activities that:  A, involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any state, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State; B, appear to be intended (i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by mass destruction, assassination or kidnapping; and, C, occur primarily outside the territorial jurisdiction of the United States.

And with regards to primary liability, defendant's first argument is that plaintiffs do not allege an act of

international terrorism because Bank of China's routine banking services were neither violent nor life endangering. Now, although the provision of material support is not a *per se* violation of the ATA, it can satisfy the violent acts or dangerous to human life prongs of the ATA. And that is *Lind v. Arab Bank, PLC*, 882 F.3d 314 (2d Cir. 2018). And here I find the plaintiffs sufficiently -- I would say barely is perhaps a strong term -- but they do make it, they sufficiently allege that Bank of China's banking services were used for violent or life-endangering purposes. As alleged in the complaint, Bank of China executed transfers for known Hamas operatives. They were aware of the Hamas affiliations, and the transfers were necessary for the attack at issue here.

Secondly, defendant argues that plaintiffs have not met the general *mens rea* requirement of the ATA or the more demanding scienter requirements of the underlying criminal statutes. Here the Court disagrees. Plaintiffs allege that in April of 2005, Israeli government officials told officials at the PRC that the transfers were being used by Hamas to enhance its ability to plan and carry out terrorist attacks. And I find that that allegation suffices to plead Bank of China's actual knowledge.

Finally, with regard to primary liability, the defendant asserts that plaintiffs have not sufficiently alleged that Bank of China's banking services were the proximate cause

Case 1:19-cv-05394-BMG Document 25-1 Filed 03/27/20 Page 15 of 21 PageID #14
Case 1:18-cv-01982-KPF Document 64 Filed 08/22/19 Page 14 of 20 PageID #197
J897HIRC

of plaintiffs' injuries. And looking now at the ATA's "by reason of" requirement, as set forth in 18 U.S.C. Section 2333(a), a plaintiff must show that a defendant's alleged conduct was the proximate cause of the plaintiff's injury. Quoting here from *Rothstein v. UBS AG*, 708 F.3d 82, 89 (2d Cir. 2013). And to put that a little bit differently, the alleged violation must have led directly to the plaintiff's injuries; the defendant's acts must be a substantial factor in the sequence of responsible causation; and the plaintiff's injury must be reasonably foreseeable or anticipated as a natural consequence.

Here I find that the plaintiffs have sufficiently alleged proximate causation. The amended complaint alleges the following: Number one, beginning in 2003 Bank of China conducted dozens of wire transfers for Hamas, totaling several million dollars; number two, many of these transfers were made to the accounts of Said al-Shurafa, a senior officer and agent of both Hamas and the PIJ; and, three, al-Shurafa then effected these transfers to Hamas leadership for the purpose of planning, preparing for, and executing terrorist attacks; number four, Bank of China's provision of these wire transfers allowed Hamas to carry out the Mercaz Harav attack. Defendant's argument that plaintiffs have not sufficiently tied al-Shurafa to Hamas is unavailing at this stage of the litigation. Again, at this stage plaintiffs have made a

sufficient showing.

I turn briefly to secondary liability under JASTA, otherwise known as the Justice Against Terrorism Act, an act in 2016, that specifically was engaged or implemented in order to amend the ATA to permit claims for secondary liability for aiding and abetting in a conspiracy. JASTA includes two statutory requirements: Number one, that an act of "international terrorism" be "committed, planned or authorized" by an FTO, and two, that a defendant conspire with the person who committed the act of "international terrorism" or knowingly and substantially aid and abet the act of "international terrorism." And Congress has instructed courts to apply the legal framework set forth in *Halberstam v. Welch*, the D.C. Circuit decision from 1983, to consider aiding and abetting and conspiracy liability. In this regard as well, defendant makes two arguments: First, defendant argues that plaintiffs do not sufficiently allege the *Halberstam* elements of conspiracy -- specifically that there was an agreement between Bank of China and Hamas to participate in a terrorist attack and, second, defendant asserts that plaintiffs have failed to allege two elements of aiding and abetting liability: Number one, the awareness and knowledge requirement; and, number two, substantial assistance. But here again plaintiffs' allegation that the Israeli government sent a delegation to China to spell out to China and by extension the Bank of China the

Case 1:19-cv-05394-BMG Document 25-1 Filed 03/27/20 Page 17 of 21 PageID #16
Case 1:18-cv-01982-KPF Document 64 Filed 08/22/19 Page 16 of 20

J897HIRC
199

significance of its assistance to Hamas suffices to meet all of these elements at the pleading stage.

Therefore, and for all of these reasons, I am dismissing the motion for judgment on the pleadings in its entirety.

