UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

**ESTATE OF EITAM HENKIN**, )
**ESTATE OF NAAMA HENKIN, I.Z.H.**, )
a minor, by his guardians ad litem YOAV )
ARMONI and DAVID JACKSON, )
**M.H.H.**, a minor, by his guardians ad litem )
YOAV ARMONI and DAVID JACKSON, )
**N.E.H.**, a minor, by his guardians ad litem )
YOAV ARMONI and DAVID JACKSON, )
and **N.Y.H.**, a minor, by his guardians ad )
litem YOAV ARMONI and DAVID )
JACKSON )
)
        Plaintiffs, )
)
-v- )
)
KUVEYT TÜRK KATILIM BANKASI A.Ş., )
)
        Defendant. )

------------------------------------------------------------ x

No. 19-cv-05394-BMC

**DEFENDANT KUVEYT TÜRK KATILIM BANKASI A.Ş.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**

Oral Argument Requested

## TABLE OF CONTENTS

|  |  |  | Page |
|---|---|---|---|
| ARGUMENT | | | 1 |
| I. | PLAINTIFFS' ATA CLAIM MUST BE DISMISSED | | 1 |
| | A. | No Allegations Indicate that Kuveyt Türk Was Generally Aware It Was Assuming a Role in Terrorist Activities | 1 |
| | B. | Plaintiffs' General Awareness Case Law Does Not Rescue Their Deficient Allegations | 4 |
| | C. | Plaintiffs Fail to Adequately Allege that Kuveyt Türk Knowingly and Substantially Assisted the Attack on the Henkin Family | 7 |
| II. | NON-U.S. CITIZEN PLAINTIFFS MUST BE DISMISSED | | 9 |
| CONCLUSION | | | 10 |

## **TABLE OF AUTHORITIES**

**Page**

**CASES**

*Averbach v. Cairo Amman Bank*,
  2020 WL 486860 (S.D.N.Y. Jan. 21, 2020) ............................................................... 2, 8, 9, 10

*Estate of Hirshfeld v. Bank of China*,
  No. 18 Civ. 1982 (KPF) (S.D.N.Y. Aug. 9, 2019) ................................................................. 4

*Estates of Ungar ex rel. Strachman v. Palestinian Authority*,
  304 F. Supp. 2d 232 (2004) ................................................................................................. 10

*Goldberg v. UBS AG*,
  660 F. Supp. 2d 410 (E.D.N.Y. 2009) ................................................................................... 7

*Honickman v. BLOM Bank*,
  2020 WL 224552 (E.D.N.Y. Jan. 14, 2020) ....................................................................... 2, 8

*Kaplan v. Lebanese Canadian Bank*,
  405 F. Supp. 3d 525 (S.D.N.Y. 2019) ................................................................................ 2, 9

*Knox v. PLO*,
  442 F. Supp. 2d 62 (S.D.N.Y. 2006) ................................................................................... 10

*Lelchook v. Commerzbank AG*,
  No. 10 Civ. 5795, 2011 WL 4087448 (S.D.N.Y. Aug. 1, 2011) .......................................... 10

*Lelchook v. Islamic Republic of Iran*,
  393 F. Supp. 3d 261 (E.D.N.Y. 2019) ................................................................................ 4, 5

*Linde v. Arab Bank*,
  No. CV 04 2779, 2004 WL 3546133 (E.D.N.Y. Aug. 10, 2004) ........................................... 5

*Linde v. Arab Bank, PLC*,
  882 F.3d 314 (2d Cir. 2018) ........................................................................................... 3, 4, 8

*Miller v. Arab Bank*,
  372 F. Supp. 3d 33 (E.D.N.Y. 2019) .................................................................................. 4, 5

*National Council of Resistance of Iran v. Department of State*,
  373 F.3d 152 (D.C. Cir. 2004) ............................................................................................... 6

*Rosenberg v. Lashkar-e-Taiba*,
  2016 U.S. Dist. LEXIS 87724 (E.D.N.Y. July 5, 2016) ........................................................ 9

*Siegel v. HSBC North America Holdings*,
  933 F.3d 217 (2d Cir. 2019)......................................................................................................4, 6, 8

*Strauss v. Crédit Lyonnais*,
  2006 WL 2862704 (E.D.N.Y. Oct. 5, 2006).............................................................................7

*Weinstock v. Islamic Republic of Iran*,
  No. 17-23272-Civ, 2019 WL 1993778 (S.D. Fla. Apr. 2, 2019)..............................................10

