# JONES DAY

51 LOUISIANA AVENUE, N.W. • WASHINGTON, DC 20001.2113

TELEPHONE: +1.202.879.3939 • JONESDAY.COM

Direct Number: 2028795572
scottreau@jonesday.com

October 12, 2022

<u>VIA ECF</u>

Hon. Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    *Estate of Eitam Henkin v. Kuveyt Türk Katilim Bankasi A.Ş.*, No. 19-cv-05394-BMC

Dear Judge Cogan:

      On behalf of defendant Kuveyt Türk Katilim Bankasi A.Ş. ("Defendant" or "Kuveyt Türk"), and pursuant to Your Honor's Individual Rule of Practice III.A.2., we respectfully request reconsideration of the Court's order denying Kuveyt Türk's motion to dismiss or, in the alternative, for a pre-motion conference concerning its request to file a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). On September 29, 2022, the Second Circuit issued the following Order: "In light of this Court's subsequent decisions in *Honickman v. BLOM Bank SAL*, 6 F.4th 487 (2d Cir. 2021); *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842 (2d Cir. 2021); and *Weiss v. Nat'l Westminster Bank, PLC.*, 993 F.3d 144 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 2866 (2022), it is ordered that the appeal is dismissed as improvidently granted and remanded for further proceedings in the district court consistent with these decisions." As a result, Kuveyt Türk seeks dismissal of the complaint based upon the holdings in these recent cases, which have clarified that Plaintiffs have failed to adequately allege an ATA claim.

## I.    <u>BACKGROUND</u>

      Plaintiffs are the estates of Eitam and Naama Henkin, who were allegedly killed by members of Hamas while driving in the West Bank in 2015, and their four surviving, minor children. Compl. ¶¶ 7-13, 20-30, ECF No. 1. Plaintiffs allege that by providing financial services in Turkey to three of its millions of customers—IHH Humanitarian Relief Foundation, the Islamic University of Gaza, and Jihad Yaghmour (collectively, "Customers")—Defendant, a major Turkish bank, aided and abetted the attack on the Henkin family under the Anti-Terrorism Act. *Id.* ¶¶ 14, 173-95.

## II.    <u>PROCEDURAL HISTORY</u>

      Plaintiffs filed this action on September 23, 2019, ECF No. 1, and Defendant moved to dismiss, ECF No. 24. The Court denied Defendant's motion, ECF No. 27, but certified its order for interlocutory appeal and stayed the case, ECF No. 36. The Second Circuit likewise granted leave to appeal, ECF No. 41. After oral argument on September 22, 2022, the Second Circuit "dismissed [the appeal] as improvidently granted and remanded [the case] for further proceedings

in [this Court] consistent with" the Second Circuit's intervening decisions in *Honickman*, *Kaplan*, and *Weiss*. ECF No. 44.

## III.   RELIEF SOUGHT

In accordance with the Second Circuit's order remanding this case for further proceedings in light of intervening authority, Kuveyt Türk seeks reconsideration of this Court's prior order denying its motion to dismiss for failure to state a claim. *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) ("A motion for reconsideration should be granted only when the defendant identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." (internal quotation marks omitted) (citation omitted)). In the alternative, Kuveyt Türk seeks judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) because the complaint does not "plead 'enough facts to state a claim to relief that is plausible on its face,' and to 'allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ji Dong Cheng v. HSBC Bank USA, N.A.*, 511 F. Supp. 3d 248, 251-52 (E.D.N.Y. 2021).

Dismissal is appropriate because the Second Circuit's intervening decisions in *Honickman*, *Kaplan*, and *Weiss* made clear that the "general awareness" prong of *Halberstam* requires plaintiffs to plead that (1) "[the defendant] was aware of [its customers'] connections with [the FTO] before the relevant attacks" and "(2) the [customers] were so closely intertwined with [the FTO's] violent terrorist activities that one can reasonably infer [the defendant] was generally aware of its role in unlawful activities from which the attacks were foreseeable while it was providing financial services to [the customers]." *Honickman*, 6 F.4th at 501; *see also Kaplan*, 999 F.3d at 860-61 (same); *Weiss*, 993 F.3d at 166 (plaintiffs failed to "show … that NatWest was generally aware that it was playing a role in Hamas's acts of terrorism" because "charities to which NatWest transferred funds … performed charitable work and …, Interpal did not indicate to NatWest that the transfers were for any terroristic purpose").

