

MICHAEL A. PETRINO
mpetrino@steinmitchell.com | **Direct** 202.601.1604

2000 K Street, NW Suite 600
Washington, DC 20006

P 202.737.7777
F 202.296.8312

www.steinmitchell.com

June 12, 2023

**VIA ECF**

Hon. Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

  Re: *Estate of Eitam Henkin, et al. v. Kuveyt Bank*, No. 1:19-cv-05394-BMC

Dear Judge Cogan:

  Plaintiffs write in response to Defendant's June 7, 2023, letter, ECF No. 55, advising the Court of the decision in *Twitter, Inc. v. Taamneh*, 143 S. Ct. 1206 (2023). The letter incorrectly asserts that *Twitter* supersedes (*sub silentio*) governing JASTA authorities in this Circuit, *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842 (2d Cir. 2021) and *Honickman v. BLOM Bank SAL*, 6 F.4th 487 (2d Cir. 2021).

  A district court is "bound by Second Circuit precedent … even when it is in 'tension'" with an intervening Supreme Court decision. *NYTDA, Inc. v. City of New York*, 2022 WL 824147, at *6 n.9 (E.D.N.Y. Mar. 18, 2022). *See also In re Mexican Gov't Bonds Antitrust Litig.*, 2022 WL 950955, at *2-3 (S.D.N.Y. Mar. 30, 2022). This is true unless that decision is "all but certain to overrule" the Circuit precedent. *United States v. Diaz*, 122 F. Supp. 3d 165, 179 (S.D.N.Y. 2015), *aff'd*, 854 F.3d 197 (2d Cir. 2017) (quotation marks and citation omitted). Far from "certainly overruling" this Circuit's JASTA precedent, *Twitter* confirms it, regarding the central crime at which JASTA aims: direct and indirect material support through significant financial services to foreign terrorist organizations. JASTA §§ 2(a)(6) & (7), 2(b). That *active* material support is precisely the crime alleged here, unlike the *passive* conduct in *Twitter*: inaction on generally available social media platforms.

  *Twitter* is thus consistent with *Kaplan* and *Honickman*. *Twitter* states that aiding and abetting under JASTA "does not require a strict nexus between the assistance and the wrongful act; defendants are liable for other torts that are the foreseeable risk of an intended tort, and an aider and abettor can assist someone without knowing all the details of his plan." 143 S. Ct. at 1209. Likewise, the Second Circuit has held that a "defendant need not be generally aware of its role in the specific act that caused the plaintiff's injury; instead, it must be generally aware of its role in an overall illegal activity from which the act that caused the plaintiff's injury was *foreseeable*." *Honickman*, 6 F.4th at 496 (emphasis added). And as the Second Circuit also explained in *Kaplan*, banks, unlike social media companies, have a duty to "*perform due diligence and not provide banking services to terrorist organizations*." 999 F.3d at 849 (quotation marks and citation omitted) (emphasis in original).

In *Twitter*, the Supreme Court held that social media companies that failed "to stop ISIS from using [their] platforms" were not liable for aiding a terrorist attack. 143 S. Ct. at 1227. The Court explained that when allegations amount to "passive nonfeasance," a "strong showing of assistance and scienter would thus be required" to establish conscious and culpable behavior. *Id*. Inaction was not enough—especially absent any nexus between social media services and the attack or any "independent duty" to block terrorist content. *Id.*

The *Twitter* defendants' support was not merely passive; the complaint did not identify any specific ISIS users defendants were specifically aware of and failed to remove from their platforms. The complaint alleged only that the defendants knew ISIS users were accessing and utilizing their platforms generally and failed to more effectively remove ISIS content from their sites. They made their services "generally available to the internet-using public with little to no front-end screening by defendants." *Id.* at 1226. In fact, the *Twitter* plaintiffs' allegations conceded that the social media defendants had no reason to know who was signing up for their platforms and they "attempted to remove at least some ISIS-sponsored accounts and content after they were brought to their attention." *Id.* at 1226 n.13.

As the Supreme Court explained, the defendants' platforms were akin to providing a "public area" for "interactions" which does not suffice to state an-aiding-and-abetting claim:

> [I]t is enough that there is no allegation that the platforms here do more than transmit information by billions of people, most of whom use the platforms for interactions that once took place via mail, on the phone, or in public areas. The fact that some bad actors took advantage of these platforms is insufficient to state a claim that defendants knowingly gave substantial assistance and thereby aided and abetted those wrongdoers' acts.

*Id.* at 1228. Crucially, the "plaintiffs *identif[ied] no duty that would require defendants or other communication-providing services to terminate customers* after discovering that the customers were using the service for illicit ends." *Id.* at 1227 (emphasis added).

