UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------- X
ESTATE OF EITAM HENKIN, et al., :
: **MEMORANDUM DECISION AND**
Plaintiffs, : **ORDER**
:
- against - : 19-cv-05394-BMC
:
KUVEYT TÜRK KATILIM BANKASI A.Ş., :
:
Defendant. :
----------------------------------------------------------- X

**COGAN**, District Judge.

This action arises after multiple victims were killed in terrorist attacks in the West Bank in 2015 and 2018. Their estates, survivors, and heirs bring a claim under the civil liability provision of the Anti-Terrorism Act, 18 U.S.C. §2333(a), as amended by the Justice Against State Sponsors of Terrorism Act, against a Turkish bank, Kuveyt Turk Katilimi Bankas, A.S. ("Kuveyt Turk" or "the Bank"). Plaintiffs allege that the Bank aided and abetted Hamas, the terrorist organization responsible for the killings. Kuveyt Turk has moved to dismiss the complaint for lack of personal jurisdiction and failure to state a claim. For the reasons that follow, the case is dismissed for lack of personal jurisdiction.

## BACKGROUND

For purposes of this motion, I accept all of plaintiffs' factual allegations as true. See Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A., 722 F.3d 81, 85 (2d Cir. 2013). Defendant, Kuveyt Turk, is a bank headquartered in Turkey with no presence in the United States. The Bank maintained foreign bank accounts for three parties relevant to this action: (1) the Foundation for Human Rights and Freedoms and Humanitarian Relief ("IHH"), Hamas's "primary Turkish fundraiser"; (2) Islamic University Gaza ("IUG"), a "Hamas institution"; and

(3) Jihad Yaghmour, a "high-ranking HAMAS operative and convicted murderer." Kuveyt Turk also maintained "correspondent" bank accounts in the United States with New York banks in order to make US-dollar denominated transfers.

One of the accounts the bank maintained for IUG was a "Eurodollar" account. According to the complaint, "'Eurodollar' refers to U.S. dollar-denominated deposits at foreign banks or at the overseas branches of American banks." Plaintiffs explain that "[t]he vast majority of Eurodollar funds transferred from bank to bank are cleared and settled in New York." They further allege that from 2012-2016, the Bank transferred "at least hundreds of thousands of Eurodollars through an account . . . in the name of IUG." Plaintiffs claim that, by making these transfers, the Bank aided and abetted Hamas.

IHH, IUG, Yaghmour, and even the Republic of Turkey have strong ties to Hamas and have repeatedly supported the terrorist organization. IHH is a part of the "Union of Good," which has funneled large sums of money to Hamas as a large part of the Hamas fundraising network. Outside of its fundraising activities, IHH was involved in the widely publicized "flotilla incident," during which IDF naval forces were violently attacked and subjected to antisemitic comments.

IUG, although partially operating as a legitimate educational institution which has even produced Fulbright scholars, is also deeply connected with Hamas. IUG is a "recruiting ground[]" for Hamas and has stored and developed weapons for Hamas in its facilities. A former dean of IUG referred to it as "the main stage for preparing, recruiting and directing the faithful among the young" and noted that "the IUG has sacrificed both men and woman shaheeds [martyrs]."

Finally, Jihad Yaghmour is a high-ranking Hamas operative who served as a liaison between Hamas and the Turkish government. The Turkish government has been both a political and financial supporter of Hamas – hosting public meetings and fundraising events for Hamas and even engaging in prisoner exchanges to free Hamas operatives.

## DISCUSSION

### I. Legal Standard

Plaintiffs claim Kuveyt Turk is subject to specific personal jurisdiction pursuant to Federal Rule of Civil Procedure 4(k)(1)-(2). Plaintiffs bear the burden of making a prima facie showing of personal jurisdiction, and the Court is not obligated to accept a plaintiff's legal conclusions regarding jurisdiction. See Jazini v. Nissan Motor Co., 148 F.3d 181, 184-85 (2d Cir. 1998). Plaintiffs put forward two theories of jurisdiction, specifically under 4(k)(1) and (2), but neither theory is correct.

