UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ESTATE OF EITAM HENKIN, et al.

        Plaintiffs,

-v-

KUVEYT TÜRK KATILIM BANKASI A.Ş.,

        Defendant.

Case No. 19-cv-5394 (BMC)

**DEFENDANT KUVEYT TÜRK KATILIM BANKASI A.Ş.'S
OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION**

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................... 1
ARGUMENT .................................................................................................................................. 2
PLAINTIFFS FAIL TO MEET THE HIGH THRESHOLD FOR RECONSIDERATION ......... 2
    A.     There Is No Intervening Change In Controlling Law ......................................................... 3
    B.     The Court's Decision Is Not Clearly Erroneous Or Manifestly Unjust ............................. 4
          1.     The Court Correctly Applied Second Circuit Precedent ........................................ 4
          2.     The Court Did Not Draw Impermissible Inferences Or Overlook Any Allegations ............................................................................................................... 8
          3.     The Court Correctly Denied Jurisdictional Discovery ........................................... 9
CONCLUSION ............................................................................................................................. 10

# TABLE OF AUTHORITIES

Page

**Cases**

*Am. Transit Ins. Co. v. Bilyk*,
 514 F. Supp. 3d 463 (E.D.N.Y. 2021) ....................................................................2, 3

*Averbach v. Cairo Amman Bank*,
 2023 WL 5016884 (S.D.N.Y. June 30, 2023) ............................................................4

*Axginc Corp. v. Plaza Automall, Ltd.*,
 2021 WL 1030228 (E.D.N.Y. Mar. 2, 2021) ..............................................................4

*Daou v. BLC Bank, S.A.L*,
 42 F.4th 120 (2d Cir. 2022) ...........................................................1, 3, 4, 5, 7, 9

*Ethridge v. Bell*,
 49 F.4th 674 (2d Cir. 2022) ..................................................................................2, 4

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
 141 S. Ct. 1017 (2021) ...............................................................................................5

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*,
 729 F.3d 99 (2d Cir. 2013) .........................................................................................3

*Licci v. Lebanese Canadian Bank*,
 20 N.Y.3d 327 (2012) ................................................................................................6

*Licci v. Lebanese Canadian Bank*,
 732 F.3d 161 (2d Cir. 2013) ...........................................................................3, 4, 5, 6

*Miller v. Arab Bank, PLC*,
 372 F. Supp. 3d 33 (E.D.N.Y. 2019) ..........................................................................4

*Morangelli v. Chemed Corp.*,
 922 F. Supp. 2d 278 (E.D.N.Y. 2013) .......................................................................2

*Singer v. Bank of Palestine*,
 2021 WL 4205176 (E.D.N.Y. April 30, 2021) ..........................................................9

*Spetner v. Palestine Investment Bank*,
 70 F.4th 632 (2d Cir. 2023) ...........................................................1, 3, 4, 5, 6, 7

# TABLE OF AUTHORITIES
(continued)

**Page**

**Cases (continued)**

*Strauss v. Crédit Lyonnais, S.A.*,
　　175 F. Supp. 3d 3 (E.D.N.Y. 2016) ........................................................................................4

# PRELIMINARY STATEMENT

Less than a month ago, this Court ruled that it lacks personal jurisdiction over Kuveyt Türk Katilim Bankasi A.Ş. ("Kuveyt Türk" or the "Bank"). The Court did so, following full briefing and supplemental authority submissions from the parties, in a well-reasoned decision that examined Plaintiffs' allegations and applied Second Circuit authority, including the Circuit's most recent rulings on personal jurisdiction in the context of non-U.S. banks—*Daou v. BLC Bank, S.A.L*, 42 F.4th 120 (2d Cir. 2022) and *Spetner v. Palestine Investment Bank*, 70 F.4th 632 (2d Cir. 2023).

Plaintiffs now ask the Court to reconsider. They seek this extraordinary relief without pointing to any intervening change in controlling law or any new evidence. Indeed, Plaintiffs provide nothing to the Court that it did not have before issuing its decision. Plaintiffs instead recycle arguments they already made and point to allegations and Second Circuit precedent that the Court already addressed. Plaintiffs identify no legal or factual matter that the Court "overlooked" in reaching its decision.

