UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

——————————————————————————

ESTATE OF EITAM HENKIN, et al.,                    :
                                                    :
                        Plaintiffs,                :        Case No. 19-cv-05394 (BMC)
                                                    :
        -against-                                   :
                                                    :
KUVEYT TÜRK KATILIM BANKASI A.Ş.,                  :
                                                    :
                        Defendant.                  :
——————————————————————————:


**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR
RECONSIDERATION OF MOTION TO DISMISS RULING (ECF Nos. 62 & 63)**

## <u>TABLE OF CONTENTS</u>

ARGUMENT ............................................................................................................. 1

   I.   Defendant's Focus on the "Intervening Change in Law" Basis for Reconsideration Is
      Irrelevant to Plaintiffs' Argument. ..................................................................... 1

   II.  Defendant Cannot Justify the Court's Reading of Controlling Law on Establishing
      Personal Jurisdiction in JASTA Cases. ............................................................... 1

   III. Defendant Cannot Justify the Court's Impermissible Inferences Made in Favor of
      Defendant. .......................................................................................................... 8

   IV. Defendant Has Not Given Any Reason This Court Should Reverse Its Prior Stated
      Intent to Determine Personal Jurisdiction After Discovery. .............................. 9

CONCLUSION ......................................................................................................... 9

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Am. Transit Ins. Co. v. Bilyk*,
  514 F. Supp. 3d. 463 (E.D.N.Y. 2021) ...................................................................................... 1

*Averbach v. Cairo Amman Bank*,
  19-cv-0004-GHW-KHP, 2023 WL 5016884 (S.D.N.Y. June 30, 2023) ..................................... 4

*Axginc Corp. v. Plaza Automall, Ltd.*,
  14 Civ. 4648 (ARR) (VMS), 2021 WL 1030228 (E.D.N.Y. Mar. 2, 2021) .............................. 3

*Daou v. BLC Bank, S.A.L.*,
  42 F.4th 120 (2d Cir. 2022) ...................................................................................................... 7

*Henkin v. Kuveyt Turk Katilim Bankasi, A.S.*,
  495 F. Supp. 3d 144 (E.D.N.Y. 2020) ...................................................................................... 8

*Kaplan v. Lebanese Canadian Bank, SAL*,
  999 F.3d 842 (2d Cir. 2021) ...................................................................................................... 8

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust* (*Kolel*),
  729 F.3d 99 (2d Cir. 2013) ........................................................................................................ 2

*Licci v Lebanese Can. Bank, SAL*,
  20 N.Y.3d 327 (2012).................................................................................................................. 3

*Miller v. Arab Bank, PLC*,
  372 F. Supp. 3d 33 (E.D.N.Y. 2019) ........................................................................................ 3

*Morangelli v. Chemed Corp.*,
  275 F.R.D. 99 (E.D.N.Y. 2011) ................................................................................................ 1

*Morangelli v. Chemed Corp.*,
  922 F. Supp. 2d 278 (E.D.N.Y. 2013) ...................................................................................... 1

*Morangelli v. Chemed Corp.*,
  No. 10 Civ. 0876 (BMC), 2013 U.S. Dist. LEXIS 42091 (E.D.N.Y. Mar. 25, 2011) ................ 1

*Singer v. Bank of Palestine*,
  19-cv-006 (ENV) (RML), 2021 WL 4205176 (E.D.N.Y. Apr. 30, 2021)................................... 9

*Spetner v. Palestine Inv. Bank*,
  70 F.4th 632 (2d Cir. 2023) ........................................................................................... 2, 3, 6, 7

*Strauss v. Crédit Lyonnais, S.A.*,
   175 F. Supp. 3d 3 (E.D.N.Y. 2016) ............................................................................ 3

Plaintiffs respectfully submit this reply brief in support of their motion for reconsideration of the Court's dismissal for lack of personal jurisdiction (the "Dismissal Decision" or "Op.").

