UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ESTATE OF EITAM HENKIN, et al.

        Plaintiffs,

    -v-

KUVEYT TÜRK KATILIM BANKASI A.Ş.,

        Defendant.

Case No. 19-cv-5394 (BMC)

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, FOR
CERTIFICATION OF INTERLOCUTORY APPEAL**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND ............................................................................................................... 4

LEGAL STANDARD......................................................................................................... 6

ARGUMENT ................................................................................................................... 7

I.      THE COURT CLEARLY ERRED WHEN IT OVERLOOKED CONTROLLING
        SUPREME COURT AUTHORITY, AND SHOULD RECONSIDER ON THAT
        BASIS. ................................................................................................................. 7

        A.      *Twitter* Announced a New Pleading Standard for JASTA Aiding-and-
                Abetting Claims That Is More Restrictive Than the Second Circuit
                Standard. ................................................................................................. 8

        B.      The Court's Order Relied Upon Now-Rejected Components of *Honickman*
                and *Kaplan*. ......................................................................................... 13

        C.      *Twitter* Compels Dismissal of Plaintiffs' Claim. ................................... 15

                1.      The Amended Complaint Fails to Allege That Kuveyt Türk
                        Engaged in "Conscious, Voluntary, And Culpable" Conduct. ............... 16

                2.      The Amended Complaint Fails to Allege Any Connection Between
                        Kuveyt Türk's Alleged Banking Services and the Attacks. .................... 17

                3.      The Amended Complaint Does Not Allege That Kuveyt Türk
                        Intentionally Formed a "Near Common Enterprise" with Hamas
                        for the Purposes of the Nexus Exception in *Twitter*. .............................. 18

                4.      *Twitter*'s Substantiality Analysis Further Supports Dismissal. .............. 19

II.     AS AN ALTERNATIVE, THE COURT SHOULD CERTIFY ITS ORDER FOR
        INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(B) OR AWAIT THE
        SECOND CIRCUIT'S DECISION IN *WILDMAN*. ...................................................... 19

III.    THE COURT'S RULINGS ON JURISDICTIONAL DISCOVERY WARRANT
        RECONSIDERATION. .......................................................................................... 21

        A.      Plaintiffs' Jurisdictional Allegations Are Inadequate. ......................................... 21

        B.      If This Court Were To Order Jurisdictional Discovery, It Should Be
                Targeted and Precede Merits Discovery. ........................................................... 24

CONCLUSION .............................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Transit Ins. Co. v. Bilyk*,
    514 F. Supp. 3d 463 (E.D.N.Y. 2021) ......................................................................................7

*In re Arab Bank, PLC Alien Tort Statute Litig.*,
    808 F.3d 144 (2d Cir. 2015).....................................................................................................7

*AstraZeneca UK Ltd. v. Atchley*,
    144 S. Ct. 2675 (2024)..............................................................................................2, 12, 13

*Austin v. United States*,
    280 F. Supp. 3d 567 (S.D.N.Y. 2017)......................................................................................7

*Bentivegna v. People's United Bank*,
    2017 WL 4277149 (E.D.N.Y. Sept. 25, 2017) .........................................................................8

*Capitol Records, LLC v. Vimeo, LLC*,
    972 F. Supp. 2d 537 (S.D.N.Y. 2013)....................................................................................20

*Chow v. Shorefront Operating LLC*,
    2021 WL 2646329 (E.D.N.Y. June 28, 2021) .........................................................................7

*Dhulos v. Floating & Abandoned Vessel*,
    162 F.3d 63 (2d Cir. 1998).....................................................................................................21

*Halberstam v. Welch*,
    705 F.2d 472 (D.C. Cir. 1983) .................................................................................................8

*Honickman v. BLOM Bank*,
    6 F.4th 487 (2d Cir. 2021) ............................................................................................. *passim*

*Jazini v. Nissan Motor Co.*,
    148 F.3d 181 (2d Cir. 1998)...................................................................................................24

*Kaplan v. Lebanese Canadian Bank*,
    999 F.3d 842 (2d Cir. 2021)..............................................................................................1, 9

*NovelAire Techs., L.L.C. v. Munters AB*,
    2013 WL 6182938 (S.D.N.Y. Nov. 21, 2013)........................................................................24

*Palladino v. JPMorgan Chase & Co.*,
    730 F. Supp. 3d 4 (E.D.N.Y. 2024) ........................................................................................25

*Royal Canin U.S.A., Inc. v. Wullschleger*,
     -- S. Ct --, 2025 WL 96212 (2025) ......................................................................................21, 22

*Twitter, Inc. v. Taamneh*,
     598 U.S. 471 (2023).................................................................................... *passim*

*Weiss v. National Westminster Bank*,
     993 F.3d 144 (2d Cir. 2021)...............................................................................5

*Wildman v. Deutsche Bank Aktiengesellschaft*,
     2022 WL 17993076 (E.D.N.Y. Dec. 29, 2022) ........................................................20

*Wildman v. Deutsche Bank Aktiengesellschaft*,
     No. 23-132 (2d Cir., argued Mar. 13, 2024) ....................................................3, 20

**Statutes**

28 U.S.C. § 1292............................................................................................. *passim*

**Other Authorities**

Fed. R. Civ. P. 12 ...............................................................................................4, 21, 22

## PRELIMINARY STATEMENT

On January 16, 2025, the Court reconsidered its dismissal of Plaintiffs' claim against Defendant Kuveyt Türk Katilim Bankasi A.Ş. ("Kuveyt Türk" or the "Bank") for lack of personal jurisdiction (ECF 67, the "Order"). The Court concluded it had overlooked the parties' prior "agreement" that the Court should defer consideration of personal jurisdiction pending discovery, and that the Order was inconsistent with that agreement. With its jurisdictional ruling vacated, the Order addressed the merits, concluding that Plaintiffs had stated a JASTA aiding-and-abetting claim under the standard set forth in the Second Circuit's decisions in *Honickman v. BLOM Bank*, 6 F.4th 487 (2d Cir. 2021), and *Kaplan v. Lebanese Canadian Bank*, 999 F.3d 842 (2d Cir. 2021).

Rarely is there a clear case for reconsideration, but this is such a case. The Order overlooked entirely the Supreme Court's controlling decision in *Twitter, Inc. v. Taamneh*, 598 U.S. 471 (2023), which postdated *Kaplan* and *Honickman* and directly overruled aspects of those decisions upon which this Court relied. On June 7, 2023, Kuveyt Türk advised the Court of the intervening *Twitter* decision and requested leave to file substitute briefing on its motion to dismiss (ECF 55), but the Court has never ruled on that request because it dismissed the case on jurisdictional grounds.

