**MAYER | BROWN**

Mayer Brown LLP
1221 Avenue of the Americas
New York, NY 10020-1001
United States of America

T: +1 212 506 2500

mayerbrown.com

**Mark G. Hanchet**
Partner
T: +1 212 506 2695
MHanchet@mayerbrown.com

April 14, 2025

**BY ECF**

Judge Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: *Henkin v. Kuveyt Türk Katilim Bankasi A.S.*,
    19-cv-05394-BMC (E.D.N.Y.)

Dear Judge Cogan:

On behalf of Defendant Kuveyt Türk Katilim Bankasi A.Ş. ("Kuveyt Türk" or the "Bank"), we write pursuant to the Case Management Plan (ECF No. 73-1) to advise the Court of "any bank confidentiality, data protection, or other foreign law issues that arise in connection with Plaintiffs' initial document requests and interrogatories and the efforts of the parties to resolve [any] impediments to disclosure." ECF No. 73-1, No. III.4.

As we have explained to Plaintiffs, Kuveyt Türk is committed to complying with its discovery obligations in this case and avoiding or resolving conflicts with Turkish law. Following recent modifications to Turkish bank confidentiality laws, we understand that Kuveyt Türk is generally permitted, subject to U.S. reciprocity, to respond to requests that are "necessary" and "proportional" to the needs of the case and that relate specifically to the customers that are expressly alleged to be parties to the events complained of. Because these requirements accord with Kuveyt Türk's obligations under the Federal Rules, and with the scope of discovery contemplated by the Court, we do not believe that Turkish law will impede the Bank's ability to respond to appropriate requests. *See* Feb. 3, 2025, Minute Order ("Although some aspects of this case are certainly complex, the discovery plaintiffs seek from defendant will likely be straightforward, including defendant's records for the accounts of the customers identified in the amended complaint and any relevant policies defendant had in place during the relevant time period."). Thus, Kuveyt Türk should generally be permitted to produce documents related to the three alleged customers at issue in this case—(i) IHH, (ii) IUG, and (iii) Jihad Yaghmour (together, the "Three Customers")—as well as the Bank's relevant policies.

Mayer Brown is a global services provider comprising an association of legal practices that are separate entities including
Mayer Brown LLP (Illinois, USA), Mayer Brown International LLP (England & Wales), Mayer Brown Hong Kong LLP (a Hong Kong limited liability
partnership which operates in temporary association with Hong Kong partnership Johnson Stokes & Master)
and Tauil & Chequer Advogados (a Brazilian law partnership).

Mayer Brown LLP

Judge Brian M. Cogan
April 14, 2025
Page 2

To the extent that Plaintiffs' initial discovery requests (the "Requests") are not necessary and proportional or limited to these categories of information and go beyond Rule 26, however, Turkish law prevents the Bank from complying fully with those Requests.[1] First, Plaintiffs' Requests for Production ("RFP") 1 and 2 seek customer information not only relating to the Three Customers, but also to more than 90 other individuals or entities (consisting of hundreds of names and aliases in total), most of which are not even mentioned in the Amended Complaint. Second, the Requests seek information not only from the time of the three attacks at issue in the case, but also more than three and a half years before the first attack, more than three years between the second and final attacks, and more than one month after the final attack. Finally, the Requests seek all "Account Related Documents" and "Funds Transfers Records" without any reasonable limitation.

In addition to exceeding the scope of disclosure allowable under Turkish law, these Requests also exceed the requirements of the Federal Rules of Civil Procedure and are inconsistent with this Court's statements about the permissible scope of discovery. Kuveyt Türk has timely objected to the Requests on these grounds and is meeting and conferring with Plaintiffs to discuss narrowing the Requests. We are hopeful that, once Plaintiffs' Requests are properly narrowed as required under U.S. law, there will be no Turkish law obstacles to complying with those Requests.[2]

\* \* \* \*

Below, we provide the Court with (1) an overview of Turkish law relevant to Plaintiffs' Requests, (2) a summary of international comity considerations applicable under Supreme Court precedent and the Restatement (Third) of Foreign Relations Law; (3) a summary of the portions of Plaintiffs' Requests that, as crafted, implicate limitations imposed by Turkish law; and (4) an update on the parties' meet-and-confer efforts.