Now, of course, I want counsel to think about my decision, but it would seem to me that the next step would be the discussion or meeting between the parties to propose a discovery schedule to me.

There is a case management plan that I have on my web page that would give suggested dates. I do not know if this is a case in which the parties would prefer a more tailored or more bespoke case management plan that addresses the issues in this case.

So, turning to Mr. Gaston, sir, you might need some time to do this. How much time would you like to confer with your adversaries and propose something to me?

MR. GASTON: Well, I think we could confer and propose something pretty quickly, but I would also like to mention that we already have discovery requests outstanding, and they have been served on defendant since about six or seven months ago. But as to scheduling and deadlines and so on, I think we do have to discuss that.

THE COURT: Well, all right. Then perhaps I should ask the question of your adversary.

Case 1:19-cv-05394-BMG Document 25-1 Filed 03/27/20 Page 18 of 21 PageID #: 17
Case 1:18-cv-01982-KPF Document 64 Filed 08/22/19 Page 17 of 20
200
J897HIRC

Mr. Saperstein, I want you to have the time that you need to speak with your adversaries but, as well, to consider these pending discovery requests that did not need to be answered while this motion was pending. So, how much time would you like to have that opportunity to review those requests, think about the time that is necessary and speak with your adversaries before proposing something to me?

MR. SAPERSTEIN: I think in order to respond to their requests, I believe I would have 30 days, and that's what I would request to respond to them.

But if I might suggest -- and this is what I will suggest to plaintiffs' counsel -- is that perhaps we do discovery by a staggered process. So, for example, it's clear from your decision that the April 2006 meeting is critical and central to the plaintiffs' allegations, so I would propose that perhaps we focus on whether Israel will agree to make a witness available. Because once we have that answer, we can move into the political question doctrine, to see if it's ripe then, as well as addressing the core allegations of plaintiffs' claim.

THE COURT: Let me please do this, because I know already that the parties will not reach agreement on this issue, so I'm going to do something a little bit different.

Mr. Gaston, would you be able to provide for me a letter in two week's time, on or before the 23rd of August, outlining how plaintiffs believe discovery should be

Case 1:19-cv-05394-BMG Document 25-1 Filed 03/27/20 Page 19 of 21 PageID #18
Case 1:18-cv-01982-KPF Document 64 Filed 08/22/19 Page 18 of 20
201
J897HIRC

structured.

MR. GASTON:  Yes, certainly.

THE COURT:  Thank you very much.

Mr. Saperstein, would you be able to provide for me a letter on or before August 23, so two weeks from today, regarding how the defense believes discovery should be structured?

MR. SAPERSTEIN:  Your Honor, if I may ask for an extra week, and it's for a purely selfish reason.  I'm slated to be on vacation between the 17th and I believe the 22nd.  Obviously, I can work while I'm on vacation, but I would rather not.

THE COURT:  Yes.  Sir, I don't want you to think that I am so cruel that I will make you work on your vacation.  You'll come to realize later on how cruel or not I am.  So, I will give both of you until the 30th.  Certainly, if you turn it in earlier, that's great, but I won't look at it until I have both of them.

I'm just going to say this -- and you will do with this whatever you think is appropriate -- you're not going to agree; I can tell that already.  But, rather, perhaps -- perhaps in your letters to me you might want to present certain fall-back positions.  It's fine if you want to -- if you will excuse the baseball metaphor -- you can hit for singles or you can hit for home runs, but if you try to hit for the home run

J897HIRC

and strike out, then you may be in a worse position.  So, perhaps you want to give me your dream proposal, how discovery would be if you were ruling this courtroom, and then perhaps give me a fallback position so I can see if there is any commonality between the parties.  But I do understand both of your positions about discovery, and I'm not surprised by either of them.

So, I will hear from you on or before the 30th of August.  In the interim, I wish you all a happy rest of your summer, a happy Friday today.

I am confident that one or both of you will get the transcript in this case, and when you order it, I will receive it automatically.  And I will talk to you in the future.

So, Mr. Gaston, is there anything else you want to bring to my attention today?

MR. GASTON:  No, your Honor.

THE COURT:  All right.  Thank you.

And thank you as well to Mr. Scher for sitting in on the call.

MR. SCHER:  Thank you.

THE COURT:  Mr. Saperstein, anything else you want to bring to my attention today?

MR. SAPERSTEIN:  May I just confer with my colleagues just for one second?

THE COURT:  Of course.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

J897HIRC

MR. SAPERSTEIN:  No, your Honor.  Thank you.

THE COURT:  Mr. Saperstein, to the extent the folks in the room with you assisted you with your written and oral submissions, please thank them on my behalf as well.

MR. SAPERSTEIN:  Thank you.  I will.

THE COURT:  All right.  Thank you.  We are adjourned.

– – –