**STATUTES**

18 U.S.C. § 2333(a) ...................................................................................................................9, 10

18 U.S.C. § 2339B ..........................................................................................................................3

**RULES**

Fed. R. Civ. Proc. 12(b)(6) .............................................................................................................8

Defendant Kuveyt Türk[1] respectfully submits this reply memorandum in support of its Motion. Plaintiffs' Opposition does not cure the fatal deficiencies in the Complaint. Critically, Plaintiffs have alleged no facts suggesting that Kuveyt Türk had *any* knowledge that its customers were connected to Hamas, much less that the Bank assumed a role in *any* terrorist activities by allegedly providing routine, arms'-length banking services to the three customers at issue. Indeed, Plaintiffs concede that "a negligence claim … is insufficient under the ATA or JASTA." Opp. at 23. But that is all they have pled at best: that the Bank should have known—based upon three media reports—that one of its 5.6 million customers had connections to Hamas. That does not give rise to liability under the ATA, and such threadbare allegations do not satisfy Plaintiffs' pleading obligations. Plaintiffs similarly fail to sufficiently allege that Kuveyt Türk provided substantial assistance to those responsible for the attack on the Henkin family. Even if the Complaint were not subject to dismissal for failure to state a claim, under the plain language of the ATA, the claims of the Estate of Mrs. Henkin, and of the Henkin children, must be dismissed because they are not U.S. nationals.[2]

## ARGUMENT

I. **PLAINTIFFS' ATA CLAIM MUST BE DISMISSED.**

   A. **No Allegations Indicate that Kuveyt Türk Was Generally Aware It Was Assuming a Role in Terrorist Activities.**

Plaintiffs allege that the Bank is liable for an attack in the West Bank because Kuveyt Türk provided ordinary financial services to three customers in Turkey. To establish the Bank's "general awareness," Plaintiffs point to three media reports that allege a connection between only one customer (Islamic University of Gaza) and Hamas. Mot. at 9. Even though the insufficiency

---

[1] Capitalized terms herein have the same meanings as set forth in Kuveyt Türk's opening brief (ECF No. 24-1) ("Motion").

[2] Defendant rests on its initial briefing on its personal jurisdiction defense and other issues.

1

of these media allegations is Kuveyt Türk's lead argument for dismissal (Mot. at 7-15), Plaintiffs obfuscate the issue, burying discussion of it on page 21 of their Opposition. The result, however, remains the same: Plaintiffs' allegations are simply insufficient for two reasons.

**First**, Plaintiffs fail to allege any facts showing that the Bank was aware that it had a customer with ties to Hamas. Plaintiffs' retort sounds only in negligence: "any financial institution would have understood that transactions routed to the Gaza Strip presented the highest possible risk for terror financing." Opp. at 21. But Plaintiffs cite no authority for their extreme proposition that the ATA makes banking with customers in the Gaza Strip a strict liability activity. To the contrary, courts in this Circuit ***unanimously*** agree that "[a]llegations that a defendant bank was generally aware [that] it was playing a role i[n] terrorist activities by virtue of media and non-U.S. governmental designations that its account holders supported or were terrorist organizations are insufficient absent allegations that the defendant actually read or was aware of the designations and media reports." *Averbach v. Cairo Amman Bank*, 2020 WL 486860, at *12 (S.D.N.Y. Jan. 21, 2020), *report & rec. adopted by* 2020 WL 1130733 (S.D.N.Y. Mar. 9, 2020). *See also Kaplan v. Lebanese Canadian Bank*, 405 F. Supp. 3d 525, 535 (S.D.N.Y. 2019) (dismissing aiding-and-abetting claim because, among other reasons, "Plaintiffs nowhere allege[d] … that [the bank] read or was aware of [the media] sources"); *Honickman v. BLOM Bank*, 2020 WL 224552, at *8 (E.D.N.Y. Jan. 14, 2020) (dismissing aiding-and-abetting claim because, among other reasons, there were no allegations "that BLOM or any of its employees actually knew or should have known of any of the cited sources, or that BLOM would otherwise have a reason to review or consider th[e cited] sources in the course of its operations").

Plaintiffs do not grapple with these cases except to assert without support that the *Kaplan* and *Honickman* courts "missapl[ied] the governing … standard." Opp. at 27. They do not even

cite or discuss *Averbach*. Those cases were rightly decided and reject attempts—like the one here—to transform the ATA into a sweeping strict liability or negligence standard for the world.