With respect to the first element—general awareness—this Court did not apply the Second Circuit's newly clarified test, and instead analyzed only whether Kuveyt Türk "was aware of the various warning signs and red flags about its customers from which they could infer that the funds from these accounts would make their way to Hamas." ECF No. 27, at 14. Without the benefit of these Second Circuit decisions, this Court did not consider whether Plaintiffs' allegations satisfied the ***separate*** requirement that Kuveyt Türk's customers "were so closely intertwined with Hamas's violent terrorist activities that one can reasonably infer that [Kuveyt Türk] was generally aware while it was providing banking services to [the Customers] that it was playing a role in unlawful activities from which Hamas's attacks were foreseeable." *Honickman*, 6 F.4th at 499 (cleaned up).

Plaintiffs' allegations do not satisfy this closely intertwined requirement. The Second Circuit's recent decisions illustrate this point. In *Kaplan*, for instance, the defendant-bank's customers were alleged to be "integral constituent parts" of Hezbollah, and to have "provide[d] financial reassurance to '*prospective*' suicide bombers"—thereby satisfying the closely

Hon. Brian M. Cogan
October 12, 2022
Page 3

intertwined requirement. 999 F. 3d at 849-50, 858. In *Honickman*, the Second Circuit contrasted the nature of the alleged customers, noting the "meaningful difference between the alleged functions of the Three Customers"—who were alleged to be a part of "Hamas's social welfare program"—"and those … customers in *Kaplan*," and suggested that the former were not "closely intertwined" with violent terrorist activities. 6 F.4th at 503 & n.21. And in *Weiss*, the defendant bank admitted that it was "aware of [its customers] 'alleged' links to Hamas," but the claim failed because there was no foreseeable nexus between the transfers at issue and terrorism. 993 F.3d at 155, 166. Most recently, the D.C. Circuit reiterated this requirement, holding that "[t]he pleadings do not adequately allege that [the intermediary] was so closely intertwined with al-Qaeda that we can infer [the defendant-bank] was aware it was assuming a role in al-Qaeda's terrorist activities simply by doing business with [the intermediary]" "[g]iven the extensive legitimate operations of [the intermediary] … and the absence of any allegation that a substantial part of these operations involved al-Qaeda." *Bernhardt v. Iran*, 2022 WL 4074415, at *8 (D.C. Cir. Sept. 6, 2022). Here, as in *Honickman*, *Weiss*, and *Bernhardt*, the Customers are untethered from violent terrorist activities and thus fail the closely intertwined element.

The pleading requirement may be further clarified by the Supreme Court this Term, as the Court granted certiorari in *Twitter, Inc. v. Taamneh*, No. 21-1496 (petition granted Oct. 3, 2022). In *Taamneh*, Twitter appeals from the denial of its motion to dismiss the plaintiffs' claim that it aided and abetted a 2017 ISIS attack on a nightclub in Turkey by allowing ISIS to distribute content. Before the Court in *Taamneh* is (1) "whether a defendant that provides generic, widely available services to all its numerous users and 'regularly' works to detect and prevent terrorists from using those services 'knowingly' provided substantial assistance" and (2) "whether a defendant whose generic, widely available services were not used in connection with the specific 'act of international terrorism' that injured the plaintiff may be liable for aiding and abetting." The answers to these questions may fundamentally impact this case. Though Defendant does not request a stay, the *Taamneh* grant underscores the importance of properly applying the pleading standard in cases like this one.[1]

---

[1] As to the second element—substantial assistance—this Court held that Plaintiffs need not allege that Defendant had "actual knowledge of [the] red flags that could have apprised them of their customer's nefarious activities." ECF No. 27, at 16. But that is exactly what the Second Circuit explained was required in *Kaplan*. 999 F.3d 863-64 ("[T]he actual knowledge component of the *Halberstam* standard requires that the defendant 'know[]' that it is providing 'assistance,' whether directly to the FTO or indirectly through an intermediary." (citation omitted)). Assistance that is given "innocently or inadvertently" does not meet this prong. *Id.* at 864. Critically, while a complaint may contain "general allegations" of a defendant's "actual knowledge" that it is assisting in the principal violation—be it directly or indirectly—plaintiffs are "required to include allegations of the facts or events they claim give rise to an inference of knowledge" in order to plead knowing and substantial assistance. *Id.* at 863-64.

JONES DAY

Hon. Brian M. Cogan
October 12, 2022
Page 4

                                                       Respectfully submitted,

                                                       <u>/s/ Steven T. Cottreau</u>

                                                       Steven T. Cottreau

cc:    Michael A. Petrino (via electronic mail and ECF)
         Jonathan E. Missner (via ECF)
         Gary M. Osen (via ECF)
         Aaron Schlanger (via ECF)
         Gavriel Marone (via ECF)