Here, conversely, Plaintiffs alleged that Defendant was required to apply due diligence and "know your customer" practices to identify each of its customers, including to specifically ascertain whether they were connected to terrorist groups. Amended Complaint ("AC"), ECF No. 48, ¶¶ 119-22 & n.3 (cited by *Est. of Henkin v. Kuveyt Turk Katilim Bankasi, A.S.*, 495 F. Supp. 3d 144, 151 (E.D.N.Y. 2020), appeal dismissed and remanded, No. 21-513, 2022 WL 18861857 (2d Cir. Sept. 29, 2022)). The Bank had a "duty" to ensure its customers were not "using the service for illicit ends." And Plaintiffs sufficiently alleged that the Bank did in fact know the three customers at issue were Hamas entities/persons, as numerous public sources showed that that information was already well known. *See* 495 F. Supp. 3d at 155-56. Indeed, when Defendant attacked this holding in an interlocutory appeal, the Second Circuit called its permission to bring the appeal "improvidently granted." *Estate of Eitam Henkin, et al. v. Kuveyt Bank*, 2022 WL 18861857, at *1 (2d Cir. Sept. 29, 2022).

Unlike the alleged passive assistance provided by the defendants in *Twitter*, the assistance Defendant is alleged to have provided in this case was active. And it was based on Defendant's particularized knowledge of specific terrorist customers—not generalized

knowledge that some subset of its customers was supporting terrorism. The Bank provided tailored assistance by moving significant sums of money for these three specific customers—not just a general "public area." These distinctions are why banks are heavily regulated and social media services are not. *See Twitter*, 143 S. Ct. at 1227 n.14. (emphasizing that Congress has not "impose[d] a duty to remove content on these types of entities").

Indeed, the Supreme Court found it necessary to treat providing *money* to a terrorist organization distinctly from providing social media services, separately analyzing the plaintiffs' allegation "that Google reviewed and approved ISIS videos on YouTube as part of its revenue-sharing system and thereby shared advertising revenue with ISIS." 143 S. Ct. at 1230. The problem was that the plaintiffs did not allege that sufficient assistance was rendered, leaving the Court to speculate that the *quantity* of assistance provided may have been "only $50." *Id*. Thus, the Supreme Court strongly suggested that facilitating high-dollar terrorist finance *would* warrant a different result. Here Plaintiffs allege that Defendant provided "*at least* hundreds of thousands of Eurodollars through an account at KUVEYT BANK in the name of the IUG," just one of the three alleged Hamas customers. AC, ¶ 419.

Defendant argues that the Supreme Court sought to avoid a construction under which "mostly passive actors like banks become liable for all of their customers' crimes by virtue of carrying out routine transactions." Ltr. at 2 (emphasis omitted). But this proposition was not meant to immunize a bank's *knowing* participation in terror financing. The case the Supreme Court cited for this point, *Monsen v. Consol. Dressed Beef Co.*, simply restates the civil aiding-and-abetting standard: "proof" of "conscious involvement" may be demonstrated by "proof that the alleged aider-abettor 'had general awareness that his role was part of an overall activity that is improper.'" 579 F.2d 793, 799–800 (3d Cir. 1978). That case (like *Halberstam*) also required "substantial assistance … or a duty to disclose the violation…." *Id.* at 800. Plaintiffs here have alleged that Defendant knowingly provided illegal financial services to entities it knows are part of Hamas.

Likewise, on substantial assistance, the Supreme Court affirmed that a "close nexus between the assistance and the tort might help establish that the defendant aided and abetted the tort, but even more remote support can still constitute aiding and abetting in the right case." *Twitter*, 143 S. Ct. at 1225. Defendant incorrectly argues that the assistance must go to the specific attack, confusing aiding and abetting as a legal theory and an *act* of assistance. A defendant may aid and abet an act of international terrorism by directly assisting the injury causing tort, or it may be liable for having "*assisted*" "other torts" that foreseeably *led* to the act of terrorism that caused plaintiff's injury "in appropriate circumstances." *Id.* As the Supreme Court explained, describing a case relied on in *Halberstam*, "a defendant might be held liable for aiding and abetting the burning of a building if he intentionally helped others break into the building at night and then, unknown to him, the others lit torches to guide them through the dark and accidentally started a fire." *Id.* at 1224 (quoting *American Family Mutual Ins. Co. v. Grim*, 440 P.2d 621, 625–626 (1968)). The Second Circuit came to the same conclusions—also relying on *Grim*. *See Honickman*, 6 F.4th at 496 n.9.

Because this Court now has the benefit of the parties' views on the import of *Twitter*, in Plaintiffs' view, there is no need for any additional briefing.

Respectfully submitted,
*/s/ Michael A. Petrino*

Michael A. Petrino (*pro hac vice*)

cc: All counsel of record (via ECF)