Fed. R. Civ. P. 4(k)(1) allows specific jurisdiction over a defendant where the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment and the forum state's long-arm statute. Although the two standards largely overlap, due process limits the state law standard and serves as the outer bound of what is permissible. See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 732 F.3d 161, 170 (2d Cir. 2013) (although the tests "are not coextensive, and that personal jurisdiction permitted under the long-arm statute may theoretically be prohibited under due process analysis, we would expect such cases to be rare").

To meet the due process requirements, plaintiffs must plausibly allege that (1) the Bank took "some act by which it purposefully avail[ed] itself of the privilege of conducting activities within the forum," and (2) plaintiffs' claim "arise[s] out of or relates to the defendant's contacts with the forum." Ford Motor Co. v. Mont. 8th Jud. Dist., 141 S. Ct. 1017, 1025 (2021). Finally,

plaintiffs must show contacts such that suit in the forum is "reasonable and just according to our traditional conception of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 320 (1945).

To satisfy the first element, courts in this circuit require allegations of specific instances of intentional activity directed at the forum, referred to as "sufficient contacts." See Spetner v. Palestine Inv. Bank, 70 F.4th 632, 645 (2d Cir. 2023); Przewozman v. Charity, No. 20-cv-6088, 2023 WL 2562537 at *12 (E.D.N.Y. Mar. 17, 2023). Vague allegations of contacts with the forum state are not sufficient. Id.

Next, the "arise out of or relate to" element speaks to the "essential foundation of specific jurisdiction" that there be a "strong relationship between the defendant, the forum, and the litigation." Ford, 141 S. Ct. at 1028 (cleaned up). "[T]hat relationship must arise out of contacts that the defendant *himself* creates with the forum." Walden v. Fiore, 571 U.S. 277, 284 (2014).

New York's long arm statute, N.Y. C.P.L.R. § 302, requires that the Bank "transact[ed] business within the state and the cause of action arises from that transaction." Reed Int'l, Inc. v. Afghanistan Int'l Bank, No. 21-cv-10626, 2023 WL 2138600, at *5 (S.D.N.Y. Feb. 21, 2023). The "transacting business" requirement is satisfied by the purposeful availment standard discussed above. Additionally, there must be "a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former." See Licci, 732 F.3d at 168-69.

Alternatively, Rule 4(k)(2) allows personal jurisdiction when there is no other forum available in the United States and "exercise of jurisdiction comports with the Due Process Clause of the Fifth Amendment." Dardana Ltd. v. Yuganskneftegaz, 317 F.3d 202, 207 (2d Cir. 2003).

4

This test is nearly equivalent to the Due Process standard discussed above but bases jurisdiction on contacts with the entire United States rather than just the forum state. Id.

## II. Application

Plaintiffs have not plausibly alleged any relationship between the Bank's contacts with the United States and the terrorist attacks giving rise to their claim. They argue that the "relatedness" requirement is satisfied by paragraphs 4, 5, and 419 of their Amended Complaint, which state as follows:

> 4. [The Bank] . . . transacted business and committed tortious acts within the United States (and New York) by transferring funds through the United States (and New York) for the benefit of the FTO HAMAS and has purposefully availed itself of United States jurisdiction in the course of committing the wrongful acts alleged herein.
>
> 5. Specifically, [the Bank] effectuates its U.S. dollar-denominated funds transfers through the following correspondent banks located in New York:
>
>   a. Citibank NA, account number 36063425;
>
>   b. HSBC Bank NA, account number 000168319;
>
>   c. Standard Chartered Bank, account number 3582020569001; and
>
>   d. Bank of New York Mellon, account number 8900111917.
>
> 419. In the years immediately preceding the acts of terrorism at issue here, [the Bank] knowingly transferred at least hundreds of thousands of Eurodollars through an account at [the Bank] in the name of the IUG – at the direction of Jamal N. al-Khoudary, a HAMAS representative who served as the Chairman of the Board of Trustees of IUG, and, on information and belief, Al-Agha, Jr. an SDGT designated as a HAMAS fundraiser.