Nor do Plaintiffs demonstrate that the Court's decision was incorrect, much less "clearly erroneous" or "manifestly unjust," as required to warrant reconsideration. The Court properly ruled that Plaintiffs' vague and conclusory allegations regarding unspecified transactions allegedly processed through Kuveyt Türk's correspondent bank accounts in New York—untethered to the terrorist attacks giving rise to Plaintiffs' claims—were insufficient to establish personal jurisdiction.

Plaintiffs fail to articulate any recognized basis for their reconsideration request, and it should be denied.

# ARGUMENT

## PLAINTIFFS FAIL TO MEET
## THE HIGH THRESHOLD FOR RECONSIDERATION

As this Court has recognized, "[a] motion for reconsideration is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Am. Transit Ins. Co. v. Bilyk*, 514 F. Supp. 3d 463, 470 (E.D.N.Y. 2021) (Cogan, J.) (quoting *Drapkin v. Mafco Consol. Grp.*, 818 F. Supp. 2d 678, 695 (S.D.N.Y. 2011)). "The standard for granting a motion for reconsideration is 'strict' and 'reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" *Morangelli v. Chemed Corp.*, 922 F. Supp. 2d 278, 305 (E.D.N.Y. 2013) (Cogan, J.) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)); *see also Ethridge v. Bell*, 49 F.4th 674, 688 (2d Cir. 2022) ("A motion for reconsideration is not an opportunity for a petitioner to relitigate an issue already decided or present arguments that could have been made before the judgment was entered." (internal quotation marks omitted)).

Accordingly, a motion for reconsideration is "properly granted only if there is a showing of (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) a need to correct a clear error or prevent manifest injustice." *Am. Transit Ins. Co.*, 514 F. Supp. 3d at 470 (quoting *Giuffre v. Maxwell*, 2020 WL 917057, at *1 (S.D.N.Y. Feb. 26, 2020)).

Plaintiffs do not suggest that new evidence is available. Instead, they argue that (A) they have identified "controlling law which should alter the Court's conclusion" and (B) reconsideration is needed to "correct a clear error or prevent manifest injustice." ECF No. 64-1, at 6 (hereinafter "Motion"). Plaintiffs plainly fail to make either showing.

## A. There Is No Intervening Change In Controlling Law

Plaintiffs first argue that the Court should grant their motion because they "identified . . . controlling law which should alter the Court's conclusion." Motion at 6. Plaintiffs are wrong.

As an initial matter, Plaintiffs misstate the standard for reconsideration. A court will grant reconsideration when there is an "*intervening* change in controlling law." *Am. Transit Ins. Co.*, 514 F. Supp. 3d at 470 (emphasis added); *see also Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) ("A motion for reconsideration should be granted only when the defendant identifies an *intervening* change of controlling law . . . ." (emphasis added) (internal quotation marks omitted)).

But Plaintiffs do not point to any **intervening** decisions, controlling or otherwise. Each of the decisions Plaintiffs rely upon was issued before the Court's decision. Plaintiffs point to *Licci v. Lebanese Canadian Bank*, 732 F.3d 161 (2d Cir. 2013), even though they extensively relied on it in their Opposition to the Motion to Dismiss. *See* Opp. to Motion to Dismiss, ECF No. 50, at 8-14. Similarly, Plaintiffs cite *Spetner v. Palestine Investment Bank*, 70 F.4th 632 (2d Cir. 2023), despite filing a Notice of Supplemental Authority specifically addressing that case.[1] *See* Notice of Supplemental Authority, ECF No. 59. And Plaintiffs themselves failed to cite *Daou v. BLC Bank, S.A.L.*, 42 F.4th 120 (2d Cir. 2022), even though it was issued on July 28, 2022—before Plaintiffs filed their Opposition.

Far from "overlooking" this authority, the Court discussed each case in detail in its decision. After citing *Licci* for its articulation of the personal jurisdiction standard (ECF No. 62, at 3 (hereinafter "Order")), the Court addressed the case in substance, reviewing its allegations and finding them "clearly distinguishable" from those in this case (*id.* at 6). The Court likewise

---

[1] Plaintiffs expressly acknowledge that "neither the parties nor the Court have identified a material change in the law of personal jurisdiction relevant to JASTA claims, except the Second Circuit's decision in *Spetner*." Motion at 20.

discussed and applied *Spetner*, finding it "more instructive" than *Licci*, and contrasting its jurisdictional allegations with those alleged here. *Id.* at 7. And finally, the Court addressed *Daou*, citing it for its statement of the standard for "relatedness" under New York's long arm statute and analogizing the allegations there to those here. *Id.* at 5, 7.