## ARGUMENT

**I.    Defendant's Focus on the "Intervening Change in Law" Basis for Reconsideration Is Irrelevant to Plaintiffs' Argument.**

Defendant argues extensively that "Plaintiffs misstated the standard for reconsideration" because "[a] court will grant reconsideration when there is an '*intervening* change in controlling law,'" Def. Brief in Opposition to Reconsideration ("Def. Br.") at 3-4, quoting this Court's decision in *Am. Transit Ins. Co. v. Bilyk*, 514 F. Supp. 3d 463, 470 (E.D.N.Y. 2021) (Cogan, J.), whereas there was none here. This is of course not the sole basis for reconsideration. A court is not compelled to stick to a decision that is contrary to controlling law just because that authority was already issued. As this Court explained in *Am. Transit*, reconsideration is appropriate where there is "a need to correct a clear error or prevent manifest injustice," including where, as *in that case*, the Court "misconstrued the allegations in the complaint and that the applicable law, when applied to those allegations…." *Id. See also id.* at 474 (explaining that the motion for reconsideration "connected the dots" in the complaint). In fact, in the other case Defendant cited from this Court, *Morangelli v. Chemed Corp.*, 922 F. Supp. 2d 278, 305 (E.D.N.Y. 2013) (Cogan, J.), cited in Def. Br. at 2, this Court granted reconsideration at least *twice*; for example, it did so first because of "data or authority the Court overlooked." *Morangelli v. Chemed Corp.*, 275 F.R.D. 99, 123 (E.D.N.Y. 2011). *See also Morangelli v. Chemed Corp.*, No. 10-cv-0876 (BMC), 2013 U.S. Dist. LEXIS 42091, *24 (E.D.N.Y. Mar. 25, 2011) (reconsidering another order).

**II.   Defendant Cannot Justify the Court's Reading of Controlling Law on Establishing Personal Jurisdiction in JASTA Cases.**

Defendant's opposition brief makes clear that reconsideration is necessary here. Defendant states that "the fundamental problem" with the Complaint is "the failure to identify any transaction

made through Kuveyt Türk's correspondent bank account that had any connection to the terrorist attacks at issue, or any terrorist attack at all." Def. Br. at 8. But *that* formulation of the legal standard is the "fundamental problem"—not with the Complaint, but with Defendant's position and the Court's decision. The statement, characterizing the Court's decision, applies a manifestly incorrect legal standard. Plaintiffs do not need to allege, let alone prove, that any specific funds transfer was used for a violent terrorist purpose.

As Plaintiffs demonstrated in their opening brief, this Court committed clear error in holding that, to plead their claims are related to transfers Defendant processed through New York for personal jurisdiction purposes, Plaintiffs must allege a "relationship between these transfers and the attacks at issue outside of IUG's connection to Hamas in general." Op. at 6. Plaintiffs then showed that the Second Circuit came to the opposite conclusion in a controlling case:

> By … knowingly providing material support to *a customer linked to Hamas*, a designated Foreign Terrorist Organization, PIB [defendant Palestine Investment Bank] facilitated the attacks that are at the heart of this litigation. At this stage, we accept plaintiffs' allegations as true and find that they make out an articulable nexus between PIB's alleged conduct and their injuries.

*Spetner v. Palestine Inv. Bank*, 70 F.4th 632, 643-44 (2d Cir. 2023) (emphasis added). The similarly controlling *Licci* family of cases held the same, relying entirely on transactions Lebanese Canadian Bank ("LCB") processed for a Hezbollah-controlled "charity" called "Shahid" or "Martyrs Foundation," which had *no alleged* indicia that they were intended for terrorism or linked to any terrorist attacks. Both of these controlling cases therefore hold that plaintiffs need only allege transfers through New York to the foreign terrorist organization ("FTO") that harmed them, not transfers that are themselves traceable to specific terrorist attacks. The Dismissal Decision requires plaintiffs to satisfy an attack-linked-transfer standard that does not exist and is thus "clear error" that should be reconsidered. *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust* (*Kolel*), 729 F.3d 99, 104 (2d Cir. 2013).