The Order conflicts with *Twitter* in several respects. For instance, the Order found that because Plaintiffs adequately alleged Kuveyt Türk's "general awareness" of its role in unlawful activities, Plaintiffs necessarily satisfied the "knowing" component of the knowing and substantial assistance. Order at 18 (citing *Honickman*, 6 F.4th at 500). But that holding, following from *Honickman*, is no longer good law. The Supreme Court directly rejected it in *Twitter*, holding that the "general awareness" and "knowing" elements are "not the same" and that it is error to credit allegations of general awareness as satisfying JASTA's "knowing" requirement. 598 U.S. at 504. Indeed, the Supreme Court found that the plaintiffs *had* adequately alleged general awareness—

*i.e.*, that social media platforms were generally aware that ISIS users had accounts they utilized to communicate and fund-raise—but nonetheless concluded that those allegations were not just inadequate, but fell "far short" of plausibly alleging *knowing* substantial assistance. *Id.* at 505. It is thus now beyond dispute that mere allegations of general awareness are insufficient to adequately allege "knowing" assistance.

The Order also excused Plaintiffs' failure to connect Kuveyt Türk's alleged banking services to the three terrorist attacks at issue in this case (the "Attacks"), relying upon *Honickman* to hold that "knowing and substantial assistance to the actual injury-causing act—here, Hamas's attacks—is unnecessary." Order at 12. That premise, too, has been overruled, and unambiguously so. *Twitter* held that a defendant "must have aided and abetted (by knowingly providing substantial assistance) another person *in the commission* of the actionable wrong—here, an act of international terrorism." 598 U.S. at 495 (emphasis added). Unless a defendant forms a conspiracy-like "near-common enterprise" with the terrorist group or *intentionally* aligns itself with terrorist activities (neither of which is alleged here), a defendant must "consciously and culpably participate[]" in the terrorist attack so as to help "make it succeed." *Id.* at 493, 502 (cleaned up).

Plaintiffs cannot credibly argue that these aspects of *Honickman* and *Kaplan* remain good law after *Twitter*. Indeed, the Supreme Court itself vacated and remanded a decision from the D.C. Circuit (*AstraZeneca UK Ltd. v. Atchley*) that sustained JASTA aiding-and-abetting claims in express reliance on Second Circuit precedent, so that the D.C. Circuit could review the allegations under *Twitter*'s new, controlling standard. 144 S. Ct. 2675 (2024). And the U.S. government as amicus urged the Supreme Court to do so, explaining that *Twitter* departed from Second Circuit precedent. *See* Br. for the United States as *Amicus Curiae*, *Atchley*, 144 S. Ct. 2675 (No. 23-9) (hereinafter U.S. *Atchley* Br.).

This Court's oversight is understandable—*Twitter* was decided after the Bank's motion to dismiss was briefed, and the Court did not have occasion to address the parties' post-*Twitter* letter-briefing before dismissing on jurisdictional grounds shortly afterward. But the Order's failure to address or even mention *Twitter*, while relying on principles of law the Supreme Court plainly rejected, is clear error requiring reconsideration.

Properly applied, *Twitter* compels dismissal. Plaintiffs do not allege any connection between the Bank's services and the Attacks, let alone that the Bank somehow consciously and culpably participated in those Attacks. Nor do Plaintiffs allege that the Bank intentionally aligned itself with Hamas's terrorism, formed a near-common enterprise with Hamas, or otherwise provided its customers with anything other than routine banking services.

And because what pleading standard applies to JASTA aiding-and-abetting claims and whether that standard compels dismissal here are controlling questions of law, should the Court have doubt or find a reasonable basis for disagreement on these questions, it should certify an interlocutory appeal under 28 U.S.C. § 1292(b). Alternatively, the Court could stay this action pending the outcome of the Second Circuit appeal in *Wildman v. Deutsche Bank Aktiengesellschaft*, No. 23-132 (2d Cir., argued Mar. 13, 2024). *Wildman* represents the first post-*Twitter* JASTA aiding-and-abetting case to be decided by the Second Circuit and is likely to provide guidance relevant to this Court's decision here.

Finally, the Court should reconsider its ruling that discovery must proceed before the Court resolves Kuveyt Türk's personal jurisdiction defense. As the Court has already concluded, Plaintiffs' jurisdictional allegations are insufficiently "related" to Plaintiffs' claim to sustain jurisdiction. The need to tie U.S. transactions to terrorist activity has only become clearer after *Twitter*—and Plaintiffs do not allege that transactions facilitated by Kuveyt Türk have anything to

3

do with the Attacks or with terrorist activities at all. No amount of unrelated transactional activity can support jurisdiction, and therefore discovery would be wasteful. And because the parties never reached any agreement on whether jurisdictional discovery should proceed with respect to the amended complaint (or whether the Court should consider merits arguments before jurisdiction), no injustice will result from the Court reinstating its ruling that jurisdictional discovery is unwarranted. And to the extent any jurisdictional discovery is permitted, the Court should reconsider its ruling that such discovery should proceed simultaneously with merits discovery.

In all events, in light of the serious grounds for reconsideration or interlocutory appeal set forth herein, Kuveyt Türk requests that the Court stay discovery until it resolves this motion.

## **BACKGROUND**

Plaintiffs filed their original complaint on September 23, 2019. ECF 1. On December 18, 2019, the Court held an initial status and pre-motion conference, during which Kuveyt Türk previewed its contemplated motion to dismiss. *See* December 19, 2019 Minute Order. During that conference, the Court discouraged Kuveyt Türk from moving to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), stating that the Court would be "disinclined" to "say, well, the complaint on its face is inadequate as to personal jurisdiction and, therefore, it is dismissed, because I think personal jurisdiction requires a full factual record of the defendant's contacts and a plaintiff is entitled to that at some point before I throw the plaintiff out of court," and ultimately warning Kuveyt Türk: "You will get full discovery on the personal jurisdiction issue before you win it." Hr'g Tr. 11:9-12:13, 18:18-20. When the Bank expressed waiver concerns about omitting its objection to personal jurisdiction, the Court instructed it to confer with Plaintiffs about the presentation of that defense. *Id.* 18:23-19:10. With the Court's views in mind, Kuveyt Türk filed its motion to dismiss on February 13, 2020, expressly preserving its jurisdictional defense but agreeing that the Court should first consider its Fed. R. Civ. P. 12(b)(6) arguments.

4

ECF 24. On October 20, 2020, the Court denied dismissal for failure to state a claim, while deferring consideration of the Bank's personal jurisdiction arguments pending jurisdictional discovery. ECF 27.

On November 13, 2020, the Court certified its ruling for interlocutory appeal, to determine whether Plaintiffs' allegations satisfied the "general awareness" element of a JASTA aiding-and-abetting claim. ECF 36. The Second Circuit accepted the appeal (ECF 41) but ultimately remanded (ECF 44) in light of its intervening decisions in three other JASTA cases: *Honickman*, *Kaplan*, and *Weiss v. National Westminster Bank*, 993 F.3d 144 (2d Cir. 2021).