## I.     RELEVANT TURKISH LAW

As a financial institution organized and operating in Turkey, Kuveyt Türk is subject to Turkish law and banking regulations. Most relevant for the Requests in this case is Turkish Bank

---

[1] Kuveyt Türk preserves all objections stated in its Responses and Objections to Plaintiffs' Requests.

[2] This letter is not intended to present an exhaustive review of Turkish confidentiality laws and the application of those laws to Plaintiffs' Requests, but rather an overview of the most relevant provisions based on the Bank's review to date, and the general application of those provisions as contemplated by the Case Management Plan. Kuveyt Türk reserves the right, to the extent necessary, to present a Turkish law expert to testify as to the state of Turkish law and the application of that law to each of the Requests here. Moreover, our understanding of Turkish law is subject to change if new guidance emerges from relevant Turkish authorities regarding the scope and applicability of Turkish law.

Mayer Brown LLP

Judge Brian M. Cogan
April 14, 2025
Page 3

Law No. 5411, as clarified in 2022 by the Regulation on the Disclosure of Confidential Information, its amendment, and Circular No. 2022/1 on the Disclosure Regulation.

### A.      Turkish Banking Law No. 5411

Under Article 73 of Turkish Banking Law No. 5411 ("Article 73"), the Bank is "not permitted to disclose [] confidential information to any person or entity other than the authorities expressly authorized by law." Banking Law No. 5411, Art. 73 (Turk. Aug. 2022).[3] Confidential information includes information relating to the Bank itself, and information relating to its customers. Confidential bank information includes bank policies and procedures, financial statements, and other internal records. Confidential customer information includes personal and financial customer information after a customer relationship is established. *Id.* at Art. 73, ¶ 3.

Under Article 73, the Bank may disclose confidential information only as permitted under the Banking Law and its attendant regulations.

### B.      Regulation on Sharing Secret Information

Article 73 authorizes the Turkish banking regulatory authority—the Banking Regulation and Supervision Agency ("BRSA")—to "determine the scope, format, procedures, and principles of sharing and disclosure of information classified as secrets" pursuant to the Banking Law. *Id.* at Art. 73, ¶ 5. Pursuant to that authority, BRSA issued the Regulation on the Disclosure of Confidential Information effective January 1, 2022.[4] Regulation on Sharing Secret Information, 04.06.2021/31501 (Turk. Jan. 1, 2022) (the "Regulation"). The Regulation clarifies certain exceptions to the general prohibition on sharing confidential customer and bank information.[5]

The relevant exceptions, and the proportionality and reciprocity requirements that apply to those exceptions, are explained below.

### 1.      Confidential Customer Information

Under Article 5 of the Regulation, the Bank may disclose confidential customer information "belonging to the ***real or legal persons who are parties to the dispute in question***" where "***it is necessary for the proof of the claim or defense*** in disputes to which the bank is a party," (*id.* at Art. 5 ¶ 7) (emphases added), "[p]rovided that a confidentiality agreement is concluded and [the sharing of information is] limited to the specified purposes only" (*id.* at Art. 5

---

[3] BRSA provides an English version of Banking Law No. 5411 (https://www.bddk.org.tr/Mevzuat/DokumanGetir/961).

[4] The Regulation was subsequently amended as of July 1, 2022.

[5] BRSA provides English versions of the Amended Regulation (https://www.bddk.gov.tr/Mevzuat/DokumanGetir/1271) and Circular No. 2022/1 on the Disclosure Regulation (www.bddk.org.tr/Mevzuat/DokumanGetir/1267).

Mayer Brown LLP

Judge Brian M. Cogan
April 14, 2025
Page 4

¶¶ 2, 9). Although the language of this exception references production to a judicial authority, because the parties themselves—and not the Court—conduct discovery in U.S. litigation, we believe that Turkish law allows for the disclosure of confidential customer information to Plaintiffs in this case. Moreover, although the language of this exception appears to permit nothing more than the disclosure of information belonging to customers that are parties to the dispute, we understand it to allow disclosure not only of information belonging to those named parties to the litigation, but also of information belonging to individuals or entities that are expressly alleged to be "party" to the events giving rise to the action. We likewise understand the law to allow the disclosure of information regarding transactional counterparties that is reflected in the subject customers' records.