**Second**, even if Plaintiffs could allege three media reports establish that Kuveyt Türk knew it had a customer with a connection to Hamas, Plaintiffs allege no additional facts to show that the Bank "in providing such services, … was 'generally aware' that it was thereby playing a 'role' in Hamas's violent or life-endangering activities." *Linde v. Arab Bank, PLC*, 882 F.3d 314, 329 (2d Cir. 2018). As the Second Circuit has emphasized, alleging that a defendant assumed a role in terrorist activities "requires [alleging] more than the provision of material support to a designated terrorist organization." *Id*. *See also* Mot. at 7-8 (citing cases). Here, Plaintiffs allege no additional facts to establish the Bank's awareness that it was playing a role in terrorism.

In response, Plaintiffs contend that Defendant's interpretation of *Linde* "cannot logically be correct" (Opp. at 25) and cite primary liability case law involving material support criminal statutes.[3] Those primary liability cases, however, do not address the scienter requirement for aiding-and-abetting liability under JASTA. Because the *actus reus* for aiding and abetting is often distant from the harm, it is not surprising that the Second Circuit has imposed a scienter standard that requires a defendant to be "'generally aware' that" by providing financial services "it was thereby playing a 'role' in violent or life-endangering activities." *Linde*, 882 F.3d at 329. As the Second Circuit has explained, such requirement "is different from the *mens rea* required to establish material support in violation of 18 U.S.C. § 2339B, which requires only knowledge of the organization's connection to terrorism, not intent to further its terrorist activities or awareness

---

[3] *See, e.g.*, Opp. at 22, 24, 31, 34 (citing *Holder v. Humanitarian Law Project*, 561 U.S. 1, 31 (2010) (analyzing 18 U.S.C. § 2339B); *Linde v. Arab Bank, PLC*, 97 F. Supp. 3d 287, 323 (E.D.N.Y. 2015) (citing to 18 U.S.C. § 2339A's and § 2339B's material support provisions), *vacated on other grounds*, 882 F.3d 314 (2d Cir. 2018); *Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 474 (E.D.N.Y. 2012) (assessing causation requirement for material support); *Goldberg v. UBS AG*, 660 F. Supp. 2d 410, 429 (E.D.N.Y. 2009) (discussing material support and primary liability)).

that one is playing a role in those activities." *Id.* at 329-30  Indeed, the Second Circuit reaffirmed this interpretation in *Siegel v. HSBC North America Holdings*, 933 F.3d 217, 224 (2d Cir. 2019) (quoting same language from its decision in *Linde* in affirming dismissal for failure to plead general awareness and substantial assistance).  In short, the Second Circuit has repeatedly stressed that scienter for secondary liability requires more than knowingly providing "material support" to terrorists (which Plaintiffs fail to allege)—it also requires facts indicating the assumption of a role in terrorist activity (which Plaintiffs further fail to allege).

> **B. Plaintiffs' General Awareness Case Law Does Not Rescue Their Deficient Allegations.**

Unable to meet the applicable legal standards for pleading, Plaintiffs instead rely on inapposite cases and seek to distinguish *Siegel* with an *alter ego* theory.  But these efforts only underscore the deficiencies in the Complaint.

**First**, Plaintiffs argue that their general awareness allegations are sufficient, relying upon this Court's opinion in *Miller v. Arab Bank*, 372 F. Supp. 3d 33 (E.D.N.Y. 2019), as well as the opinions in *Lelchook v. Islamic Republic of Iran*, 393 F. Supp. 3d 261, 266 (E.D.N.Y. 2019) and *Estate of Hirshfeld v. Bank of China*, No. 18 Civ. 1982 (KPF) (S.D.N.Y. Aug. 9, 2019) (Ex. A to Pls.' Opp.).  *See* Opp. at 19.  But the facts alleged to support general awareness in those cases differ dramatically from the facts alleged here.

The courts in those three cases held that the plaintiffs alleged that the banks had ***actual information*** that could establish their general awareness that they were playing a role in terroristic acts.  In *Miller*, this Court identified several "red flags" indicating that the bank knew it was assisting terrorism:  "Arab Bank received lists for the Insurance Scheme that identified violent causes of death—including 'Martyr Operation'"; "FinCEN reported … that Arab Bank failed to investigate after learning that it provided financial services to entities that the United States