These allegations are conclusory, vague, and fail to establish any connection between the attacks at issue and the Bank's correspondent bank accounts in New York. See Daou v. BLC Bank, S.A.L., 42 F.4th 120, 130 (2d Cir. 2022) (Section "302(a)(1) requires that, in light of all the circumstances, there must be an 'articulable nexus' or 'substantial relationship' between the business transaction and the claim asserted."). Although transfers on behalf of IUG, a "Hamas

5

Institution," were allegedly made "[i]n the years immediately preceding the acts of terrorism at issue here," this implied connection is far too tenuous. Plaintiffs allege no relationship between these transfers and the attacks at issue outside of IUG's connection to Hamas in general. Nor have plaintiffs connected the IUG Eurodollar transfers to New York, except to claim that "[t]he vast majority of Eurodollar funds transferred from bank to bank are cleared and settled in New York."

Moreover, we have no idea whether those funds were used to pay IUG professors or one of the innumerable other legitimate costs incurred by a university or whether they were passed on to Hamas and used to fund terrorist attacks. It cannot be that any transfer of money made on behalf of an agent of a large organization is presumptively related to any action that any member of that organization takes. And even if this money did benefit Hamas, that weak and tangential relation to the specific attacks is "completely unmoored" from plaintiffs' claim.

Plaintiffs correctly contend that they do not need to show a causal relationship between the Bank's U.S. contacts and plaintiffs' alleged injuries. Plaintiffs rely on the Second Circuit's decision in Licci, arguing that the contacts in our case are just as related to the claim as the ones that supported jurisdiction there.

But Licci is clearly distinguishable. There, the complaint specifically alleged that the banks' wire transfers through correspondent accounts in New York "caused, enabled, and facilitated the terrorist rocket attacks in which the plaintiffs and their decedents were harmed and killed" and "substantially increased and facilitated H[e]zbollah's ability to plan, to prepare for and to carry out rocket attacks on civilians, including the" attacks at issue. Licci, 732 F.3d 161. Although arguably conclusory, the Licci complaint repeatedly ties the forum contacts to the claim and plaintiffs' injuries.

There are no such allegations here. Indeed, plaintiffs' complaint "does not include a single allegation that defendant used any actual, specific transaction through a New York correspondent account in the course of bringing about the injuries on which the claims are predicated." Daou, 42 F.4th at 132. And whereas the Licci complaint identified specific account numbers for Hezbollah-held accounts at the defendant banks, our plaintiffs do not allege that Hamas itself held an account at Kuveyt Turk, nor have plaintiffs identified the account numbers for IHH, IUG, or Yaghmour. Overall, the connection between Kuveyt Turk's contacts with New York and the claim is far weaker than that in Licci.

The Second Circuit's recent decision in Spetner is more instructive. There, the Court held that "relatedness" was satisfied when the defendant bank facilitated incentive payments to families of suicide bombers in the region where the suicide bombings occurred. These incentive payment checks, many of which included the word "martyr" in the memo line, "were cleared and settled in New York before reaching their ultimate recipients' accounts at other banks." Spetner, 70 F.4th at 638. Although there was no causal connection alleged, this is an example of a "strong" relationship that is not "completely unmoored from the claim." Here, however, allegations of transfers for the benefit of Hamas somewhere down the line are not nearly as related to the claim and do not satisfy this requirement.

Therefore, the relationship between the Bank's contacts with the forum and the claim are too tenuous to support personal jurisdiction.

### III. Jurisdictional Discovery

Courts have "broad discretion" in determining whether to allow limited jurisdictional discovery. Przewozman, 2023 WL 2562537 at *18. Generally, courts permit jurisdictional discovery when a plaintiff "has made a threshold showing" or a "sufficient start" regarding

7

jurisdiction "and shown their position not to be frivolous." <u>Leon v. Shmukler</u>, 992 F. Supp. 2d 179, 195 (E.D.N.Y. 2014); <u>Manhattan Life Ins. Co. v. A.J. Stratton Syndicate</u>, 731 F. Supp. 587, 593 (S.D.N.Y. 1990). Here, given the vague jurisdictional allegations, particularly with respect to relatedness, plaintiffs have failed to make a threshold showing and their jurisdictional allegations are insubstantial. For these reasons, jurisdictional discovery would likely be fruitless and amount to a "fishing expedition." <u>Id.</u> Thus, I deny plaintiffs' request for jurisdictional discovery.

## CONCLUSION

The Bank's motion to dismiss is granted.

**SO ORDERED.**

*Brian M. Cogan*
_____
U.S.D.J.

Dated: Brooklyn, New York
　　　July 28, 2023