Plaintiffs' authority therefore is neither "intervening" nor "overlooked" by the Court.[2] Plaintiffs' disagreement with the Court's analysis of existing authority is not a proper basis for reconsideration. *See Ethridge*, 49 F.4th at 688 ("[A] motion for reconsideration provides a narrow basis for relief and precludes the petitioner from re-litigating issues already decided or raising arguments that could have been made prior to the entry of judgment[.]").

**B.  The Court's Decision Is Not Clearly Erroneous Or Manifestly Unjust**

After failing to identify any intervening controlling decisions, Plaintiffs argue that the Court's decision is clearly erroneous because it (1) misapplied Second Circuit precedent, (2) drew impermissible inferences in Kuveyt Türk's favor, and (3) wrongly denied jurisdictional discovery. Plaintiffs are wrong on all counts.

1.  The Court Correctly Applied Second Circuit Precedent

Plaintiffs begin by arguing that the "Court stated an incorrect standard for satisfying the 'relatedness' prong of pleading personal jurisdiction" because it "required Plaintiffs to allege a relationship between these transfers and the attacks at issue outside of IUG's connection to Hamas in general." Motion at 6-7.

---

[2] Plaintiffs also cite several non-binding decisions that likewise predate this Court's Order. *See* Motion at 9 (citing *Miller v. Arab Bank, PLC*, 372 F. Supp. 3d 33 (E.D.N.Y. 2019) & *Strauss v. Crédit Lyonnais, S.A.*, 175 F. Supp. 3d 3 (E.D.N.Y. 2016)), *id.* at 10 (citing *Axginc Corp. v. Plaza Automall, Ltd.*, 2021 WL 1030228 (E.D.N.Y. Mar. 2, 2021) & *Averbach v. Cairo Amman Bank*, 2023 WL 5016884 (S.D.N.Y. June 30, 2023)). Plaintiffs fail to explain how these decisions are relevant for purposes of a reconsideration motion when the decisions (1) are not controlling, and (2) were issued before the Court issued its Memorandum Decision and Order. Moreover, Plaintiffs cited several of these decisions in their briefing at the motion to dismiss stage. *See* Opp. to Motion to Dismiss, ECF No. 50, at 8-11.

Plaintiffs' argument is unfounded. The standard that the Court applied came directly from Second Circuit precedent: relatedness "requires that, in light of all the circumstances, there must be an 'articulable nexus' or 'substantial relationship' between the business transaction and the claim asserted." Order at 5 (quoting *Daou*, 42 F.4th at 130); *see also Spetner*, 70 F. 4th at 643 (requiring plaintiffs to demonstrate an "articulable nexus between [the foreign bank's] alleged conduct and their injuries"); *see also Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1028 (2021) (discussing how specific personal jurisdiction requires "a strong relationship among the defendant, the forum, and the litigation" (internal quotation marks omitted)). In other words, the absence of a meaningful connection between a defendant's U.S. contacts (here, vague and conclusory allegations of correspondent bank account activity) and a plaintiff's claim (here, that Kuveyt Türk aided and abetted three terrorist attacks in the West Bank between 2015 and 2018) requires dismissal for lack of personal jurisdiction.

Plaintiffs then take issue with the Court's application of this standard to their complaint, pointing to *Licci*, *Spetner*, and *Daou*. Motion at 11-17. But the Court specifically examined those decisions and correctly explained why each supports dismissal.

The Court first contrasted Plaintiffs' allegations with those in *Licci*. It noted that the *Licci* "complaint specifically alleged that the banks' wire transfers through correspondent accounts in New York caused, enabled, and facilitated the terrorist rocket attacks in which the plaintiffs and their decedents were harmed and killed and substantially increased and facilitated Hezbollah's ability to plan, to prepare for and to carry out rocket attacks on civilians, including the attacks at issue." Order at 6 (internal quotation marks and alterations omitted). But as this Court correctly held, Plaintiffs here fail to include any allegation that Kuveyt Türk's correspondent bank account

was in fact used to fund Hamas terrorist activities, including the terrorist attacks that injured Plaintiffs, and fail to identify any bank accounts held by Hamas. *Id*.