2

Defendant does not refute the holdings of *Spetner* and *Licci* as Plaintiffs have described them in their prior brief, including the sufficiency of showing New York transactions processed for a "customer linked to Hamas."[1] Nor does Defendant cite even a single case with a contrary holding, instead just repeating its urged rule that Plaintiffs must "identify … transaction[s] made through Kuveyt Türk's correspondent bank account that had any connection to the terrorist attacks at issue, or any terrorist attack at all" without any citation whatsoever. *See* Def. Br. at 8.

That is, Defendant cites cases that state the basic proposition that the in-forum conduct must relate to the "*claim*," *id.* at 5, but it fails to provide a case that even *suggests* that, for JASTA claims, plaintiffs must tie transactions to attacks, rather than "customers linked" to the FTO that committed the attack(s) at issue. (Indeed, Defendant largely avoids discussing the Court's holding, suggesting that it knows it is incorrect.) Notably, Defendant does not even attempt to distinguish this Court's finding of personal jurisdiction in *Miller v. Arab Bank, PLC*, 372 F. Supp. 3d 33 (E.D.N.Y. 2019), where the New York transfers supporting jurisdiction did not themselves indicate a terroristic purpose. *See* Pls. Brief in Supp. of Motion for Reconsideration ("Pls. Br.") at 9 & n.4. Defendant instead *argues* that *Miller* was not "controlling" and "predates" the Dismissal Decision. Def. Br. at 4 n.2. It does not dispute that the Court applied in that case the standard articulated by the Plaintiffs here, as did the courts in the other cases Plaintiffs cited, such as *Strauss v. Crédit Lyonnais, S.A.*, 175 F. Supp. 3d 3 (E.D.N.Y. 2016) (also cited by this Court in *Miller*), *Axginc Corp. v. Plaza Automall, Ltd.*, 14 Civ. 4648 (ARR) (VMS), 2021 WL 1030228 (E.D.N.Y. Mar. 2, 2021), and *Averbach v. Cairo Amman Bank*, 19-cv-0004-GHW-KHP, 2023 WL 5016884 (S.D.N.Y.

---

[1]    As the Circuit explained in *Spetner*, a court's inquiry into whether a plaintiff has plausible alleged that the cause of action "arises out of" a defendant's transaction of business in New York is "relatively permissive" and "requires only that 'at least **one** element [of the claim] arises from [defendant's] New York contacts.'" 70 F.4th at 643 (quoting *Licci v Lebanese Can. Bank, SAL*, 20 N.Y.3d 327, 341 (2012)) (emphasis added).

June 30, 2023)). *See* Def. Br. at 4 n.2. Defendant evidently believes that those cases, including *Miller*, were erroneously decided, but declines to say so explicitly.

Defendant also concedes that the plaintiffs in *Spetner* and *Licci* only alleged that the banks' customers were Hamas and Hezbollah institutions that supported those FTOs' violent activities generally, rather than through traceable transfers. But Plaintiffs here alleged that IUG supported Hamas's violent activities as well, by showing that IUG provided Hamas with recruits (specifically for Hamas's operational terrorist wing Qassam Brigades), provided employment to Hamas leaders, stored Hamas weapons on its campus, and even developed and manufactured Hamas weapons in its science labs—in addition to channeling funding. *See, e.g.*, First Amended Complaint ("FAC") ¶ 363. Defendant does not distinguish these allegations from those in *Spetner* and *Licci*; it simply ignores them.[2]

Defendant also does not dispute that this Court erred in suggesting *Licci* involved allegations tying transactions to attacks or in stating that LCB held an account for "Hezbollah," rather than a Hezbollah-controlled charity.[3] It does not dispute that the *Licci* plaintiffs did not allege anything at all about the transfers or what they indicated, except that they occurred and broadly supported Hezbollah's violent activities. It does not dispute that the transfers the *Spetner* defendant processed for Holy Land Foundation ("HLF")—including the one specifically relied on by the

---

[2]     Defendant baldly misconstrues Plaintiffs' opening brief by arguing that "Plaintiffs concede that the allegations in *Licci* were more substantial as to the relationship between the forum activity and the claims than those in this case" because Plaintiffs stated that "in *Licci* the complaint contained an 'allegation that the transfers benefitted [the terrorist's] violent activities' whereas here Plaintiffs' complaint fails to allege that the customers associated with Hamas used their account to fund Hamas's terrorist activities." Def. Br. at 6. To support this representation, Defendant omits much of the actual text, which stated: "Aside from an 'arguably conclusory' allegation that the transfers benefitted Hezbollah's violent activities, there is no suggestion that the transfers in *Licci* were more specifically tied to the injury-causing Hezbollah attacks there than the transfers alleged for IUG are to the Hamas attacks at issue here." Pls. Br. at 13-14 (quoting Op. at 6).