On remand, Plaintiffs filed an amended complaint, adding new plaintiffs and allegations. ECF 48 (filed Oct. 28, 2022). Unlike with the original complaint, the parties did not discuss, or reach, any agreement regarding the presentation of Kuveyt Türk's personal jurisdiction defense. On December 7, 2022, Kuveyt Türk moved to dismiss the amended complaint both for lack of personal jurisdiction (relying on new authority not available when the first motion to dismiss was filed and expressly opposing jurisdictional discovery) and for failure to state a claim. ECF 49. Kuveyt Türk's motion was fully briefed as of January 31, 2023. ECF 51.

On May 18, 2023, the U.S. Supreme Court issued its decision in *Twitter*, addressing the pleading standard for JASTA aiding-and-abetting claims and rejecting key aspects of the standard applied by the Second Circuit in *Honickman* and *Kaplan*. Accordingly, on June 7, 2023, Kuveyt Türk advised the Court of the *Twitter* decision and various ways in which it upset existing Second Circuit precedent, and requested leave to file substitute briefing on its then-pending motion to dismiss so that the motion reflected *Twitter*'s new, controlling standard. ECF 55. Plaintiffs responded by letter on June 12, 2023, arguing that *Twitter* is "consistent with *Kaplan* and

5

*Honickman*" and that new briefing was unnecessary now that the Court had the parties' view of *Twitter*. ECF 58 at 1, 3.

The Court had no occasion to rule on Kuveyt Türk's substitute briefing request because, on July 28, 2023, it granted the Bank's motion to dismiss for lack of personal jurisdiction without reaching the failure-to-state-a-claim arguments that are subject to the *Twitter* standard. ECF 62. The Court held that "the relationship between the Bank's contacts with the forum and the claim are too tenuous to support personal jurisdiction" or warrant jurisdictional discovery. *Id.* at 7-8.

On August 14, 2023, Plaintiffs moved for reconsideration, arguing that the Court's ruling contravened controlling law and that the Court should "return to its original assessment" of the case (*i.e.*, the original complaint) and reserve judgment on jurisdiction until jurisdictional discovery has been taken. ECF 64-1 at 21. On January 16, 2025, the Court granted Plaintiffs' reconsideration motion, finding that it had overlooked the parties' agreement with respect to the original complaint that a ruling on the merits should precede a ruling on jurisdiction. ECF 67 at 8. The Court then considered, for the first time, whether the amended complaint states a JASTA aiding-and-abetting claim. *Id.* at 11-19. The Court applied the pleading standard set forth in *Honickman* and *Kaplan*, without addressing or mentioning the Supreme Court's subsequent decision in *Twitter*, and held that Plaintiffs had stated a claim. *Id.* Kuveyt Türk now moves for reconsideration or, alternatively, certification of an interlocutory appeal.

## **LEGAL STANDARD**

Reconsideration is appropriate where the moving party "point[s] to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Order at 8-9. Reconsideration should be granted upon "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) a need

6

to correct a clear error or prevent manifest injustice." *Am. Transit Ins. Co. v. Bilyk*, 514 F. Supp. 3d 463, 470 (E.D.N.Y. 2021) (Cogan, J.).

Interlocutory appeal is appropriate when an order involves "a controlling question of law" on which there is "substantial ground for difference of opinion" and an "immediate appeal . . . may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

<u>**ARGUMENT**</u>

**I.     THE COURT CLEARLY ERRED WHEN IT OVERLOOKED CONTROLLING SUPREME COURT AUTHORITY, AND SHOULD RECONSIDER ON THAT BASIS.**

Reconsideration is appropriate because the Court's Order did not apply, or even acknowledge, the Supreme Court's decision in *Twitter*, which heightened the pleading standard for JASTA aiding-and-abetting claims and overruled key components of the Second Circuit authority upon which the Order relies. Both this Court and the Second Circuit are bound by decisions of the U.S. Supreme Court, including when (as here) an intervening decision of the Supreme Court conflicts with existing Second Circuit precedent. *See In re Arab Bank, PLC Alien Tort Statute Litig.*, 808 F.3d 144, 154-55 (2d Cir. 2015) (court must follow intervening Supreme Court precedent where there is "a conflict, incompatibility, or inconsistency between this Circuit's precedent and the intervening Supreme Court decision" (cleaned up)); *Austin v. United States*, 280 F. Supp. 3d 567, 572 (S.D.N.Y. 2017) ("When a subsequent decision of the Supreme Court so undermines [Second Circuit precedent] that it will almost inevitably be overruled, the District Court is bound by the Supreme Court's ruling and not by the Second Circuit's prior decisions." (cleaned up)).

Had the Order properly applied *Twitter*, it would have reached a different result. That constitutes error warranting reconsideration. *See Chow v. Shorefront Operating LLC*, 2021 WL 2646329, at *2 (E.D.N.Y. June 28, 2021) (reconsidering because the court "clearly erred" by not

7

taking account of a Supreme Court case); *Bentivegna v. People's United Bank*, 2017 WL 4277149, at *2 (E.D.N.Y. Sept. 25, 2017) (reconsidering because the court "committed clear error by overlooking" a Supreme Court case and by following superseded Second Circuit cases).

### A.     *Twitter* Announced a New Pleading Standard for JASTA Aiding-and-Abetting Claims That Is More Restrictive Than the Second Circuit Standard.

As the Bank explained in its request for substitute briefing on the underlying motion to dismiss (ECF 55), *Twitter* announced a new standard for assessing JASTA aiding-and-abetting claims at the pleading stage, rejecting key elements of the Second Circuit's application in *Kaplan* and *Honickman*.

In *Twitter*, the Supreme Court unanimously held that JASTA aiding-and-abetting claims require a plaintiff to plausibly allege that the defendant "consciously, voluntarily, and culpably participate[d] in" the terrorist attack at issue in the case "so as to help make it succeed." 598 U.S. at 493, 505 (internal quotation marks omitted). Plaintiffs in *Twitter* alleged that Twitter, Facebook, and Google aided and abetted a 2017 ISIS attack at an Istanbul nightclub, by knowingly providing communications services to ISIS-affiliated users over several years (allowing ISIS to recruit, fund-raise, and spread terrorist propaganda) and by serving that terrorist content to other users through their algorithms. *Id.* at 478. The Court found those allegations insufficient to survive a motion to dismiss. *Id.* at 505-07. In reaching this conclusion, *Twitter* explained at length how JASTA's "knowing and substantial assistance" requirement for aiding and abetting must be analyzed.