As relevant here, this exception would permit the disclosure of confidential information relating to the Three Customers—*i.e.*, those customers expressly alleged in the Amended Complaint to have held accounts at the Bank that purportedly give rise to the Bank's liability—subject to the proportionality and reciprocity principles described below.

### 2. Confidential Bank Information

Confidential bank information—including bank policies and procedures, financial statements, and other internal records—may be disclosed pursuant to a resolution of the Bank's Board of Directors without violating the confidentiality obligation, provided that disclosure comports with the proportionality and reciprocity principles (described below). Regulation Arts. 5 ¶¶ 5, 6 ¶ 1; Circular 2022/1, at p. 6. The Bank intends to seek one or more board resolutions to facilitate the production of responsive and proportional confidential bank information.

### 3. Proportionality Principle

Article 6 of the Regulation clarifies that any disclosure made under Article 5, whether of confidential customer or bank information, must comply with the principle of proportionality. Regulation Art. 6.

The Turkish proportionality principle requires, at a minimum, the following:

 i. The disclosure should contain only as much data as required for the stated purposes;

 ii. All of the data or data sets contained in the disclosure must be necessary to achieve the purpose of the disclosure;

 iii. If anonymization or aggregation is possible while achieving the purpose of the disclosure, these methods should be employed; and

 iv. Disclosure should be made in such a way as to minimize the possibility and extent of data copying.

4

Mayer Brown LLP

Judge Brian M. Cogan
April 14, 2025
Page 5

*See* Art. 6(1)(a)-(d). The proportionality principle is a critical part of the Regulation, which separately requires banks to establish and maintain an Information Sharing Committee to ensure that the principle is adhered to with respect to any disclosure made under Article 5. *See* Regulation Art. 7(1).[6]

### 4.      Reciprocity Principle

Article 6 of the Regulation further clarifies that the disclosure of confidential customer or bank information under Article 5 to third parties located outside of Turkey must comply with the principle of reciprocity. Art. 6 (11). Under this principle, if the country in which the receiving party is located does not cooperate with similar requests for mutual assistance emanating from Turkey, then reciprocity is lacking and disclosure under Article 5 is prohibited.

Here, U.S. courts generally facilitate requests for discovery or mutual legal assistance emanating from Turkey. Indeed, U.S. courts are receptive to discovery requests under 28 U.S.C. § 1782 for use in proceedings pending in Turkish courts. *See, e.g.*, *In re Request for Jud. Assistance from 2nd Civ. Ct. of Intell. & Indus. Prop. Rts. in Ankara, Turkey*, 2024 WL 3047998, at *2 (N.D. Cal. June 18, 2024) (granting request for discovery under § 1782 for use in a proceeding in Turkey); *In re Request for Jud. Assistance from 13th Fam. Ct. of Istanbul, Turkey in Matter of Canbilek*, 2022 WL 721912, at *3 (D.N.J. Feb. 18, 2022), *report and recommendation adopted*, 2022 WL 717155 (D.N.J. Mar. 10, 2022) (same). Moreover, the United States and Turkey, since 1981, have been parties to a bilateral Mutual Legal Assistance Treaty ("MLAT"), which facilitates the sharing of information and evidence in criminal matters.[7] Therefore, absent changes in relations between the United States and Turkey, the principle of reciprocity is likely satisfied in this case.

In sum, "where it is necessary for the proof of the claim or defense of the bank in disputes to which the bank is a party" (Regulation, Art. 5 ¶ 7), the Bank may disclose confidential customer information regarding customers who can be considered to be a "party" to the events giving rise to the action (*id.*) where disclosure complies with both the principles of proportionality and reciprocity (*id.* at Art. 6(1)). The Bank may disclose confidential bank information, pursuant to board resolution, where disclosure complies with the principles of proportionality and reciprocity.

---

[6] Article 7 of the Regulation requires banks to establish an Information Sharing Committee, reporting to the board of directors, that coordinates the bank's disclosure of confidential bank and customer information pursuant to Article 5, and ensures that disclosure is consistent with the proportionality and reciprocity principles described herein. *See* Regulation Art. 7.