government later designated as terrorist organizations"; "the complaints identif[ied] at least one Arab Bank employee who reached out to a terrorist to explain that he [was] eligible for payment for his injuries"; and "Arab Bank pledged $2,000,000 to support [the Second Intifada], and the Chairman of Arab Bank personally pledged $500,000." 372 F. Supp. 3d at 39, 45. Similarly, in *Lelchook*—which involved an uncontested entry of default judgment after counsel withdrew—the district court found without elaboration that the bank "was ***more than generally aware*** that it was playing a significant role in financing th[e] wrongful act" of Hezbollah. 393 F. Supp. 3d at 267 (emphasis added). And in *Hirshfeld*, plaintiffs alleged that Israeli government officials *told* Chinese officials "that the transfers were being used by Hamas to enhance its ability to plan and carry out terrorist attacks," and "spell[ed] out to China and by extension the Bank of China the significance of its assistance to Hamas." Ex. A to Pls.' Opp. at 13:17-20, 15:24-16:1.

Plaintiffs make no similar factual allegations here to establish Kuveyt Türk's actual general awareness. Instead, Plaintiffs resort to knocking down a strawman, arguing that the allegations in *Miller* are irrelevant because they need not plead the use or knowledge of "martyr lists" to support general awareness. Opp. at 19-20. That misses the point. This Court found that the *Miller* plaintiffs satisfied the general awareness element because such allegations sufficed to show that Arab Bank "was generally aware of its role in violent activities." 372 F. Supp. 3d at 47. In contrast, Plaintiffs can identify ***no*** allegations in their Complaint that Kuveyt Türk knew of its customers' alleged ties to Hamas, much less that it knew it was assuming a role in terrorist activity.[4]

---

[4] That the *Miller* plaintiffs brought their claims after years of discovery in the previous Arab Bank cases (including *Linde*) does not change the analysis. As discussed previously, the allegations in *Linde* prior to discovery were much more substantial than the allegations here. Mot. 10-11. For example, the plaintiffs alleged that "Arab Bank actively participate[d] in a formalized process which require[d] the families of so-called martyrs to obtain an official certification of their deceased relative's status as a bona fide martyr, replete with an individualized identification number." First Am. Compl. ¶ 311, *Linde v. Arab Bank*, No. CV 04 2779, 2004 WL 3546133

**Second**, Plaintiffs are unable to distinguish this case from the controlling precedent in *Siegel*. There, the Second Circuit held that mere awareness that an entity is "believed by some to have links" to terrorist organizations is "insufficient to state a claim for aiding-and-abetting liability under JASTA." *Siegel*, 933 F.3d at 224. Plaintiffs attempt to distinguish *Siegel* as a negligence case because "[t]he *Siegel* claims were effectively premised on the banks' failure to take reasonable steps to ensure its … customers did not have links to terrorists." Opp. at 23. But Plaintiffs' allegations here are no different: at best, Plaintiffs have alleged that the Kuveyt Türk *should have* known that its customers had ties to Hamas.

**Third**, in a final effort to save their Complaint, Plaintiffs argue that the customers at issue here are actually "*alter egos*" of Hamas. Opp. at 22-24. But such arguments have no impact on the core scienter issue—Plaintiffs still fail to allege that the Bank was generally aware that it had customers who were connected to Hamas and that by providing services to them, the Bank was playing a role in terroristic activity. In any event, Plaintiffs make no effort to address the legal standard governing the *alter ego* inquiry or show how their allegations satisfy that standard. As Defendant explained (Mot. at 21), to determine whether an entity or individual is an *alter ego* of an FTO, courts in this district have adopted the test articulated in *National Council of Resistance of Iran v. Department of State*, 373 F.3d 152, 157-58 (D.C. Cir. 2004). Plaintiffs do not dispute that this is the standard they must satisfy, nor do they explain how Defendant misapplied the standard in its Motion. Instead, Plaintiffs ignore that test altogether, seemingly contending that allegations of *some* connection between a bank's customers and an FTO are sufficient to render them *alter egos*. Opp. at 13-16. That is not the law.

---

(E.D.N.Y. Aug. 10, 2004), ECF No. 4. Plaintiffs make no similar allegations here, and thus no basis exists to conclude that Plaintiffs adequately have alleged general awareness.