Plaintiffs concede that the allegations in *Licci* were more substantial as to the relationship between the forum activity and the claims than those in this case. *See* Motion at 13-14. Specifically, Plaintiffs admit that in *Licci* the complaint contained an "allegation that the transfers benefitted [the terrorist's] violent activities," *id.*, whereas here Plaintiffs' complaint fails to allege that the customers associated with Hamas used their account to fund Hamas's terrorist activities. Moreover, in *Licci*, Shahid—a Hezbollah-related entity—"was also alleged to make suicide bombing incentive payments," Motion at 13; *see Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327, 331 n.2 (2012) (discussing how Shahid "allegedly provides support for Hizballah fighters and their surviving families"), thereby further permitting an inference of relatedness. These distinctions, among others, confirm the Court's conclusion that "the connection between Kuveyt Türk's contacts with New York and [Plaintiffs'] claim is far weaker than that in *Licci*." Order at 7.[3]

Similarly, the Court correctly distinguished the allegations in *Spetner*. As the Court recognized, the *Spetner* plaintiffs had alleged that an account holder at the defendant bank "issued dollar-denominated incentive payment checks from his . . . account to the families of terrorists, including the word 'martyr' in the memo line of some checks," and that "the incentive payment checks were cleared and settled in New York before reaching their ultimate recipients' accounts." *Spetner*, 70 F.4th at 638. Plaintiffs here do not specifically identify any payments processed

---

[3] Plaintiffs also incorrectly suggest that "the *Licci* complaint merely asserts" one paragraph about relatedness. Motion at 12 (citing Amended Complaint, *Licci*, No. 08-cv-7253-GBD (S.D.N.Y. Jan. 22, 2009), ECF No. 23, ¶ 117 (the "Amended Complaint")). But the Amended Complaint had an entire section discussing how "Plaintiffs Injuries Are the Result of Defendants' Conduct." *See id.* ¶¶ 113-20. And those paragraphs made allegations such as "[t]he Hizbollah Rocket Attacks were thereby enabled, facilitated and proximately caused by the conduct of defendants Amex Bank and LCB described herein." *Id.* ¶ 119.

through the United States, much less attempt to tie any such payments to the terrorist violence at issue, or even any terrorist violence at all. The Court thus correctly concluded that "allegations of transfers for the benefit of Hamas somewhere down the line are not nearly as related to the claim and do not satisfy this requirement." Order at 7.

Plaintiffs also mischaracterize *Spetner* in an effort to manufacture an error in this Court's reasoning. They rely on *Spetner*'s holding that the *Spetner* plaintiffs had satisfied the relatedness requirement by alleging that the defendants had "*process[ed] payments bearing indicia of terrorism financing on behalf of ALF* and knowingly providing material support to a customer linked to Hamas." 70 F.4th at 643 (emphasis added). But Plaintiffs omit the key allegation that the *Spetner* plaintiffs alleged—that defendants had "process[ed] payments bearing indicia of terrorism financing," *id.*—and that particular allegation was central to the *Spetner* court's holding.

Even if the Court were to ignore that allegation, as Plaintiffs urge, and consider instead only allegations with respect to transfers involving the Holy Land Foundation, that still would support dismissal. Plaintiffs concede (Motion at 16) that in *Spetner*, the Holy Land Foundation was alleged to have distributed martyr payments in the Palestinian Territories, thereby connecting transfers involving the Holy Land Foundation to terrorist violence. Plaintiffs make no similar allegation here.

Plaintiffs similarly are wrong to criticize the Court's application of *Daou*. The Court correctly observed that Plaintiffs here, as in *Daou*, fail to "'include a single allegation that defendant used any actual, specific transaction through a New York correspondent account in the course of bringing about the injuries on which the claims are predicated.'" Order at 7 (quoting *Daou*, 42 F.4th at 132). Plaintiffs dispute the relevance of this passage because they assert that they "alleged that actual transfers through New York *did* occur." Motion at 17. But Plaintiffs

miss the point. The problem with their allegations is that they do not allege any specific transactions at all, much less any related to their claims.