[3]     Defendant appears to agree that the Court erred in finding the fact that the *Licci* complaint listed Hezbollah-linked account numbers significant: "But this Court accepted as true [the *Henkin*] Plaintiffs' prior allegations of two accounts—and, of course, such accounts would have account numbers." Def. Br. at 8.

Circuit—gave no facial indication that they were for terrorist purposes. Defendant also does not dispute that the HLF transfers were *entirely independent* of the Arab Liberation Front ("ALF") checks alleged in that case that stated "martyr" on the memo line.

Defendant does not dispute that Shahid, the relevant Hezbollah-controlled institution in *Licci*, is a purported "charity" or that it "runs several hospitals in Lebanon," as Plaintiffs noted. Pls. Br. at 13. Defendant does not dispute that the *Licci* complaint only alleged that Shahid made incentive payments to promote Hezbollah suicide bombings *generally* (again, no New York transfers allegedly indicated that they were for that purpose) and that the attacks at issue in that case were "rocket attacks," not suicide bombings. Def. Br. at 5-6 & n.3.

Likewise, Defendant does not dispute that HLF was registered as a charity—it only argues that because HLF also made suicide bombing incentive payments (albeit not *directly* through New York transactions), that fact "connect[s] transfers involving the Holy Land Foundation to terrorist violence," *id.* But of course, Defendant cannot dispute the fact that the New York transfer PIB processed for HLF in *Spetner* neither facially stated any such purpose, nor did the *Spetner* plaintiffs allege that the New York transaction (or others like it) were specifically earmarked to make incentive payments for suicide bombings.

Most crucially, Defendant does not even suggest that Shahid's general support for Hezbollah's violence or HLF's support for Hamas's violence is *legally* distinguishable from IUG's support for Hamas's violence for personal jurisdiction purposes.

Instead, Defendant argues that Plaintiffs only quoted paragraph 117 of the *Licci* amended complaint, omitting other statements that Defendant suggests are somehow less "arguably conclusory," as the Court characterized the *Licci* allegations. Def. Br. at 6 n.3 (citing Amended Complaint, *Licci*, No. 08-cv-7253-GBD (S.D.N.Y. filed Jan. 22, 2009), ECF No. 23, ¶¶ 113-20).

But these paragraphs are no less "conclusory" than paragraph 117 and effectively repeat it—as is evidenced from the only language Defendant quotes: "'[t]he Hizbollah Rocket Attacks were thereby enabled, facilitated and proximately caused by the conduct of defendants Amex Bank and LCB described herein." Def. Br. at 6 n.3 (quoting *Licci* AC, ¶ 119). If this allegation was decisive in the Circuit's jurisdictional analysis in *Licci*, Defendant cannot explain how dozens of paragraphs describing IUG's role as a "primary" Hamas institution and its specific role in Hamas's violent activities are insufficient here. Indeed, Defendant does not dispute Plaintiffs' assertions that funds processed for IUG would support these roles. *See* Pls. Br. at 12-16.

Likewise, as to *Spetner*, Defendant accuses Plaintiffs of "omitting" the unrelated ALF transfers PIB processed through New York, Def. Br. at 7, which "includ[ed] the word 'martyr' in the memo line of some checks." *Spetner*, 70 F.4th at 638. But, as Plaintiffs explained and as Defendant knows, the ALF dollar-denominated checks constituted an *independent* basis for finding personal jurisdiction and the conflation of these two (ALF and HLF) unrelated payment streams (involving two different terrorist organizations) is precisely the error in the Court's analysis Plaintiffs identified in their brief. *See* Pls. Br. at 16 ("these checks which (sometimes) bore the word 'martyr' in the memo line related to only *one* of the *two* separate sets of transfers the Second Circuit credited for personal jurisdiction purposes.") (emphasis in original).