*First*, the Supreme Court expressly held that JASTA's requirement of "knowing" provision of substantial assistance is separate from, and more demanding than, the "general awareness" element of a JASTA aiding-and-abetting claim—it is "designed to capture the defendants' state of mind with respect to their actions and the tortious conduct . . . not the same general awareness that defines *Halberstam*'s [general awareness] element." 598 U.S. at 504; *see generally Halberstam v.*

8

*Welch*, 705 F.2d 472 (D.C. Cir. 1983). The Court specifically criticized the Ninth Circuit for "analyz[ing] the 'knowing' subelement as a carbon copy of the antecedent element of whether the defendants were 'generally aware' of their role in ISIS' overall scheme." 598 U.S. at 503. The Second Circuit in *Honickman* adopted the same approach as the Ninth Circuit had, holding that "[t]he 'knowledge component'" of a JASTA aiding-and-abetting claim "is satisfied '[i]f the defendant knowingly—and not innocently or inadvertently—gave assistance.' . . . It d[oes] not require [the defendant] to 'know' anything more . . . than what [it] knew for the general awareness element." 6 F.4th at 499-500 (quoting *Kaplan*, 999 F.3d at 864). That rule is directly contrary to the Supreme Court's later decision that the two elements are "not the same." 598 U.S. at 504.

*Second*, *Twitter* made clear that JASTA aiding-and-abetting requires more than that a terrorist act is a foreseeable consequence of the defendant's alleged conduct. Rather, a defendant "must have aided and abetted (by knowingly providing substantial assistance) another person *in the commission* of the actionable wrong—here, an act of international terrorism." *Id.* at 495 (emphasis added). "The focus must remain on assistance to the tort for which plaintiffs seek to impose liability." *Id.* at 506. And while the Court left open the possibility that a defendant could be found liable for serial attacks by a terrorist principal, it made clear that this would require systematically assisting each of the attacks, which would necessitate a showing of "pervasive, systemic, and culpable assistance," such as where defendants "intentionally associated themselves with [a terrorist organization's] operations or affirmatively gave aid that would assist each of [the] terrorist acts" and "formed a near-common enterprise" with the terrorist group. *Id.* at 502. The Second Circuit, by contrast, stated in *Honickman* that "knowing and substantial assistance to the actual injury-causing act—here, Hamas's attacks—is unnecessary." 6 F.4th at 499. Again, the Supreme Court's holding that the defendant "must have aided . . . in the commission of the

9

actionable wrong" cannot be reconciled with the prior Second Circuit rule that "assistance to the actual injury-causing act . . . is unnecessary."

*Third*, the *Twitter* Court criticized the Ninth Circuit for "hav[ing] understood JASTA's approval of *Halberstam*'s 'legal framework' as requiring it to hew tightly to the precise formulations that *Halberstam* used." 598 U.S. at 493. Rather, courts should "ascertain the 'basic thrust' of *Halberstam*'s elements and determine how to 'adap[t]' its framework" to the facts of a particular case by keeping in mind "the common law of aiding and abetting upon which *Halberstam* rested and to which JASTA's common-law terminology points." *Id.* at 488. That requires allegations supporting a plausible inference "that the defendant consciously and culpably 'participate[d]' in a wrongful act so as to help 'make it succeed.'" *Id.* at 493. In its discussion of this "conceptual core," *id.*, the Court emphasized that liability needed to be "cabin[ed]" to cases of "truly culpable conduct," *id.* at 489, to avoid circumstances such as where "mostly passive actors *like banks* become liable for all of their customers' crimes by virtue of carrying out *routine transactions*," *id.* at 491 (emphasis added). The Second Circuit in *Honickman* and *Kaplan* followed the same now-rejected approach as the Ninth Circuit had, without focus on the "conceptual core" animating the *Halberstam* framework, and without the benefit of the Supreme Court's admonition singling out claims against banks for "carrying out routine transactions."

*Fourth*, *Twitter* rejected the Ninth Circuit's assessment of *Halberstam*'s six substantiality factors as "a sequence of disparate, unrelated considerations without a common conceptual core." 598 U.S. at 504. As the Court explained, "[t]he point of those factors is to help courts capture the essence of aiding and abetting: participation in another's wrongdoing that is both significant and culpable enough to justify attributing the principal wrongdoing to the aider and abettor." *Id.* In addition, the "knowing" and "substantial assistance" prongs must be considered in tandem, "as

10

part of a single inquiry designed to capture conscious and culpable conduct" (*i.e.*, like a "sliding scale" approach): "less substantial assistance require[s] more scienter" to "infer conscious and culpable assistance," and "if the assistance were direct and extraordinary, then a court might more readily infer conscious participation in the underlying tort." *Id.* at 491-92, 504. "[T]he more attenuated the nexus [between the defendants' conduct and that terrorist act], the more courts should demand that plaintiffs show culpable participation through intentional aid that substantially furthered the tort." *Id.* at 506. Plaintiffs, at a minimum, must allege a "very good reason to think that defendants were consciously trying to help or otherwise 'participate in' the [terrorist] attack." *Id.* at 500. The Second Circuit in *Honickman* separately addressed "knowing" and "substantial" assistance—and, like the Ninth Circuit, recited each factor in isolation without identifying the overarching question the factors were designed to answer. *See* 6 F.4th at 499-500.

*Finally*, consistent with its overarching lesson that liability must be "cabin[ed]" to "truly culpable conduct," 598 U.S. at 489, *Twitter* held that the arm's-length, generally available nature of the commercial services allegedly provided weighed against a finding of knowing substantial assistance. As the Court found, "the Ninth Circuit should have given much greater weight to defendants' arm's-length relationship with ISIS—which was essentially no different from their relationship with their millions or billions of other users—and their undisputed lack of intent to support ISIS." *Id.* at 504. And the Court found error in the Ninth Circuit's focus "primarily on the value of defendants' platforms *to ISIS*, rather than whether defendants culpably associated themselves with ISIS' actions." *Id.* (emphasis in original). The Second Circuit took a similar approach in *Honickman*, stating that the relevant focus for the first substantiality factor (the nature of the act encouraged) was "whether the alleged aid . . . would be important to the nature of the injury-causing act"—thus committing the same error as the Ninth Circuit by assessing the benefit

11

to the terrorist group rather than whether the factor demonstrated the defendant's culpable association with the principal's wrongdoing. 6 F.4th at 500.