[7] *See* U.S. Dep't of Justice, *Mutual Legal Assistance Treaties of the United States* (Apr. 2022), https://www.justice.gov/d9/pages/attachments/2022/05/04/mutual-legal-assistance-treaties-of-the-united-states.pdf.

Mayer Brown LLP

Judge Brian M. Cogan
April 14, 2025
Page 6

### C.       Enforcement Under the Turkish Banking Law

Article 159 provides penalties for a violation of Article 73 of the Banking Law, which include up to three years imprisonment and a substantial monetary fine.

## II.      RESTRICTIONS UNDER U.S. LAW AND INTERNATIONAL COMITY

Under Federal Rule of Civil Procedure 26, the scope of discovery is limited to "any nonprivileged matter that is *relevant* to any party's claim or defense and *proportional* to the needs of the case." Fed. R. Civ. P. 26(b)(1) (emphasis added). "Information 'is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.'" *Denim Habit, LLC v. NJC Boston, LLC*, 2016 WL 2992124, at *3 (E.D.N.Y. May 23, 2016) (cleaned up). "The burden of demonstrating relevance is on the party seeking discovery." *Lam v. State St. Corp.*, 2025 WL 834885, at *2 (S.D.N.Y. Mar. 17, 2025) (quotation omitted). "Courts are encouraged to be more aggressive in identifying and discouraging discovery overuse by emphasizing the need to analyze proportionality before ordering production of relevant information." *Id.* at *3 (cleaned up).

And as the Supreme Court has explained, "American courts, in supervising pretrial proceedings, should exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position." *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 546 (1987). Moreover, when seeking information abroad, "the district court must supervise pretrial proceedings particularly closely to prevent discovery abuses." *Id.*

When production would violate a foreign jurisdiction's laws, courts must perform a comity analysis guided by the Restatement (Third) of Foreign Relations Law. *Id.* at 544 & n.28. The Restatement factors include: "(1) the importance to the . . . litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located." *Id.* at 544 n.28 (quoting Restatement (Third) of Foreign Relations Law § 442(1)(c)). "Courts in the Second Circuit also consider two additional factors: (6) the hardship of compliance on the party or witness from whom discovery is sought; and (7) the good faith of the party resisting discovery." *Owen v. Elastos Found.*, 343 F.R.D. 268, 282 (S.D.N.Y. 2023) (quotation omitted).

6

Mayer Brown LLP

Judge Brian M. Cogan
April 14, 2025
Page 7

## III.    ASPECTS OF PLAINTIFFS' DISCOVERY REQUESTS THAT IMPLICATE TURKISH LAW LIMITATIONS

As noted, compliance with certain of the Requests as written would go beyond the permitted disclosure under Turkish law.[8] The table and discussion below reflect these categories.

| Request No. | Request |
|---|---|
| RFP #1 | All Account-Related Documents for any accounts maintained at Kuveyt Türk (during the Most Relevant Period) by the following persons and entities: [8 persons and entities listed] |
| RFP #2 | To the extent such persons and entities were customers of the Defendant during the Most Relevant Period, all Fund Transfers Records for such persons and entities during the Most Relevant Period. [260 names and aliases] |

### A.    Information For Entities/Individuals Not Listed In The Amended Complaint

RFPs #1 and #2 are not necessary and proportional under Turkish law. Most of the individuals and entities listed in these Requests do not appear at all in the Amended Complaint. And Plaintiffs do not allege that any customer beyond the Three Customers received banking services from Kuveyt Türk that give rise to liability. Therefore, we believe that the production of material relating to more than 90 individuals or entities beyond the Three Customers does not comport with the proportionality principle set forth in Article 6, which requires that disclosure include "only as much data as required for the stated purposes" and only data "necessary to achiev[e]" such purposes. *See* Regulation Art. 6(1)(a)-(d).

Aside from the Turkish law issues, these Requests also go beyond the scope of discovery set forth in Federal Rule 26 and the scope envisioned by this Court. *See* Feb. 3, 2025 Minute Order. As the Court explained, discovery would "likely be straightforward, including defendant's records for the accounts of *the customers identified in the amended complaint*." *Id.* (emphasis added).