Nevertheless, to support their position, Plaintiffs point to decisions in *Goldberg*, 660 F. Supp. 2d 410 and *Strauss v. Crédit Lyonnais*, 2006 WL 2862704, at *10-11 (E.D.N.Y. Oct. 5, 2006), where certain charities were found to be "agents of HAMAS," arguing that there is "no meaningful distinction" between those charities and IHH and the University. Opp. at 15-16. Though the charities in *Goldberg* and *Strauss* were alleged to be members of the Union of Good, neither court found that allegation dispositive. *See* Mot. at 22. Instead, those courts relied on myriad other factors, including allegations that the entities there were "controlled by Hamas." *Strauss*, 2006 WL 2862704, at *10-11; *Goldberg*, 660 F. Supp. 2d at 417. Moreover, the *Goldberg* court cited *specific* allegations demonstrating that the charity at issue "acted as a[] fundraising agent of Hamas," including allegations that the charity "transfer[red] ... money to sub-organizations of Hamas." 660 F. Supp. 2d at 433. Plaintiffs' Complaint includes *no* allegations that Kuveyt Türk's alleged customers transferred any money to Hamas.

Plaintiffs have failed to satisfy the general-awareness element of JASTA.

### C. Plaintiffs Fail to Adequately Allege that Kuveyt Türk Knowingly and Substantially Assisted the Attack on the Henkin Family.

As explained in Defendant's opening brief, Plaintiffs' Complaint fails to allege that Kuveyt Türk's banking services assisted (substantially or otherwise) the attack on the Henkins and thus must be dismissed. Mot. at 15-19. Plaintiffs' Opposition largely ignores the ATA substantial assistance case law and attempts instead to shift the pleading baseline.

Plaintiffs suggest—relying upon the Second Circuit's *Linde* decision—that this Court is not permitted to find their pleadings deficient on substantial assistance because it involves "factual issues for the trier of fact." Opp. at 27. But this misstates *Linde* and their pleading obligations. *Linde* itself merely held that the appellate court could not hold, as a matter of law, ***in favor*** of plaintiffs on the issue of substantial assistance after a jury trial where the jury was not instructed

- 7 -

on the issue. *See* 882 F.3d at 330 ("[E]ven if a properly charged jury could conclude that Arab Bank's financial services provided substantial assistance … we cannot conclude that such a finding is compelled as a matter of law."). The Second Circuit did not relieve Plaintiffs of their obligations to plead sufficient facts to establish substantial assistance.

In fact, just last year, the Second Circuit affirmed the dismissal of a JASTA complaint for "fail[ure] to allege" facts establishing general awareness and substantial assistance. *Siegel v. HSBC N. Am. Holdings*, 933 F.3d 217, 226 (2d Cir. 2019). In so holding, the Second Circuit analyzed—and expressly rejected as insufficient—allegations attempting to plead substantial assistance. The Second Circuit explained in part that the *Siegel* plaintiffs failed to (i) "plausibly allege[] that HSBC encouraged the heinous ... Attacks," (ii) allege that HSBC "knew or intended that [terrorists] would receive" "hundreds of millions of dollars" in transfers, (iii) allege that HSBC was present at the attacks; and (iv) "plausibly allege that HSBC knowingly assumed a role in [the terrorist group's] activities or otherwise knowingly or intentionally supported" the terrorist group. *Id*. The Second Circuit concluded that the allegations "compel the conclusion that the plaintiffs fail plausibly to plead a claim against HSBC even on their expansive view of JASTA." *Id.*

Consistent with *Siegel*, district courts in this Circuit have repeatedly granted Rule 12(b)(6) motions where the alleged substantial assistance amounted to the provision of ordinary banking services to persons with alleged ties to terrorists. *See, e.g.*, *Honickman v. BLOM Bank*, 2020 WL 224552, at *10-12 (E.D.N.Y. Jan. 14, 2020) (dismissing complaint because "Plaintiffs [made] no non-conclusory assertions that any of the funds processed … actually went to Hamas, or that BLOM, at the time it provided banking services … was aware or intended that Hamas would receive the corresponding funds"); *Averbach v. Cairo Amman Bank*, 2020 WL 486860, at *16 (S.D.N.Y. Jan. 21, 2020), *report & rec. adopted by* 2020 WL 1130733 (S.D.N.Y. Mar. 9, 2020)

(recommending dismissal where plaintiffs "have not pleaded any facts to indicate that CAB's services contributed to the Attacks … have not pleaded that CAB had any type of relationship other than an arms-length business relationship with the Account Holders and have pleaded no relationship at all to Hamas except through the Account Holders"); *Kaplan v. Lebanese Canadian Bank*, 405 F. Supp. 3d 525, 536 (S.D.N.Y. 2019) (dismissing complaint where "although Plaintiffs assert that Defendant processed millions of dollars' worth of wire transfers through the LCB Accounts, Plaintiffs do not plausibly allege that [the terrorist group] received any of those funds"). Plaintiffs here have similarly failed to plead Kuveyt Türk's substantial assistance of the attack on the Henkin family for reasons stated in the Motion, and thus the Complaint should be dismissed.