### 2. The Court Did Not Draw Impermissible Inferences Or Overlook Any Allegations

Plaintiffs also are wrong in their assertion that the Court made impermissible inferences in Kuveyt Türk's favor or omitted material allegations. Plaintiffs quibble with the Court's comment that IUG is "partially operating as a legitimate educational institution" and cite various allegations in their complaint that IUG also had significant connections to Hamas. Motion at 18-19. But the Court acknowledged Plaintiffs' allegation that IUG was "deeply connected with Hamas." Order at 2. The Court simply observed that IUG has legitimate functions—which Plaintiffs do not and cannot dispute—any of which could be funded through transfers passing through a U.S. correspondent account. None of Plaintiffs' inference or allegation arguments change this undisputed fact or otherwise call into question the Court's analysis.

Moreover, Plaintiffs' arguments regarding plausible inferences to be drawn in their favor ignore the fundamental problem with their jurisdictional allegations: the failure to identify any transaction made through Kuveyt Türk's correspondent bank account that had any connection to the terrorist attacks at issue, or any terrorist attack at all. Indeed, in an attempt to augment their allegations, Plaintiffs now recite alleged account numbers for the two accounts they alleged in their Complaint. Motion at 16. But this Court accepted as true Plaintiffs' prior allegations of two accounts—and, of course, such accounts would have account numbers. But the fundamental problems that this Court identified remain: (i) "plaintiffs' complaint 'does not include a single allegation that defendant used any actual, specific transaction through a New York correspondent account in the course of bringing about the injuries on which the claims are predicated'" and

(ii) "plaintiffs do not allege that Hamas itself held an account at Kuveyt Turk." Order at 7 (quoting *Daou*, 42 F.4th at 132). For these reasons, the Court correctly found personal jurisdiction lacking.

### 3. The Court Correctly Denied Jurisdictional Discovery

Finally, Plaintiffs ask this Court to reconsider its denial of their request for jurisdictional discovery. They do not dispute the Court's "broad discretion" to determine whether to allow jurisdictional discovery. Order at 7 (quoting *Przewozman v. Charity*, 2023 WL 2562537, at *18 (E.D.N.Y. Mar. 17, 2023)). Nor do they dispute their obligation to make a threshold showing of jurisdiction before jurisdictional discovery is permitted. *Id*. at 7-8.

Plaintiffs instead rely on a footnote in the Court's October 20, 2020, decision denying Kuveyt Türk's initial motion to dismiss, which reserved any ruling on personal jurisdiction issues based upon an agreement the parties reached for purposes of that initial motion. Motion at 20. Plaintiffs do not argue that any such agreement was entered in connection with the subsequent motion to dismiss (none was). Nor do Plaintiffs explain how the Court's endorsement of the parties' request to defer consideration of personal jurisdiction in a prior motion precludes the Court from deciding the issue in a subsequent motion (it does not).

Plaintiffs' reliance on *Singer v. Bank of Palestine*, 2021 WL 4205176 (E.D.N.Y. Apr. 30, 2021), Motion at 20-21, is similarly misplaced. Another district court ruling exercising its "broad discretion" to permit jurisdictional discovery in a different case involving different allegations does not warrant this Court reconsidering its decision to deny discovery in ***this*** case.

The Court's denial of jurisdictional discovery in this case was not clearly erroneous or manifestly unjust. To the contrary, the Court correctly concluded that Plaintiffs' vague and conclusory allegations that Kuveyt Türk used U.S. correspondent bank accounts to clear transactions for its customers are insufficient to warrant jurisdictional discovery. Any such discovery truly would amount to a fishing expedition.

## CONCLUSION

For the reasons set forth above, the Court should deny Plaintiffs' motion for reconsideration.

Dated:  August 28, 2023                               Respectfully submitted,


By: */s/ Mark G. Hanchet*
    Mark G. Hanchet
    Robert W. Hamburg
    MAYER BROWN LLP
    1221 Avenue of the Americas
    New York, New York 10020

    Steven T. Cottreau (NY Bar 4967485)
    JONES DAY
    51 Louisiana Avenue, N.W.
    Washington, D.C.  20001.2113

    Fahad A. Habib (*pro hac vice*)
    Emily Goldberg Knox (*pro hac vice*)
    JONES DAY
    555 California Street, Suite 2600
    San Francisco, CA 94104.1500

    *Attorneys for Defendant*
    *Kuveyt Türk Katilim Bankasi A.Ş.*