As the Second Circuit made clear, the ALF and HLF transfers were entirely independent of each other.[4] The Circuit premised personal jurisdiction *both* on "payments bearing indicia of terrorism financing on behalf of ALF" *and* "knowingly providing material support to a customer

---

[4]    In *Spetner*, the defendant argued that "[b]ecause checks between account holders at Palestinian banks were settled daily on an aggregate basis rather than as individual transactions … plaintiffs cannot trace any particular payment from the head of ALF to the families of terrorists." 70 F.4th at 644. But the Circuit noted that the defendant conceded "that any inter-bank dollar transfer to settle a debt" resulting from those checks "was processed through New York." *Id.* This basis for personal jurisdiction based on the settlement of dollar-denominated checks was distinct from plaintiffs' allegations that the defendant processed HLF transfers through a correspondent account in New York and thereby "used New York's financial system to facilitate financial support for Hamas…." *Id.*

linked to Hamas," *i.e.*, HLF. *Spetner*, 70 F.4th at 643-44. ALF was not "linked to Hamas" at all—it was a proxy group of the Saddam Hussein regime in Iraq intended to raise the dictator's reputation in the Palestinian Territories. It made suicide bombing incentive payments via U.S. dollar-denominated checks (that were settled in New York) to terrorists affiliated with any terrorist group, including Hamas. HLF, on the other hand, was Hamas's primary fundraiser in the United States and the basis for personal jurisdictional in that case was predicated on the bank's use of a nested account with another bank that maintained correspondent accounts in New York. Obviously, indicia of terrorist purpose on *ALF checks* do not somehow transfer or apply to unrelated *HLF transfers*.

Finally, Defendant does not dispute that in *Daou v. BLC Bank, S.A.L.*, 42 F.4th 120 (2d Cir. 2022), the third Second Circuit case this Court relied on, no New York transactions occurred at all. Defendant instead argues that Plaintiffs "miss the point" of the case because "[t]he problem with [the *Daou* plaintiffs'] allegations is that they do not allege any specific transactions *at all*, much less any related to their claims." Def. Br. at 7-8 (emphasis added). But Plaintiffs did not "miss" this Court's point: the Court found that *Daou* required transactions processed "in the course of bringing about the injuries on which the claims are predicated," which the Court concluded meant (in the context of JASTA) tying transactions to attacks. Op. at 7 (quoting *Daou*, 42 F.4th at 132). As Plaintiffs explained in their opening brief, *Daou* only held that personal jurisdiction cannot be premised on where transactions *would have been processed had they occurred*—Defendant's attempt to refashion this Court's analysis is no more correct. In any event, as this Court explained, Plaintiffs alleged that Defendant "transferred at least hundreds of thousands of Eurodollars in the name of IUG, a Hamas-controlled institution [] at the direction of" two Hamas members, which this Court already found "sufficient at this stage." *Henkin v. Kuveyt Turk Katilim Bankasi, A.S.*,

495 F. Supp. 3d 144, 161 (E.D.N.Y. 2020). Any lack of specificity as to how it processed those Eurodollar transfers through New York is more properly the subject of discovery.

## III. Defendant Cannot Justify the Court's Impermissible Inferences Made in Favor of Defendant.

Defendant supplies no answer to the myriad allegations Plaintiffs provided that IUG is closely intertwined with Hamas's violent activities. Indeed, it just ignores them, and only argues that the Court "simply observed that IUG has legitimate functions—which Plaintiffs do not and cannot dispute—any of which could be funded through transfers passing through a U.S. correspondent account." Def. Br. at 8. Indeed, the Court stated that IUG "partially operat[es] as a legitimate educational institution," and held that the possibility that IUG expends funds on "legitimate costs" precludes the Court from inferring, in Plaintiffs' favor, that any transfers were used for violent purposes (which, again, is an erroneous application of the "arising from" standard for personal jurisdiction based on the transaction of business in New York). Op. at 6.