Thus *Twitter* fundamentally changed the pleading standard for JASTA aiding-and-abetting claims. That cannot be seriously disputed. Shortly after the Supreme Court decided *Twitter*, it was confronted with a petition for certiorari in *Atchley*, a case in which the D.C. Circuit—expressly relying upon Second Circuit law in *Honickman* and *Kaplan*—sustained JASTA aiding-and-abetting claims against pharmaceutical company defendants. 144 S. Ct. at 2675. The *Atchley* defendants argued that the Court should grant the petition, vacate the D.C. Circuit's ruling, and remand the case ("GVR") because *Twitter* had fundamentally changed the pleading standard. *See* Pet. for Writ of Cert., *Atchley*, 144 S. Ct. 2675 (No. 23-9). The U.S. government agreed. The Solicitor General submitted an amicus brief at the request of the Court, arguing that GVR was appropriate because *Twitter* "clarified the standard for aiding-and-abetting liability under the ATA in ways that may bear on the court of appeals' analysis." U.S. *Atchley* Br. at 11. The Solicitor General's brief explained the "clarification" that *Twitter* effected—citing many of the deviations from the approach previously taken by the Second Circuit authority noted above. *Id.* at 12-18 (addressing, among other things, *Twitter*'s rejection of *Kaplan*'s statement that "knowing" requires nothing more than sufficient allegations of "general awareness"). The Supreme Court issued a GVR order in *Atchley*, as urged by the defendants and the U.S. government, and over plaintiffs' objection that *Twitter* did not effect meaningful change. 144 S. Ct. at 2675. As these proceedings make clear, *Twitter* substantially changed the pleading standard for JASTA aiding-and-abetting claims.

B.       **The Court's Order Relied Upon Now-Rejected Components of** *Honickman* **and** *Kaplan***.**

This Court's Order did not address, or even mention, the Supreme Court's decision in *Twitter*. Rather, it applied the superseded standards set forth in *Honickman* and *Kaplan*, including portions of those decisions that were clearly and directly rejected by the Supreme Court.

Most prominently, the Order cited and relied on the now-overruled principle that the "knowing" component of the knowing-and-substantial-assistance element does "'not require [the defendant] to "know" anything more about [the criminal's] unlawful activities than what she knew for the general awareness element.'" Order at 18 (quoting *Honickman*, 6 F.4th at 500). Accordingly, the Court concluded that the "knowing" element has been sufficiently alleged here *because* the "general awareness" element has been sufficiently alleged.

As noted, *Twitter* plainly rejected the Court's premise. It held that the "knowing" element is "designed to capture the defendants' state of mind with respect to their actions and the tortious conduct . . . not the same general awareness that defines *Halberstam*'s second element," operating in tandem with substantiality "to capture *conscious and culpable* conduct." 598 U.S. at 503-04 (emphasis added). It further rejected the Ninth Circuit's conflation of "knowing" and "general awareness," finding error in "analyz[ing] the 'knowing' subelement as a carbon copy of the antecedent element of whether the defendants were 'generally aware' of their role in ISIS' overall scheme." *Id.* at 503; *see also* U.S. *Atchley* Br. at 15-16 (explaining that D.C. Circuit erred when, in reliance on *Kaplan*, it concluded that knowing prong of the "knowing and substantial assistance" element was satisfied so long as defendants' conduct was not accidental or inadvertent).

Even if the Supreme Court had not expressly held that the "knowing" element of a JASTA aiding-and-abetting claim is different and more restrictive than the general awareness element, that conclusion is plain from the Supreme Court's ruling. In *Twitter*, the Court found it "clear" that the

13

"general awareness" element *had* been sufficiently pleaded, based merely upon allegations that "defendants knew they were playing some sort of role in ISIS' enterprise." 598 U.S. at 497. And yet the Court spent pages analyzing defendants' alleged mental state to address the yet-unanswered "key question"—"whether defendants gave such knowing and substantial assistance to ISIS that they culpably participated in the Reina attack." *Id.* The Court concluded that, despite adequately pleading general awareness, the *Twitter* plaintiffs fell "far short" of plausibly alleging "knowing and substantial assistance." *Id.* at 505. By finding that the "knowing" element was necessarily satisfied because the "general awareness" element had been sufficiently pleaded, the Order reflects clear legal error.

Moreover, the Order holds that the knowing and substantial assistance element of a JASTA aiding-and-abetting claim requires only that the principal violation "be foreseeable from the illegal activity that the defendant assisted; *knowing and substantial assistance to the actual injury-causing act—here, Hamas's attacks—is unnecessary.*" Order at 12 (emphasis added) (quoting *Honickman*, 6 F.4th at 499). And it concludes that Plaintiffs have stated a claim under this standard.

That too has been clearly rejected by *Twitter*, which held that to state a JASTA aiding-and-abetting claim, the plaintiff must plead that the defendant "aided and abetted the *act* of international terrorism that injured the plaintiffs." 598 U.S. at 497 (emphasis added); *see also id.* at 495 (defendant "must have aided and abetted (by knowingly providing substantial assistance) another person *in the commission* of the actionable wrong—here, an act of international terrorism" (emphasis added)). To make that showing, the complaint must establish a "definable nexus between the defendants' assistance and [the terrorist] attack." *Id.* at 503. Crucially, it "is not enough . . . that a defendant have given substantial assistance to a transcendent 'enterprise' separate from and floating above all the actionable wrongs that constitute it." *Id.* at 495. "The focus

14

must remain on assistance to the tort for which plaintiffs seek to impose liability." *Id.* at 506. In not requiring any nexus between Kuveyt Türk's alleged conduct and the Attacks, the Order makes the very same error that the Ninth Circuit made—and the Supreme Court corrected—in *Twitter*.

Finally, in assessing *Halberstam*'s "substantiality factors," the Order (at 19) makes no reference at all to the arm's-length, commercial nature of the banking services that Kuveyt Türk allegedly provided, the "undisputed lack of intent" that Kuveyt Türk had to support Hamas terrorism, or the utter lack of connection between those alleged banking services and the Attacks. Under *Twitter*'s "sliding scale," the attenuated allegations here require an even greater showing of scienter. But the Court, following *Honickman*, did not apply that sliding scale at all. Thus, missing from the Order's substantiality analysis is any consideration of whether Plaintiffs have plausibly alleged that Kuveyt Türk "culpably associated [itself] with [Hamas's] actions." Again, the Order repeated the same errors identified by the Supreme Court in *Twitter*.

The Order's failure to address and apply binding Supreme Court authority, and its reliance instead upon now-rejected principles of law to sustain Plaintiffs' claim, constitutes error requiring reconsideration.

### C.     *Twitter* Compels Dismissal of Plaintiffs' Claim.

Properly applied, *Twitter* compels dismissal of the amended complaint. As the Court has understood the allegations, Plaintiffs contend that Kuveyt Türk "aided and abetted Hamas, the terrorist organization responsible for the" Attacks, because "the Bank maintained foreign bank accounts" for three customers that allegedly have ties to Hamas: (1) the Foundation for Human Rights and Freedoms and Humanitarian Relief ("IHH"); (2) Islamic University Gaza ("IUG"); and (3) Jihad Yaghmour. Order at 2. Although these customers have never been designated by the U.S. government as terrorists or otherwise subject to sanctions in the United States, Plaintiffs allege that media reports and publicly available information linked IHH, IUG, and Yaghmour to Hamas.