Limiting RFPs #1 and #2 is therefore necessary to bring those Requests in line with Turkish and U.S. law.

---

[8] Except as to the time frame, Kuveyt Türk does not anticipate that Turkish law will impede its ability to respond to Plaintiffs' RFP #3 (policies and procedures), Interrogatory #1 (Kuveyt Türk's U.S. dollar correspondent accounts), or RFP #4 (documents used to prepare a response to Interrogatory #1).

Mayer Brown LLP

Judge Brian M. Cogan
April 14, 2025
Page 8

### B.    Relevant Time Period

All of Plaintiffs' Requests are subject to an overbroad time period, and we believe that adherence to that time period would violate the proportionality principle of Article 6. The Requests define the relevant time period as January 1, 2012 to January 30, 2019 (or March 31, 2019 for Plaintiffs' interrogatories). *See* Ex. A ¶ 13; Ex. B ¶ 1.

Plaintiffs' sole claim in this action is that Kuveyt Türk aided and abetted, by knowingly and substantially assisting in, three attacks in the West Bank that occurred on October 1, 2015, November 19, 2015, and December 13, 2018, respectively. Am. Compl. ¶¶ 7, 21, 83. And the Supreme Court has made clear that the focus of such a claim must remain on the attacks giving rise to the plaintiff's injury. *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 503 (2023) (in determining whether defendant gave substantial assistance, "[t]he focus . . . must remain on the [] attack"). Financial services provided *after* the attacks cannot have substantially assisted in those attacks (or assisted at all), and therefore records relating to such post-hoc services are not "necessary for the proof of the claim or defense" under Article 5 or proportional under Article 6. Neither are records relating to services provided years before the attacks—which would bear minimal (if any) relevance to attacks—all small scale under Plaintiffs' allegations—that occurred years later. As such, the relevant time period dictated by Plaintiffs' Requests is inconsistent with the proportionality principle required under Turkish law.

And again, under the Rule 26 standard, the time period applicable to Plaintiffs' Requests must be "proportional to the needs of the case." Narrowing the relevant time period under Rule 26 may well obviate any conflict with Turkish law.

### C.    Undefined Scope of Responsive Materials

RFPs #1 and #2 are also inconsistent with Article 6's proportionality principle, in that they broadly seek "all account-related documents," and "all funds transfer records." These Requests run counter to the core requirement of Article 6 proportionality that disclosure should contain "only as much data as required for the [stated] purposes." Regulation Art. 6(1)(a).

Plaintiffs' claim is that the Bank provides services to the Three Customers, which somehow substantially assisted Hamas in perpetrating three attacks in the West Bank. The production of "all" records regarding subject customers, without regard to whether they relate to Plaintiffs' claim, would not satisfy the proportionality principle. As with the relevant time period, once the scope of these Requests is narrowed under Rule 26, any conflict with Turkish law may be avoided.

8

Mayer Brown LLP

Judge Brian M. Cogan
April 14, 2025
Page 9

**D.     Suspicious Transaction Reports (STRs) And Confidential Information Received from Judicial Authorities**

As in the United States, Turkish law imposes some restrictions on the ability of banks to disclose Suspicious Transaction Reports[9] (akin to Suspicious Activity Reports in the United States) and confidential documents received from judicial authorities. It is not clear at this stage that any such documents or information are implicated by Plaintiffs' Requests, but we note these restrictions now for completeness.

**IV.     MEET AND CONFER EFFORTS**

The parties met and conferred on April 14, 2025, regarding the issues presented herein. Kuveyt Türk explained its understanding of relevant Turkish law as it relates to Plaintiffs' Requests, and responded to Plaintiffs' questions on the matter. The parties agreed to continue their discussions regarding Turkish law, as well as the scope of Plaintiffs' requests under Rule 26, in an effort to avoid or resolve any impediment to disclosure. The parties will be speaking again on these issues soon.

Respectfully submitted,

*/s/ Mark G. Hanchet*
Mark G. Hanchet

---

[9] *See* Article 4 of Law No. 5499 on Prevention of Laundering Proceeds of Crime and Article 29 of the Regulation on Measures Regarding Prevention of Laundering Proceeds of Crime and Financing of Terrorism.

9