## II. NON-U.S. CITIZEN PLAINTIFFS MUST BE DISMISSED.

As noted in the Motion, Mrs. Henkin and the Henkin children may not bring claims under the ATA *for their own injuries* because they are not U.S. nationals. *See* Mot. at 23-25. Only U.S. nationals who are injured may sue for their injuries—"or his or her estate, survivors, or heirs, may sue therefore." 18 U.S.C. § 2333(a). As foreign nationals, Mrs. Henkin and the Henkin children cannot sue for their own injuries and, because the Estate of Mr. Henkin is already a plaintiff, they cannot sue on Mr. Henkin's behalf to recover duplicatively for his injuries.

Plaintiffs, however, argue that the ATA provides non-U.S. nationals a right to bring claims for their own injuries. Opp. at 30-32. Indeed, at least two courts have rejected that view as being "incoherent and simply … not accord[ant] with the plain text of the statute." *Averbach v. Cairo Amman Bank*, 2020 WL 486860, at *12 (S.D.N.Y. Jan. 21, 2020), *report & rec. adopted by* 2020 WL 1130733 (S.D.N.Y. Mar. 9, 2020) (holding § 2333(a) "preclude[s] claims by foreign nationals … for personal damages"); *Rosenberg v. Lashkar-e-Taiba*, 2016 U.S. Dist. LEXIS 87724, at *62 (E.D.N.Y. July 5, 2016) ("[T]he statute is clear that only claims brought on behalf of individuals who are United States nationals may proceed under the ATA.").

Plaintiffs' interpretation focuses on the wrong words in § 2333(a)—"estate, survivors, or heirs"—to suggest that all three may bring ATA claims for their own injuries. Opp. at 30-31. This phrase contemplates who may sue, but it does not provide for what they may sue. The scope of available claims is instead set by the word "therefor," which "refer[s] back to that defined injury, confining the ambit of liability to injuries to U.S. nationals." *Averbach*, 2020 WL 486860, at *9.

Many of the cases cited by Plaintiffs (Opp. at 31-32) do not address this statutory interpretation issue.[5] In *Weinstock v. Islamic Republic of Iran*, No. 17-23272-Civ, 2019 WL 1993778, at *6 (S.D. Fla. Apr. 2, 2019), and *Estates of Ungar ex rel. Strachman v. Palestinian Authority*, 304 F. Supp. 2d 232, 270-71 (2004), courts did permit foreign survivors and heirs to obtain ***default judgments*** for their own solatium damages. But those courts did not disentangle the statutory language permitting a survivor to sue from the issue of whether he may sue for his own injuries (as opposed to the injuries of a U.S. national decedent)—understandably so, since the issue was not addressed with the benefit of adversarial briefing. For these reasons, those cases do not provide persuasive statutory analysis and should not be followed.

Because the statutory text and purposes do not permit non-U.S. nationals to sue for their own injuries, the claims of Mrs. Henkin's estate and the Henkin children should be dismissed.

## **CONCLUSION**

For the foregoing reasons, and those set forth in Defendant's moving brief, Defendant respectfully requests that this Court dismiss Plaintiffs' Complaint.

---

[5] *E.g.*, *Knox v. PLO*, 442 F. Supp. 2d 62, 66 n.1 (S.D.N.Y. 2006) ("all Plaintiffs in this action were born and remain American citizens"); *Lelchook v. Commerzbank AG*, No. 10 Civ. 5795, 2011 WL 4087448, at *2-3 (S.D.N.Y. Aug. 1, 2011) (holding that children, mother, and brother are heirs or survivors of decedent (all of whom were U.S. nationals, *see* Compl. ¶ 1, No. 10-cv-579 (S.D.N.Y. July 30, 2010), ECF No. 1.)).

Dated: April 24, 2020  Respectfully submitted,

**JONES DAY**

By: /S/ Steven T. Cottreau
    Steven T. Cottreau (NY Bar 475857)
    51 Louisiana Avenue, N.W.
    Washington, D.C. 20001.2113

    Fahad A. Habib (*pro hac vice*)
    Paul Hines (*pro hac vice*)
    Emily F. Knox (*pro hac vice*)
    555 California Street, Suite 2600
    San Francisco, CA 94104.1500

    *Attorneys for Defendant*
    *KUVEYT TÜRK KATILIM BANKASI A.Ş.*