However, the relevant inquiry even for substantive liability is not whether IUG performs *any* "legitimate functions" but whether it is closely intertwined with the violent activities of a terrorist organization. *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 860 (2d Cir. 2021). Thus, the fact that the Shahid Foundation at the center of *Licci* operates hospitals did not transform payments to it into a "legitimate" cost for Hezbollah. *See* Pls. Br. at 13. And *Licci* found personal jurisdiction existed despite the same possibility that the transfers to Shahid that were transacted in New York may have been used in part for its "legitimate" functions.

Moreover, Defendant declines to identify or articulate a rule that, if an institution has some "legitimate functions," *Licci* or *Spetner* (or any other case) then require transfers to facially indicate some terrorist purpose. No case suggests that the existence of purportedly "legitimate functions" by a terrorist-controlled institution forms any part of the jurisdictional analysis.

**IV.    Defendant Has Not Given Any Reason This Court Should Reverse Its Prior Stated Intent to Determine Personal Jurisdiction After Discovery.**

Jurisdictional discovery is within the Court's discretion, and this Court previously stated it would order it should Defendant challenge personal jurisdiction in a motion to dismiss. As Plaintiffs explained, because the Court's latest analysis of the relatedness prong of personal jurisdiction is contrary to controlling law, it should order discovery for greater specificity as to the number and extent of transactions. Plaintiffs showed that the court in *Singer v. Bank of Palestine*, 19-cv-006 (ENV) (RML), 2021 WL 4205176, at *6-7 (E.D.N.Y. Apr. 30, 2021), ordered jurisdictional discovery for that precise reason: to identify the number and value of transactions—not to show that transactions indicated a terroristic purpose. Pls. Br. at 20-21.

Defendant does not distinguish *Singer* now, except to simply point out that that court chose to exercise its discretion differently than this Court did. Def. Br. at 9. But the Court here should do the same, as it previously stated it would. A court "should take care to give the plaintiff ample opportunity to secure and present evidence relevant to the existence of jurisdiction." *Singer*, 2021 WL 4205176, at *7 (quoting *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003)).

**CONCLUSION**

In sum, Defendant cannot square the Court's Dismissal Decision with controlling law. It argues that Plaintiffs did not "identify any transaction made through Kuveyt Türk's correspondent bank account that had any connection to the terrorist attacks at issue, or any terrorist attack at all," Def. Br. at 8, but it does not cite a single case in support of such a rule.[5] It does not explain how the *Licci* transfers or the HLF transfer in *Spetner* would have satisfied such a rule. It does not explain how the jurisdictionally relevant transactions alleged in *Miller* would have met such a rule.

---

[5] As noted in Plaintiffs' opening brief, Defendant's exact position was espoused by the defendant in *Spetner* and rejected by the Circuit. *See* Pls. Br. at 17 (quoting *Spetner*, 70 F.4th at 644).

As previously stated, this Court's decision thus constitutes a "clear error" and should be reconsidered.

Dated: September 5, 2023
      Hackensack, New Jersey

<div style="margin-left:40%;">

Respectfully submitted,

/s/ Gary M. Osen
Gary M. Osen
Michael Radine
Ari Ungar
Dina Gielchinsky
Aaron Schlanger
OSEN LLC
190 Moore Street, Suite 272
Hackensack, NJ 07601
Tel: (201) 265-6400
Fax: (201) 265-0303

Michael A. Petrino (*pro hac vice*)
Jonathan E. Missner (*pro hac vice*)
STEIN MITCHELL BEATO & MISSNER LLP
2000 K St NW, Suite 600
Washington, D.C. 20006
Tel: (202) 737-7777
Fax: (202) 296-8312

Gavriel Mairone
Adora Sauer (*pro hac vice*)
MM~LAW LLC
980 North Michigan Avenue, Suite 1400
Chicago, IL 60611
Tel: (312) 253-7444
Fax: (312) 275-8590

*Counsel for Plaintiffs*

</div>