*See id.* at 2-6 (describing allegedly public reports linking the three customers to Hamas). "Kuveyt Türk employs several mechanisms" designed to keep terrorist groups from using its banking services, including "(a) suspicious activity reporting, (b) transaction monitoring, (c) adverse information screening, and (d) sanctions compliance." *Id.* at 6. It further maintains anti-money laundering and anti-terrorism policies against providing services to customers identified by local regulators and international bodies as terrorists. *Id.* But because Kuveyt Türk allegedly "maintain[ed] multiple bank accounts for" IHH, IUG, and Yaghmour, which were used to transfer funds, Plaintiffs contend that it "provid[ed] vital financial services to the terrorist organization responsible for the deaths and injuries of [P]laintiffs." *Id.* at 6-7.

Missing from Plaintiffs' allegations is any contention that Kuveyt Türk or its alleged banking services—or even its alleged customers themselves—had anything to do with the Attacks. Rather, Plaintiffs' claim is predicated entirely on the notion that the three customers had ties to Hamas *generally*. As the Court stated, "Plaintiffs thus bring a sole cause of action under JASTA against the Bank for allegedly aiding and abetting *Hamas* by knowingly providing substantial assistance *to Hamas*." *Id.* at 7 (emphasis added). Similarly missing is any allegation that the Bank *intended* to advance Hamas's terrorist ends—Plaintiffs concede that Kuveyt Türk takes steps to ensure that terrorist groups do not use the Bank's services. At bottom, Plaintiffs allege no more than that Kuveyt Türk provided routine, arm's-length, generally available banking services to three customers allegedly tied to Hamas. Under *Twitter*, these allegations are insufficient to allege "knowing and substantial assistance" to Hamas in the commission of the Attacks.

### 1.    The Amended Complaint Fails to Allege That Kuveyt Türk Engaged in "Conscious, Voluntary, And Culpable" Conduct.

*Twitter* makes clear that to state a JASTA aiding-and-abetting claim, the complaint must support a plausible inference of "conscious, voluntary, and culpable participation" in the terrorist

16

attack at issue "so as to help make it succeed." 598 U.S. at 493, 497 (cleaned up). In adopting this standard, the Supreme Court emphasized that routine commercial services provided in the ordinary course of business should not give rise to aiding-and-abetting liability, "lest *mostly passive actors like banks* become liable for all of their customers' crimes by virtue of carrying out routine transactions." *Id.* at 491 (emphasis added).

As set forth above, Plaintiffs do not allege that Kuveyt Türk provided the three allegedly Hamas-aligned customers with anything other than lawful, arm's-length, generally available, and routine banking services. Plaintiffs do not suggest that Kuveyt Türk provided these *for-profit* banking services with the intention to align itself with Hamas's terrorist activities—which is the level of culpability required under *Twitter*.

### 2. The Amended Complaint Fails to Allege Any Connection Between Kuveyt Türk's Alleged Banking Services and the Attacks.

As explained, to state a JASTA aiding-and-abetting claim, the defendant must "have aided and abetted the *act* of international terrorism that injured the plaintiff[]." *Twitter*, 598 U.S. at 497 (emphasis added). To make that showing, the complaint must establish a "definable nexus between the defendants' assistance and [the terrorist] attack." *Id.* at 503. Crucially, it "is not enough . . . that a defendant have given substantial assistance to a transcendent 'enterprise' separate from and floating above all the actionable wrongs that constitute it." *Id.* at 495. "The focus must remain on assistance to the tort for which plaintiffs seek to impose liability." *Id.* at 506.

Here, Plaintiffs make no effort whatsoever to connect the routine banking services Kuveyt Türk allegedly provided with the Attacks. *See id.* at 497 ("[B]ecause they are trying to hold defendants liable for the Reina attack, plaintiffs must plausibly allege that defendants aided and abetted ISIS in carrying out that attack."). Thus, Plaintiffs' theory of liability rests on precisely the sort of "transcendent enterprise" theory the Supreme Court rejected.

17

**3.    The Amended Complaint Does Not Allege That Kuveyt Türk Intentionally Formed a "Near Common Enterprise" with Hamas for the Purposes of the Nexus Exception in *Twitter*.**

As in *Twitter*, Plaintiffs attempt to impose liability on Kuveyt Türk for Hamas's conduct without alleging any meaningful nexus between the banking services it allegedly provided and the Attacks that injured Plaintiffs. And as *Twitter* observed, that sort of "expansive" theory would "necessarily hold defendants liable as having aided and abetted each and every [Hamas] terrorist act committed anywhere in the world." 598 U.S. at 501. Although the Supreme Court did not rule out the possibility of enterprise-wide, conspiracy-like liability in the exceptional case, it held that such a theory requires plausible allegations that the defendant "so systemically and pervasively assisted [the terrorist group] that defendants could be said to aid and abet every single [] attack" perpetrated by that group. *Id.* That is, it requires allegations that the defendant "intentionally associated" itself with the terrorist group, "affirmatively gave aid that would assist each of" the group's terrorist acts, or "formed a near-common enterprise" with the terrorist group. *Id.* at 502.

Plaintiffs allege nothing of the sort here. They do not contend that Kuveyt Türk intended to advance Hamas's terrorist agenda or intentionally aligned itself with Hamas's terrorist attacks. Nor do they make allegations from which an inference of intent could be drawn. Plaintiffs do not contend, for instance, that Kuveyt Türk provided the three alleged Hamas-affiliated customers with special treatment or unusual services. *See id.* at 502 (broader liability may be imposed where "the provider of routine services does so in an unusual way" but allegations of routine, generally available services are a "far cry" from pervasive and systemic support).

The amended complaint is therefore devoid of the sort of exceptional allegations from which the Court could plausibly infer that Kuveyt Türk aided and abetted *each and every* Hamas attack, as Plaintiffs' theory of liability requires.

18

### 4.    *Twitter*'s Substantiality Analysis Further Supports Dismissal.

In addition to its lengthy discussion of the "knowing" requirement for a JASTA aiding-and-abetting claim, *Twitter* further clarified how courts should understand and apply the *Halberstam* factors when determining whether a defendant's alleged conduct was "substantial" enough to support liability. 598 U.S. at 503-04. As the Court explained, those factors are meant to address "the fundamental question of aiding-and-abetting liability," which is: "[d]id defendants consciously, voluntarily, and culpably participate in or support the relevant wrongdoing?" *Id.* at 505. The answer to that question in *Twitter* was "no," in light of "the lack of nexus between that assistance and the Reina attack, the lack of any defendant intending to assist ISIS, and the lack of any sort of affirmative and culpable misconduct that would aid ISIS." *Id.*

*Twitter*'s reasoning compels the conclusion that Kuveyt Türk's alleged banking services to IHH, IUG, and Yaghmour were insufficiently "substantial" to constitute aiding and abetting the Attacks. As in *Twitter*, there is no alleged nexus between the alleged banking services and the Attacks, no allegation that Kuveyt Türk intended to participate in the Attacks or even in Hamas's terrorism more generally, and no allegations beyond the provision of routine and generally available banking services of the type available to any of the Bank's millions of customers.

Thus, under *Twitter*, Plaintiffs fail to plausibly allege both the "knowing" and "substantial" components of their aiding-and-abetting claim, requiring dismissal.

## II.    AS AN ALTERNATIVE, THE COURT SHOULD CERTIFY ITS ORDER FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(B) OR AWAIT THE SECOND CIRCUIT'S DECISION IN *WILDMAN*.

As Kuveyt Türk has explained, *Twitter* directly and expressly overruled principles of law relied upon in the Order to sustain Plaintiffs' aiding-and-abetting claim. With respect to these principles, the Court is bound to follow *Twitter*, rather than the pre-*Twitter* Second Circuit

19

precedent that *Twitter* rejected. If the Court has any doubt about the extent to which it must, or can, apply *Twitter*, however, it should authorize an interlocutory appeal under 28 U.S.C. § 1292(b).

Interlocutory appeal is appropriate where an order involves "a controlling question of law" on which there is "substantial ground for difference of opinion" and an "immediate appeal . . . may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). As the Court already has recognized, the question of the appropriate standard by which to assess Kuveyt Türk's motion to dismiss is a "controlling question of law," the answer to which "would materially affect the litigation's outcome," as required by § 1292(b). ECF 36 at 3-4 (citing *Capitol Records, LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 552 (S.D.N.Y. 2013)).

The only question, therefore, is whether there is a substantial ground for difference of opinion on this issue. Again, Kuveyt Türk does not believe there is a question as to whether the Court must follow *Twitter*, but if the Court has doubt about the extent to which *Twitter* applies here, or compels dismissal of Plaintiffs' claim (and thus finds a substantial ground for difference of opinion), then certification under § 1292(b) is appropriate.

Finally, the Second Circuit is currently considering the impact of *Twitter* on its precedent in *Wildman*, No. 23-132, and the Court may wish to await that decision for useful guidance. In *Wildman*, non-U.S. bank defendants are alleged to have aided and abetted terrorist attacks in Afghanistan perpetrated by the Taliban and al-Qaeda. 2022 WL 17993076, at *3 (E.D.N.Y. Dec. 29, 2022). On appeal, Plaintiffs-Appellants argue that the claims should be sustained under *Kaplan* and *Honickman*, which they say are consistent with *Twitter*, while Defendants-Appellees argue that *Twitter* adopted a new pleading standard that compels dismissal. *See* Appellee Br., *Wildman*, No. 23-132 (2d Cir. Aug. 10, 2023); Appellants Reply Br., *Wildman*, No. 23-132 (2d Cir. Sept. 29, 2023). *Wildman* was argued on March 13, 2024, and a decision could be issued soon.

20

### III.   THE COURT'S RULINGS ON JURISDICTIONAL DISCOVERY WARRANT RECONSIDERATION.

#### A.   Plaintiffs' Jurisdictional Allegations Are Inadequate.

The Court reconsidered its ruling dismissing the claim against Kuveyt Türk for lack of personal jurisdiction and denying jurisdictional discovery based solely on its understanding that the parties had reached an agreement, which the Court adopted in its ruling on the first motion to dismiss, that only the Fed. R. Civ. P. 12(b)(6) issue should be addressed at the pleading stage, while the issue of personal jurisdiction should be reserved until after discovery. Order at 9. Reconsideration of that conclusion is appropriate for several reasons.

First, the Order overlooks key facts. Principal among them is the fact that Kuveyt Türk did not reach *any* agreement with Plaintiffs regarding its motion to dismiss the *amended* complaint. Plaintiffs do not contend, nor could they, that Kuveyt Türk "agreed" that Plaintiffs should be entitled to discovery before the Court could rule on jurisdiction. To the contrary, Kuveyt Türk's motion to dismiss the amended complaint advanced personal jurisdiction as its first argument, and expressly opposed Plaintiffs' request for jurisdictional discovery. *See* ECF 49, 51. As courts have consistently held, "when an amended complaint is filed, the jurisdictional basis for the suit is reviewed anew." *Royal Canin U.S.A., Inc. v. Wullschleger*, -- S. Ct --, 2025 WL 96212, at *7 (2025); *see also Dhulos v. Floating & Abandoned Vessel*, 162 F.3d 63, 68 (2d Cir. 1998) (holding it was "correct to look only to the allegations in [the] most recent complaint," because "an amended complaint . . . super[s]edes the original, and renders it of no legal effect" (cleaned up)).

Moreover, any prior agreement reached with respect to the *original* complaint was predicated on this Court's statements, during an initial conference, to the effect that if Kuveyt Türk pressed its jurisdictional defense in its motion to dismiss, the Court would require "full discovery" and "a full factual record," perhaps in advance of even considering the Bank's Rule 12(b)(6)

grounds for dismissal. Hr'g Tr. 11:9-12:13, 18:18-22 (Dec. 18, 2019). When Plaintiffs filed the *amended* complaint, however, and without statements from the Court regarding its intent to order jurisdictional discovery, the Bank advanced its jurisdictional defense, which the Court held warranted dismissal in this case. ECF 49, ECF 62.

Therefore, the Order's conclusion that it would be "unjust" not to honor the parties' "agreement" that Plaintiffs would receive jurisdictional discovery overlooks the fact that there was no such agreement. As the Supreme Court just held, the filing of the amended complaint "supersede[d] the old one," such that the earlier complaint "no longer perform[ed] any function in the case." *Royal Canin*, 2025 WL 96212, at *7 (internal quotation marks omitted). The Bank was then entitled to move for dismissal of the new complaint under Fed. R. Civ. P. 12(b)(2) and did so. The Order provides no authority for continuing to hold the Bank to an issue-sequencing agreement made with respect to a defunct pleading, nor does the Order explain what "manifest injustice" would result from addressing the Bank's jurisdictional arguments. No such injustice is apparent, particularly considering that the amended complaint *added new plaintiffs*—who were not parties to any prior agreement—expanding the issues in the case and the potential scope of merits discovery.

Further, even if still relevant, the Court misconstrued the substance of the parties' previous agreement. What "[t]he Parties agreed," as explained in Kuveyt Türk's first motion to dismiss, was that "this Court should first consider the Bank's arguments regarding failure to state a claim, and . . . that any discovery on personal jurisdiction should proceed simultaneously with any discovery on the merits *in the event that this Court holds both* that the case should not be dismissed for failure to state a claim *and* that it cannot rule on Defendant's Rule 12(b)(2) motion until discovery on that issue has taken place." ECF 24-1 at 28 n.10 (emphasis added). In other words,

22

Kuveyt Türk agreed only that any jurisdictional discovery need not precede any merits discovery; if the complaint was not dismissed on either ground, discovery on both issues could proceed, and both issues could be raised again at summary judgment. But Kuveyt Türk did not agree, as the Order presumed, that Plaintiffs should receive jurisdictional discovery *before* this Court's assessment of the sufficiency of their jurisdictional allegations.

Second, the Order does not take account of now-controlling authority. In its prior dismissal decision, the Court held that Plaintiffs' jurisdictional allegations fail because they are "conclusory, vague, and *fail to establish any connection* between the attacks at issue and the Bank's correspondent bank accounts in New York." ECF 62 at 5 (emphasis added). It went on to hold that Plaintiffs' "allegations of transfers for the benefit of Hamas somewhere down the line" were insufficiently related to their claim, and "too tenuous to support personal jurisdiction." *Id.* at 7. And "given the vague jurisdictional allegations, particularly with respect to relatedness," the Court held that Plaintiffs had not made the threshold showing required to obtain jurisdictional discovery—which "would likely be fruitless and amount to a 'fishing expedition.'" *Id.* at 8.

The Court's prior reasoning in dismissing the case for lack of personal jurisdiction and denying jurisdictional discovery is now even more deeply supported by the Supreme Court's decision in *Twitter*. As discussed above, *Twitter* made clear that to state a JASTA aiding-and-abetting claim, the plaintiff must allege that the defendant "aided and abetted the *act* of international terrorism that injured the plaintiffs" and that the complaint must establish a "definable nexus between the defendants' assistance and [the terrorist] attack." 598 U.S. at 497, 503 (emphasis added). Thus, alleged support in the form of banking services to Hamas-aligned customers (or even Hamas itself) is *insufficient* to support JASTA aiding-and-abetting liability here, absent a connection to the Attacks at issue in this case. It follows that transactions involving

23

Hamas-aligned customers that are unrelated to the Attacks (or even to terrorism)—which is all that is alleged here—are insufficiently "related" to Plaintiffs' claim to support jurisdiction.

Because transactions that are not alleged to be related to the Attacks cannot support a claim, they cannot serve as the basis for jurisdiction, either. Forcing burdensome and invasive jurisdictional discovery in an effort to prove that irrelevant transactions occurred would be even worse than a "fishing expedition," it would be entirely futile—the Court would be compelled to dismiss after discovery for exactly the same reason that it already did before discovery.

The Second Circuit has affirmed denial of jurisdictional discovery over a foreign defendant where plaintiffs failed to establish a prima facie showing of jurisdiction, as the Court already concluded is true of the allegations here. *See Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185-86 (2d Cir. 1998). Indeed, courts routinely "dismiss [a] complaint without allowing discovery" when the discovery request rests only on "speculations or hopes that further connections to the forum will come to light in discovery." *See, e.g.*, *NovelAire Techs., L.L.C. v. Munters AB*, 2013 WL 6182938, at *13 (S.D.N.Y. Nov. 21, 2013) (cleaned up).

For these reasons, the Court should reconsider its decision to permit jurisdictional discovery, and reinstate its ruling dismissing Plaintiffs' claim for lack of personal jurisdiction.

### B.   If This Court Were To Order Jurisdictional Discovery, It Should Be Targeted and Precede Merits Discovery.

In any event, if the Court does not reinstate its ruling dismissing Plaintiffs' claim for lack of personal jurisdiction or dismiss on the merits in light of *Twitter*, then the Court should reconsider its ruling "that jurisdictional discovery will proceed simultaneously with discovery on the merits." Order at 19-20.

Plaintiffs' only specific jurisdictional allegations are that the Bank maintains U.S. correspondent accounts and that "from 2012-2016, the Bank transferred 'at least hundreds of

24

thousands of Eurodollars through an account . . . in the name of IUG'" "'at the direction of Jamal N. al-Khoudary, a HAMAS representative who served as the Chairman of the Board of Trustees of IUG, and, on information and belief, Al-Agha, Jr. an SDGT designated as a HAMAS fundraiser.'" ECF 62 at 2, 5. This Court correctly held that these allegations were insufficient to establish a prima facie showing of jurisdiction and that jurisdictional discovery would likely prove futile. *See id.* at 5, 8 ("[J]urisdictional discovery would likely be fruitless and amount to a 'fishing expedition.'"); *see also* Order at 10 (noting Court's continued "skepticism" over ability to establish jurisdiction over Kuveyt Türk). To the extent this Court now thinks these inadequate allegations warrant jurisdictional discovery (which they do not), that discovery should be limited to documents relating to this allegation—whether IUG's alleged transfer through a U.S. correspondent account occurred and is related to the Attacks. Such limited jurisdictional discovery should proceed quickly, with the opportunity for the Bank to raise its jurisdictional argument again at its conclusion before lengthy and burdensome discovery consumes the Court and parties' resources.

## CONCLUSION

For the reasons set forth above, the Court should grant Kuveyt Türk's motion for reconsideration or, in the alternative, certify its order for interlocutory appeal under 28 U.S.C. § 1292(b) or stay the case pending the Second Circuit's ruling in *Wildman*. In light of the serious grounds for reconsideration or interlocutory appeal set forth herein, Kuveyt Türk requests that the Court stay any discovery until the Court resolves these critical questions. *See Palladino v. JPMorgan Chase & Co.*, 730 F. Supp. 3d 4, 10 (E.D.N.Y. 2024) (district courts may stay discovery for "good cause" based on "the particular circumstances and posture of each case").

Dated:  January 29, 2025                          Respectfully submitted,


By: */s/ Mark G. Hanchet*
    Mark G. Hanchet
    Christopher J. Houpt
    Robert W. Hamburg
    MAYER BROWN LLP
    1221 Avenue of the Americas
    New York, New York 10020

    Steven T. Cottreau (NY Bar 4967485)
    Gabrielle E. Pritsker (NY Bar 5432208)
    JONES DAY
    51 Louisiana Avenue, N.W.
    Washington, D.C. 20001.2113

    Fahad A. Habib (*pro hac vice*)
    Emily Goldberg Knox (*pro hac vice*)
    JONES DAY
    555 California Street, Suite 2600
    San Francisco, CA 94104.1500

    *Attorneys for Defendant*
    *Kuveyt Türk Katilim Bankasi A.Ş.*

26