UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ESTATE OF EITAM HENKIN, *et al.* | : |
| | : |
| Plaintiffs, | : |
| | : |
| -against- | : No. 19-cv-05394-BMC |
| | : |
| KUVEYT TÜRK KATILIM BANKASI A.Ş., | : |
| | : |
| Defendant. | : |
| | : |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION TO COMPEL DEFENDANT TO ANSWER AND PRODUCE
DOCUMENTS RESPONSIVE TO PLAINTIFFS' INITIAL DISCOVERY**

**TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................... 2

RELEVANT BACKGROUND .................................................................................... 5

    A.  Defendant Objects To Producing Information On The Full Range Of Its Hamas-Linked Customers. ........................................................................................ 6

    B.  Defendant Advances An Unreasonable Time Period Limitation. ............... 7

    C.  Defendant Attempts To Impose Unreasonable Substantive Restrictions On Producing Records. ..................................................................................... 8

    D.  Defendant Argues That Disclosures Beyond Its Objections Will Violate Turkish Bank Secrecy Laws, But Admits There Is No Real Conflict Between Turkish Law And Rule 26's Requirements. ................................................... 9

ARGUMENT ............................................................................................................. 10

I.  Turkish Bank Secrecy Laws Do Not Impede Discovery Under The Federal Rules .......... 10

    A.  Defendant Has Failed To Demonstrate That Foreign Law Bars Disclosure Beyond Rule 26. ...................................................................................... 10

    B.  If Necessary, The Court's Comity Analysis Should Heavily Favor Disclosure. ....... 10

        1.  The Compelling U.S. Interests in Preventing Terror Financing Overwhelmingly Weighs in Favor of Ordering Defendant to Provide the Requested Discovery ........................................................................ 12

        2.  The Importance of the Requested Documents to This Litigation Heavily Favors Compelling Their Production .................................................... 13

        3.  The Specificity with Which Plaintiffs Have Identified the Requested Documents Fully Supports Compelling Their Production ...................... 13

        4.  Plaintiffs' Inability to Secure the Requested Documents Through Reasonable Alternative Means Supports Their Production by Defendant ...... 14

        5.  Defendant Has Not Indicated a Measure of Good Faith .................... 14

        6.  Any Hardship Cited by Defendant is Speculative ............................. 15

II.  Plaintiffs' Discovery Requests Are Proportional and Relevant Under Rule 26 ................ 15

    A.  Defendant's Proportionality Objections Are Meritless Given the Importance of the Litigation. .................................................................................. 15

    B.  Defendant's Relevance Objections Are Meritless Given the Requested Information Is Highly Relevant to Plaintiffs' Aiding and Abetting Claims. ............. 17

1.      Discovery Targeting Defendant's Potential Hamas Customers is Highly Relevant to Plaintiffs' Claims. ...........................................................................18

2.      Discovery Within Plaintiffs' Relevant Temporal Scope is Appropriate and Highly Relevant to Plaintiffs' Claims. ..............................................................20

3.      The Court Should Reject Defendant's Unsubstantiated Restrictions on the Requested Document Categories. .....................................................................21

CONCLUSION .........................................................................................................................23

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Averbach v. Cairo Amman Bank*,
    No. 19-CV-0004-GHW-KHP, 2025 WL 504612 (S.D.N.Y. Feb. 14, 2025) ............6, 11, 12, 14

*Bartlett v. Societe Generale De Banque Au Liban Sal, et al.*,
    2023 WL 2734641 (E.D.N.Y. Mar. 31, 2023) ...................................................................12, 21

*Est. of Henkin v. Kuveyt Turk Katilim Bankasi A.S.*,
    No. 19-cv-5394, 2025 WL 218830 (E.D.N.Y. Jan. 16, 2025) ....................................................4

*Flores v. Stanford*,
    2022 WL 354719 (S.D.N.Y. Feb. 7, 2022) .............................................................................17

*Fossil Group v. Angel Seller LLC*,
    No. 20-cv-2441 (WFK)(TAM), 2021 WL 5181308 (E.D.N.Y. October 22, 2021).................18

*King v. Habib Bank Ltd.*,
    No. 20CV4322LGSOTW, 2023 WL 3558773 (S.D.N.Y. Apr. 21, 2023) ...............................20

*Miller v. Arab Bank, PLC*,
    No. 1:18-CV-2192 (HG)(PK), 2023 WL 2731681, (E.D.N.Y. Mar. 31, 2023) ........3, 16, 20, 21

*New Falls Corp. v. Soni*,
    No. 16-cv-6805 (ADS)(AKT), 2020 WL 2836787 (E.D.N.Y. May 29, 2020) ..............5, 15, 17

*Oppenheimer Fund., Inc. v. Sanders*,
    437 U.S. 340 (1978) .............................................................................................................5, 18

*S.E.C. v. Gibraltar Glob. Secs., Inc.*,
    No. 13-cv-2575 (GBD)(JCF), 2015 WL 1514746, (S.D.N.Y. Apr. 1, 2015)........................3, 9

*Strauss v. Credit Lyonnais, S.A.*,
    242 F.R.D. 199 (E.D.N.Y. 2007)...............................................................................................3

*Wultz v. Bank of China Ltd.*,
    910 F. Supp. 2d 548 (S.D.N.Y. 2012) ........................................................................3, 12, 14

## <u>Statutes</u>

18 U.S.C. § 2333 .............................................................................................................................16

18 U.S.C. § 2334 .............................................................................................................................13

iv

**Rules**

Fed. R. Civ. P. 26 ................................................................................................................ Passim

Fed. R. Civ. P. 34 ...................................................................................................................... 1

Plaintiffs respectfully submit this Memorandum of Law in support of their motion, pursuant to Fed. Rs. Civ. P. 26 and 34, to compel the production of centrally relevant documents and information that Defendant Kuveyt Türk Katilim Bankasi A.Ş. ("Kuveyt Türk" or "Defendant") has refused to produce. Plaintiffs have attached a Proposed Initial Production Order for the Court's consideration. The parties' dispute can be distilled into three (3) categories:

(1) The scope of bank customers for whom the Defendant should be required to search and produce records;

(2) The definition of the "relevant period" for discovery; and

(3) The types of records Defendant should be required to produce.

*(1) The Scope of Hamas Bank Customers About Whom Defendant Should Provide Discovery.* Defendant seeks to limit discovery to the three alleged Hamas-affiliated customers Plaintiffs identified (pre-discovery) in their First Amended Complaint ("FAC"), ECF 48. But Plaintiffs have explained that their theory of liability is that Defendant knowingly and substantially aided and abetted Hamas and that they are therefore entitled to ascertain whether Defendant held accounts during the relevant period not only for the three (3) alleged Hamas-affiliated customers identified in the FAC ("Pre-Identified Customers"),[1] but for a much wider array of Hamas-affiliated individuals and entities. Plaintiffs have not requested that Defendant search for every imaginable Hamas-affiliated individual or entity (a list that would encompass tens of thousands of names). Rather, Plaintiffs have requested information on entities and individuals with a specific connection to Turkey or a connection to the customers and entities discussed in the FAC (together, "Potential Customers"), set forth in the list attached as Exhibit A herein.

---

[1] These three customers include The Foundation for Human Rights and Freedoms and Humanitarian Relief ("IHH"), Islamic University of Gaza ("IUG"), and Jihad Muhammad Shaker Yaghmour.

1

*(2) The Time Period From Which Defendant Should Provide Discovery.* The first terrorist attack at issue in this case took place on October 1, 2015 and the last one occurred on December 18, 2018. Plaintiffs submit that a discovery period for account and transactional records beginning three and a half years before the first attack (January 1, 2012) and ending just over one month after the last attack (January 30, 2019) is appropriate. Defendant, on the other hand, is only prepared to produce account and transactional records beginning on January 1, 2015 (9 months before the first attack) followed by a two-year evidentiary gap period from January 1, 2016 to December 31, 2017 and then resuming production from January 1, 2018 to January 30, 2019 (one year before the third attack through Plaintiffs' requested end date).

*(3) The Types of Documents Defendant Should Produce.* The third area of dispute is Defendant's refusal to produce standard types of documents that courts routinely order be produced in aiding and abetting Justice Against Sponsors of Terrorism Act (JASTA) claims. As explained below, Defendant has not articulated any legitimate ground on which it should be allowed to impose the limitations. Indeed, if anything the limitations Defendant advances seem more burdensome for it to put into effect than simply complying with Plaintiffs' requests—suggesting that Defendant seeks to withhold damning evidence it knows exists.

## INTRODUCTION

Detailed allegations in Plaintiffs' FAC make clear that funding for terrorist organization Hamas was executed through a complex network requiring many actors. This is a case about Defendant's involvement in facilitating that terror financing network. On February 6, 2025, Plaintiffs served targeted initial requests—four document production requests and one interrogatory—seeking information that will establish personal jurisdiction over Defendant and shed light on two key elements of Plaintiffs' aiding and abetting JASTA claims: general awareness

2

and knowing substantial assistance. Defendant, however, refuses to produce the vast majority of information sought by Plaintiffs, based upon unsubstantiated scope, burden, and proportionality objections that are entirely meritless.

*First,* Turkish bank secrecy law poses no obstacle to the appropriate discovery that Plaintiffs seek and that is warranted under Rule 26. In its recent submission concerning Turkish law, Defendant admits "[Turkish] requirements accord with Kuveyt Türk's obligations under the Federal Rules[.]" ECF 81 at 1. Defendant thus concedes there is no conflict between Turkish and U.S. law, and therefore, the Court should evaluate the discovery requests under Rule 26. But even if Defendant attempts to switch course and argue there *is* a conflict of law, the required analysis overwhelmingly favors application of U.S. law. It is well recognized that the party invoking foreign bank secrecy laws as the basis for withholding discovery must first bear "the burden of proving what that law is and demonstrating why it impedes production." *S.E.C. v. Gibraltar Glob. Secs., Inc.*, No. 13-cv-2575 (GBD)(JCF), 2015 WL 1514746, at *4 (S.D.N.Y. Apr. 1, 2015). As Judge Scheindlin explained, a discovery order in this context

> is limited by consideration of the factors set forth in Rule 26(b)(2)(C). With regard to foreign discovery materials, I recognize that ordinarily it may be 'reasonable to limit foreign discovery to information [that is] necessary to the action . . . and directly relevant and material,' rather than 'information that could lead to admissible evidence.' But in light of the significant U.S. interest in eliminating sources of funding for international terrorism, and the other factors discussed below, the law governing discovery disputes in *this case must ultimately be the broad discovery rules of the Federal Rules of Civil Procedure.*

*Wultz v. Bank of China Ltd.*, 910 F. Supp. 2d 548, 556 (S.D.N.Y. 2012) (emphasis added). *See also Miller v. Arab Bank, PLC*, No. 1:18-CV-2192 (HG)(PK), 2023 WL 2731681, at *13 (E.D.N.Y. Mar. 31, 2023) ("'[P]rivate tort actions directed at compensating victims of terrorism and thwarting the financing of terrorism,' such as this one, 'vindicate the national and international public interest.'" (quoting *Strauss v. Credit Lyonnais, S.A.*, 242 F.R.D. 199, 218 (E.D.N.Y. 2007)).

***Second,*** Defendant is only willing to produce information from two exceedingly limited time periods, *e.g.*, one year or less before any of the attacks rather than a contiguous time period starting before the first attack and ending shortly after the last attack. But contrary to Defendant's position, courts in JASTA cases do not carve out periods *between* attacks, thereby creating evidentiary gaps, and they have consistently allowed discovery covering much broader time periods in general, demonstrating that Defendant's proposed temporal scope is wholly unreasonable. To determine whether a defendant has "knowingly and substantially assisted" the overall illegal or tortious activity at issue, courts consider six factors (which are weighed in their totality): (1) the nature of the act encouraged; (2) the amount of assistance given by defendant; (3) defendant's presence or absence at the time of the tort; (4) defendant's relation to the principal; (5) defendant's state of mind; and (6) the period of defendant's assistance. *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 856 (2d Cir. 2021). Two of those six factors are directly affected by the scope of the time period covered by discovery. Plaintiffs are entitled to know both the amount of assistance given by defendant and the period of defendant's assistance and the interplay between the two. In summarizing Plaintiffs' allegations, this Court noted that "*[f]or many years before and even during the time of the terrorist attacks*, Kuveyt Turk continued to provide banking services to three customers with many known connections to Hamas' violent terrorist activities, one of which was identified as a terrorist organization and a member of the Union of Good by the Israeli government." *Est. of Henkin v. Kuveyt Turk Katilim Bankasi A.S.*, No. 19-cv-5394, 2025 WL 218830, at \*9 (E.D.N.Y. Jan. 16, 2025) (emphasis added). To prove those allegations, Plaintiffs initially seek transactional records for only three and a half years prior to the first attack and *during the time of the terrorist attacks.* Far from exceeding the boundaries of Rule

26, Plaintiffs' request reflects the minimum courts routinely afford JASTA plaintiffs in similar circumstances.

**Third,** Defendant refuses to produce information on its Hamas customers beyond the three Plaintiffs have already identified in the FAC—*pre-discovery*. Defendant is unwilling even to search for, let alone produce, documents concerning an identified list of known Hamas entities and individuals that Plaintiffs provided to Defendant in discovery. But as the Supreme Court has made clear, "discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues." *Oppenheimer Fund., Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citation omitted). Defendant's stance is flatly inconsistent with discovery under Federal Rule of Procedure Rule 26, which "is liberally construed and is necessarily broad in scope." *New Falls Corp. v. Soni*, No. 16-cv-6805 (ADS)(AKT), 2020 WL 2836787, at *1 (E.D.N.Y. May 29, 2020) (citation omitted).

**Finally,** Defendant fashions an assortment of limitations to multiple categories of information pertaining to account and transaction records, communications, and compliance files. But this Court and others have consistently awarded the same discovery in JASTA cases that Plaintiffs seek here, including in cases based on aiding and abetting Hamas.

Defendant's objections, separately and taken together, lack any merit. Accordingly, the Court should grant Plaintiffs' motion and issue the attached Initial Proposed Order.

## RELEVANT BACKGROUND

On February 2, 2025, Plaintiffs served Defendant with four Requests for Production ("RFPs") and one interrogatory ("Interrogatory"). In terms of documents, Plaintiffs sought account-related and fund transfer-related documents for a set of Hamas-linked persons and entities (only to the extent they are customers of Defendant) listed in the requests, along with Defendant's

policies and procedures concerning money laundering or terrorism financing, and documents referenced or used in Defendant's response to the Interrogatory. The single Interrogatory asked Defendant to list and provide information concerning U.S. dollar-denominated accounts in the U.S. between 2012 and 2019.

Defendant served objections and responses on March 24, 2025. *See* Exs. C (Responses and Objs. to RFPs) & E (Responses and Objs. to Interrogs.). The parties thereafter engaged in multiple meet-and-confer meetings, and the parties made several meaningful compromises. However, several significant disputes remain, and therefore Plaintiffs now seek relief from the Court.

### A. Defendant Objects To Producing Information On The Full Range Of Its Hamas-Linked Customers.

Plaintiffs' discovery requests information on both Pre-Identified Customers and Potential Customers. Plaintiffs' RFP 1 seeks account opening documents and bank account statements for eight (8) individuals and entities. Ex. B at 5 (Pls.' First Set of RFPs). Plaintiffs' RFP 2 seeks fund transfer records for 95 entities or individuals, including the eight listed in RFP 1. *Id.* at 6-9. Both RFPs 1 and 2 request that Defendant produce information to the extent the entities and individuals were customers of Defendant from January 1, 2012 to January 30, 2019. *Id.* at 5-9. Defendant objected to Plaintiffs' request as a "fishing expedition" and refused to produce information relating to any of the Potential Customers. Ex. C at 13, 19. Guided by the measures taken in other JASTA cases from this district,[2] Plaintiffs proposed that Defendant undertake a threshold account search in its core banking system for the Potential Customers and limit initial disclosure only to those individuals and entities that Defendant's search identified as bank customers. Ex. F at 18-19, 21-22 (Apr. 28, 2025 K. Attridge e-mail). Defendant rejected Plaintiffs' search proposal, which

---

[2] *See, e.g.*, *Averbach v. Cairo Amman Bank*, No. 19-CV-0004-GHW-KHP, 2025 WL 504612, at *5 (S.D.N.Y. Feb. 14, 2025).

required it to plug the Potential Customers' names into its system, and maintained its refusal to produce any discovery beyond the Pre-Identified Customers. *Id.* at 13-14 (May 7, 2025 G. Pritsker e-mail).

**B. Defendant Advances An Unreasonable Time Period Limitation.**

Defendant also limits the time period for which it is willing to produce information for all of Plaintiffs' initial discovery (RFPs 1 through 4 and Interrogatory No. 1).[3] Plaintiffs request information from January 1, 2012 (three years and nine months before the first attack at issue) to January 30, 2019 (a month and a half after the final attack).[4] During the meet-and-confer process, Defendant offered to produce for the period of January 1, 2015 to December 31, 2015 (which spans seven months before the first attack and two weeks after the second attack) and January 1, 2018 to January 30, 2019 (one year before the third attack through the originally requested end date). Ex. F at 2 (May 16, 2025 E. Knox e-mail). Kuveyt Türk chose January 2015 because its current core banking system was implemented in the first quarter of 2015. *Id.* at 14 (May 7, 2025 G. Pritsker e-mail). Defendant claims that production of most data would be unduly burdensome for the period prior to the installation of its current core banking system. *Id.* For the fund transfer records requested in RFP 2, the parties agreed to set January 1, 2025 start-date for an *initial* production. *Id.* at 2 (May 16, 2025 E. Knox e-mail), 7 (May 15, 2025 K. Attridge e-mail). The parties agreed that Plaintiffs would evaluate the production to determine whether they needed records from the years prior, at which time the parties would meet and confer over the issue. *Id.* Besides this initial agreement regarding the start-date for an initial fund transfer record production, the parties remain

---

[3] Interrogatory No. 1 requests a list of each U.S.-dollar denominated correspondent banking account Kuveyt Türk held during the period January 1, 2012, to March 31, 2019. Ex. D at 3. RFP 3 requests policy and procedure documents Defendant had in place to prevent money laundering and terror financing, and RFP 4 requests all documents Defendant relied upon to answer Interrogatory No. 1. Ex. B at 10.

[4] The three attacks at issue occurred on October 1, 2015, November 19, 2015, and December 13, 2018.

far apart over the relevant time period for discovery. Plaintiffs request information from a seven-year, one-month period spanning three years before the first attack until a month following the last attack, while Defendant proposes to limit discovery to a two-year, one-month period, starting only 11 months before the first attack and continuing *intermittently* until the date of the last attack.

### C. Defendant Attempts To Impose Unreasonable Substantive Restrictions On Producing Records.

Defendant also carves out significant exceptions to portions of the remaining requested information through an assortment of (often undefined) limitations. First, for multiple account record categories requested in RFP 1, Defendant commits to producing information (for the Pre-Identified Customers), but limits its search to undefined sources and is only willing to provide "account statement information" rather than the underlying bank account statements; Defendant is willing to produce compliance files, but only from its "core set of compliance files;" Defendant also agrees to produce emails with and about its customers, but only from the accounts of its "Relationship Managers." Ex. F at 11 (May 14, 2025 G. Pritsker e-mail). Plaintiffs have no visibility into Defendant's IT systems or even the scope of potentially responsive records (the Bank has not yet even confirmed whether any of the Pre-Identified Customers did in fact maintain accounts during the time period) and have no way to determine what records such undefined limitations may exclude.

Second, for several transaction record categories requested in RFP 2, Defendant wishes to place unreasonable restrictions on its production. For example, rather than providing the underlying letters of credit, bills of exchange, loans, and guarantees involving Hamas-affiliated individuals and entities, Defendant seeks to limit its production to information sufficient to transactions that either relate to (a) Gaza or the West Bank or (b) Hamas. *Id.* But all financial transactions for Hamas-affiliated individuals and entities are highly relevant and it cannot be left

8

to Defendant's discretion to determine whether a transaction for the benefit a Hamas-affiliated individual or entity is "related" to Hamas. And for documents concerning IHH (one of the three Pre-Identified Customers, and a member of the Union of Good umbrella organization that the U.S. designated State Designated Global Terrorist entity in 2008), Defendant is only willing to produce *outgoing* transaction information, because of purported concerned for the privacy of "legitimate" local donors sending small sums of money to IHH. *Id.*

As set forth in the argument section, courts routinely find these categories of documents highly relevant to JASTA claims and accordingly compel their *broad* disclosure.

**D.  Defendant Argues That Disclosures Beyond Its Objections Will Violate Turkish Bank Secrecy Laws, But Admits There Is No Real Conflict Between Turkish Law And Rule 26's Requirements.**

On April 14, 2025, Defendant submitted a letter to the Court addressing potential restrictions imposed by Turkish bank secrecy law. *See* ECF 81. In that letter Defendant claimed that RFP 1 and 2's temporal scope and request for information on the Potential Customers are not proportional to the needs of discovery under Turkish law. *See* ECF 81 at 7-8. However, Defendant notably also asserted that disclosure under Turkish law and Rule 26 are aligned, and expressed that "[w]e are hopeful that, once Plaintiffs' Requests are properly narrowed as required under U.S. law, there will be no Turkish law obstacles to complying with those Requests." *Id.* at 2. It therefore follows that Defendant has adopted the position that the scope of permissible discovery for banking information is the same in the United States and Turkey.

## ARGUMENT

**I.  TURKISH BANK SECRECY LAWS DO NOT IMPEDE DISCOVERY UNDER THE FEDERAL RULES**

### A.  Defendant Has Failed To Demonstrate That Foreign Law Bars Disclosure Beyond Rule 26.

The Court should only undertake a comity analysis to compare Turkish and U.S. disclosure laws if the resisting party sustains its burden of demonstrating that a foreign bank secrecy statute would bar disclosure. *Gibraltar Glob. Secs., Inc.*, 2015 WL 1514746, at \*2. But according to Defendant, "[Turkish] requirements accord with Kuveyt Türk's obligations under the Federal Rules[.]" ECF 81 at 1. Defendant argues that the justification for prohibiting disclosure of customer information beyond the Pre-Identified Customers is that "the Bank may disclose confidential customer information 'belonging to the *real or legal persons who are parties to the dispute in question*' where '*it is necessary for the proof of the claim or defense* in disputes to which the bank is a party[.]'" *Id.* at 3 (emphasis in original). But the exception fails to show a valid distinction between the supposed party status at issue in this case: Potential Customers and the Pre-Identified Customers. Moreover, discovery may reveal that many of the Potential Customers have the same relationship with Defendant as Pre-Identified Customers, *i.e.*, the bank's Hamas-affiliated customers, putting Potential Customers in the same position as Pre-Identified Customers as "parties to the dispute in question." Because Defendant has failed to identify any conflict of law, there is no need to perform a comity analysis to override Turkish law, and the Court should proceed with analysis only under Rule 26.

### B.  If Necessary, The Court's Comity Analysis Should Heavily Favor Disclosure.

Defendant has failed in its burden of demonstrating that a Turkish law would bar disclosure. But even where the resisting party sustains its burden of demonstrating that a foreign bank secrecy statute would bar disclosure, the Supreme Court has emphasized that "[i]t is well

10

settled that [foreign blocking] statutes do *not* deprive an American court of the power to order a party subject to its jurisdiction to produce evidence." *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 544 n.29 (1987) ("*Aérospatiale*"). *See also Miller*, 2023 WL 2731681, at *9 ("[I]t is beyond dispute that the Federal Rules of Civil Procedure provide the court with authority to issue discovery orders requiring the disclosure of information protected by foreign bank secrecy laws.") (quoting *Linde v. Arab Bank, PLC*, 463 F. Supp. 2d 310, 314 (E.D.N.Y. 2006)). Thus, where a party asserts that foreign bank secrecy blocks production, courts perform a comity analysis weighing the interests of the U.S. and the foreign state in permitting or denying the discovery. *See*, *e.g.*, *Linde v. Arab Bank, PLC*, 706 F.3d 92, 111-12 (2d Cir. 2013).

In *Aérospatiale*, the Supreme Court endorsed the five-factor balancing test for assessing objections to discovery based upon foreign law:

> [1] the importance to the investigation or litigation of the documents or other information requested; [2] the degree of specificity of the request; [3] whether the information originated in the United States; [4] the availability of alternative means of securing the information; and [5] the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.

482 U.S. at 543, 544 n.28 (quoting Restatement (Fourth) § 426, cmt. (a)). "Courts in the Second Circuit also consider two additional factors: (6) the hardship of compliance on the party or witness from whom discovery is sought; and (7) the good faith of the party resisting discovery." *Laydon v. Mizuho Bank, Ltd.*, 183 F. Supp. 3d 409, 420 (S.D.N.Y. 2016). In addition, courts weigh "whether the person resisting discovery is a party to the litigation and, '[w]here the issue is the application of another country's privacy laws, … whether such privacy requirements are

11

absolute.'" *Id.* (quoting *Tansey v. Cochlear Ltd.*, No. 13-cv-4628 (SJF) (SIL), 2014 WL 4676588, at *2 (E.D.N.Y. Sept. 18, 2014)).

The comity analysis overwhelmingly weighs in favor of compelling production. In fact, the lone factor weighing against production is [3] that the requested information does not originate in the United States. But because the requested information often resides abroad in cases where a comity analysis is necessary, courts consistently give this factor little weight when compelling production. *See*, *e.g.*, *Averbach v. Cairo Amman Bank*, No. 19-CV-0004-GHW-KHP, 2025 WL 504612, at *5 (S.D.N.Y. Feb. 14, 2025); *Miller*, 2023 WL 2731681, at *11; *Laydon*, 183 F. Supp. 3d at 421; *Linde*, 463 F. Supp. 2d at 315. The other six factors, as set forth below, weigh heavily in favor of production. In addition, this factor is at the very least counteracted by the fact that parties to litigation must bear a significantly higher burden than non-parties when asserting objections based upon foreign law. *See Laydon*, 183 F. Supp. 3d at 420 ("whether the person resisting discovery is a party to the litigation" is relevant to the comity analysis); *Linde*, 706 F.3d at 109-110 (same). That burden is heightened further where, as here, a foreign bank's alleged wrongful conduct largely depends on its access to U.S. correspondent banks that clear and settle U.S. dollars for it. *First Nat'l City Bank*, 396 F.2d at 905; *Wultz*, 910 F. Supp. 2d at 553 (finding the fact that discovery target was "a party doing business in the United States … makes the case for compelling production even stronger").

1. **The Compelling U.S. Interests in Preventing Terror Financing Overwhelmingly Weighs in Favor of Ordering Defendant to Provide the Requested Discovery**

The "most important" factor in the comity analysis weighs the U.S. interests implicated by the requested discovery against the foreign state interests that a foreign statute protects. *Bartlett v. Societe Generale de Banque au Liban SAL*, No. 19-CV-7 (CBA) (TAM), 2023 WL 2734641, at *10 (E.D.N.Y. Mar. 31, 2023); *Linde*, 463 F. Supp. 2d at 315 (deferring to the foreign bank secrecy

statutes would undermine "important interests of the United States" and make it "difficult if not impossible to vindicate" those interests). In terrorism cases, courts uniformly reject bank secrecy objections because they impede the critical U.S. interests in deterring and punishing terrorist attacks upon American civilians. "Indeed, courts in the Second Circuit that have analyzed this question have agreed that '[w]hen the U.S. interest in fully and fairly adjudicating maters before its courts is combined with its interest in combating terrorism, the U.S. interest is elevated to nearly its highest point, and diminishes any competing interests of the foreign state.'" *Averbach*, 2025 WL 504612, at *3 (citing cases); *see also Miller*, 2023 WL 2731681, at *13 (same) (citing *Linde*, 463 F. Supp. 2d at 315-16). Accordingly, the first (and most important) comity factor completely weighs in favor of compelling discovery.

### 2. The Importance of the Requested Documents to This Litigation Heavily Favors Compelling Their Production

The requested information is central to Plaintiffs' aiding and abetting claims. Indeed, "[t]he documents sought by Plaintiffs relate to various elements of the claims alleged, and therefore, 'there is a substantial likelihood [they] will prove to be important to the prosecution of the plaintiffs' claims.'" *Miller*, 2023 WL 2731681, at *11 (quoting *Laydon*, 183 F. Supp. 3d at 420). The *Miller* court found that, in particular, "[t]he discovery sought is [] critical for Plaintiffs to be able to establish that Defendant was aware that either its customers or the transfers it was processing had the requisite ties to FTOs or terrorist activities." *Id.* (citing *Linde*, 463 F. Supp. 2d at 315). That is the exact scenario here. Accordingly, this factor fully supports production.

### 3. The Specificity with Which Plaintiffs Have Identified the Requested Documents Fully Supports Compelling Their Production

The specificity factor weighs in favor of production when "[t]he RFPs are specifically tailored to request bank account and transaction information only as to named individuals whom

Plaintiffs have identified as terrorists, martyrs, operatives, FTO leaders, agents, or the family members of these individuals, and charitable organizations and institutions that are or are linked to terrorist organizations." *Miller*, 2023 WL 2731681, at *11 (internal citation omitted). Plaintiffs maintain very similar allegations to highly comparable entities and individuals here, *see* Ex. A, and the Court should therefore weigh this factor in Plaintiffs' favor.

### 4. Plaintiffs' Inability to Secure the Requested Documents Through Reasonable Alternative Means Supports Their Production by Defendant

The only other sources of information, *i.e.*, the entities and individuals listed in the RFPs, are either directly controlled by Hamas or part of Hamas's financing network. There is no realistic basis to believe that Plaintiffs could ever obtain waivers from these individuals and entities to allow disclosure of their financial records. In similar circumstances, this Court in *Linde* and *Miller* squarely rejected the defendant banks' contentions that discovery available from terrorists and their family members constitutes a viable alternative to obtaining the bank's documents. *Linde*, 463 F. Supp. 2d at 315; *Miller*, 2023 WL 2731681, at *11. As *Linde* and *Miller* recognized, terrorists, their financiers, and their sympathizers are exceedingly unlikely to produce their financial records voluntarily to American victims of terrorism. *Id.* Because no other alternative means are available, this factor weighs in favor of production.

### 5. Defendant Has Not Indicated a Measure of Good Faith

To date, Defendant has made no effort to provide Plaintiffs with information responsive to their initial discovery requests. Indeed, because Defendant has all made clear that it does not intend to substantially produce responsive records, its stated objections cannot be construed as having been made in good faith. Even in cases where defendants have made an effort indication some measure of good faith, courts have been unconvinced that they "are sufficient to tilt the balance in [defendant's] favor, and against disclosure." *Miller*, 2023 WL 2731681, at *15 (quoting *Weiss v.*

14

*Nat'l Westminster Bank PLC*, 242 F.R.D. 33, 56 (E.D.N.Y. 2007)). This factor therefore tilts toward Plaintiffs and against Defendant.

### 6. Any Hardship Cited by Defendant is Speculative.

To the extent that Defendant cites potential legal consequences in Turkey due to disclosing bank information, Courts uniformly characterize such claims by foreign defendant banks as nothing more than speculative. *See Miller*, 2023 WL 2731681, at *13-14 (surveying cases after concluding Defendant's hardship claims "speculative" and observing "courts considering similar arguments have found them unpersuasive."); *Averbach*, 2025 WL 504612, at *5 (surveying cases and concluding "courts undertaking this inquiry have reached similar conclusions regarding the speculative nature of potential penalties for production of bank records."); *Wultz*, 910 F.Supp.2d at 559; *Laydon*, 183 F. Supp. 3d at 425-26; *Bodner v. Paribas*, 202 F.R.D. 370, 375 (E.D.N.Y. 2000). For that reason, if Defendant makes the same argument here, the Court should weigh this factor consistent with these cases, *i.e.*, in favor of compelling production. What is more, Defendant should be further scrutinized under the hardship factor because of its status as a party in the case. *See*, *e.g.*, *Strauss*, 249 F.R.D. at 454 ("If, however, the objecting litigant is a party to the action, courts accord that party's hardship less weight."). This factor—and the comity analysis altogether—therefore favors disclosure.

## II. PLAINTIFFS' DISCOVERY REQUESTS ARE PROPORTIONAL AND RELEVANT UNDER RULE 26

### A. Defendant's Proportionality Objections Are Meritless Given the Importance of the Litigation.

Defendant's objections reference the burden of producing information beyond (a) Defendant's proposed non-continuous two-year time period, (b) the three Pre-Identified Customers, and (c) Defendant's proposed stripped-down categories of information. Defendant's proportionality and burden objections, however, are unsupportable and directly contravene Rule

26(b), which is "is liberally construed and is necessarily broad in scope." *New Falls Corp. v. Soni*, No. 16-cv-6805 (ADS)(AKT), 2020 WL 2836787, at *1 (E.D.N.Y. May 29, 2020) (citation omitted).

In considering the proportionality of Plaintiffs' document requests, the Court must consider (1) the importance of the issues at stake in the litigation; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the parties' resources; (5) the importance of discovery in resolving issues; and (6) whether the burden or expense of the discovery is outweighed by the benefit. Fed. R. Civ. P. 26(b).

Given that the litigation is brought under a uniquely privileged federal statute whose purpose "is to provide civil litigants with the ***broadest possible basis***, consistent with the Constitution of the United States, to seek relief against persons, entities, and foreign countries, wherever acting and wherever they may be found, that have provided material support, directly or indirectly, to foreign organizations or persons that engage in terrorist activities against the United States," JASTA §2(b) (emphasis added),[5] the importance of the issues at stake in the litigation are at their apex. Moreover, given the number of Plaintiffs and the severity of their injuries, the damages in this case are likely to be *at a minimum* in the tens of millions of dollars before statutory trebling, *see* 18 U.S.C. § 2333(a), so the amount in controversy clearly justifies the (so far unspecified) expense and burden of searching and producing responsive records.

The parties' relative access to relevant information is hardly in dispute given that account

---

[5] The statute not only provides for treble damages but also contains a separate venue provision that forecloses *forum non conveniens* challenges except where the alternative forum "is significantly more convenient and appropriate" and "offers a remedy which is substantially the same as the one available in the courts of the United States." 18 U.S.C. § 2334(d).

records and internal bank communications are uniquely in Defendant's possession;[6] nor is there any dispute about the parties' relative resources, which pits several families against a financial institution with global reach. Finally, the last two factors also weigh overwhelmingly in favor of production. Any financial services Defendant provided to the menagerie of Hamas entities and operatives listed in the RFPs is highly relevant in proving Defendant's knowledge and substantial assistance to Hamas—and thus the importance of this evidence is obvious. Finally, Courts in this district have already held that the benefit of evidence revealing a defendant bank's assistance to terrorist organizations outweighs the burden and expense of the discovery. *See*, *e.g.*, *Miller*, 2023 WL 2731681, at *8 ("[T]he information sought is also proportional to the needs of the case. The cumulative evidence provided by the transactions may tend to demonstrate Defendant's knowledge. Therefore, Plaintiffs RFPs for this category of documents are not overbroad.").

**B. Defendant's Relevance Objections Are Meritless Given the Requested Information Is Highly Relevant to Plaintiffs' Aiding and Abetting Claims.**

By objecting on relevance grounds to any information outside its limited relevant time period, the Pre-Identified Customers, and its own modifications to the requested document categories, Defendant simply ignores that "[i]nformation is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Relevance is a matter of degree, and the standard is applied more liberally in discovery than it is at trial." *New Falls Corp.*, 2020 WL 2836787, at *2 (citation

---

[6] Plaintiffs may be able to obtain *some* U.S. dollar-denominated transactional records through Defendant's U.S. correspondent accounts, but it remains unclear to what extent correspondent banks in the U.S. have retained such records or how far back in time those records have been retained or how complete those records are.

omitted).[7] The Court should reject Defendant's relevance objections for these reasons and for the grounds set forth below.

1. **Discovery Targeting Defendant's Potential Hamas Customers is Highly Relevant to Plaintiffs' Claims.**

Defendant contends that the scope of relevance regarding its accountholders is limited to persons and entities Plaintiffs have already identified *pre-discovery* as Defendant's customers. But of course, the only way for Plaintiffs to (1) identify each Defendant's Hamas customers and counterparties; (2) ascertain the amount (*e.g.*, number and dollar value of transactions), type (*e.g.*, funds transfers, letters of credit, cash exemptions) and duration of assistance each Defendant provided to these customers and counterparties; and (3) determine each Defendant's awareness of its role in Hamas's terror financing enterprise, **is for Defendants to comply with their Rule 26 discovery obligations**.

In fact, the Supreme Court long ago made it clear that legitimate donors confining disclosure obligations to information contained in the complaint is not the intent of discovery:

> Consistently with the notice-pleading system established by the Rules, discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues. . . . Nor is discovery limited to the merits of the case, for a variety of fact-oriented issues may arise during litigation that are not related to the merits.

*Oppenheimer Fund., Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citation omitted).[8]

Defendants, however, refuse to produce any customer information beyond the Pre-Identified Customers. Defendant has explained that in its view only customers already identified

---

[7] *See also Flores v. Stanford*, No. 18-cv-02468 (VB)(JCM), 2022 WL 354719, at *6 (S.D.N.Y. Feb. 7, 2022) ("As a general matter, federal law encourages disclosure of relevant information in light of the broad scope of discovery and truth-seeking purpose of Rule 26(b).").

[8] The 2015 amendment to Rule 26 has not altered this basic principle. *See e.g.*, *Fossil Group v. Angel Seller LLC*, No. 20-cv-2441 (WFK)(TAM), 2021 WL 5181308 (E.D.N.Y. October 22, 2021) (Merkl, M.J.) (citing *Oppenheimer* and noting that relevance must be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on a party's claim or defense).

18

in the FAC are relevant to Plaintiffs' claim that it knowingly and substantially assisted Hamas. Accordingly, by Defendant's logic, evidence that it for example, processed $1 billion dollars during the relevant period for the benefit of Hamas through an account held by a Hamas operative designated a Specially Designated Global Terrorist ("SDGT") by the United States would be irrelevant because the account is not identified in the FAC.

In Exhibit A, Plaintiffs provide a list explaining how the Potential Customers are affiliated with Hamas. The individuals and entities listed all have close ties to Hamas; therefore, to the extent any of them were accountholders of the bank (like the Pre-Identified Customers), any information on their customer status, transactions, and other account records would be highly relevant to this case (again, like the Pre-Identified Customers). Plaintiffs even presented a Potential Customer, Salah Arouri, to Defendant as an example of the relevance of the names listed in its RFPs. Ex. F at 7 (May 15, 2025 K. Attridge e-mail). Arouri was an SDGT, whose critical role in the senior leadership of Hamas is depicted in the FAC, including his efforts on Hamas's behalf in Turkey during the relevant period. FAC ¶¶ 299, 303-08, 424-26. Therefore, if Salah Arouri were Defendant's customer during the relevant period his financial records and the Bank's communications about him would be self-evidently relevant to Plaintiffs' claims that Defendant provided substantial assistance to Hamas. Defendant's refusal to search for customer accounts for Arouri demonstrates the Bank's untenable position.

To the extent that Defendant provided financial services to any of the individuals or entities listed in Exhibit A, such as Arouri, that evidence is highly relevant to proving Plaintiffs' claims that Defendant knowingly provided assistance to Hamas, and certainly qualifies as seeking discovery of "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).

19

### 2. Discovery Within Plaintiffs' Relevant Temporal Scope is Appropriate and Highly Relevant to Plaintiffs' Claims.

Defendant contends that Plaintiffs' temporal scope for discovery is unduly broad, but in taking such position fails to recognize that information from the years prior to an attack is relevant to the amount and duration of assistance, which are key elements to plaintiffs' aiding and abetting claims. And Defendant's substantial assistance is further supported to the extent there is evidence that Defendant provided financial services to a menagerie of Hamas entities and operatives in the years prior to the attacks at issue.

Likewise, transactions facilitated on behalf of Hamas entities and operatives (including the maintenance of accounts) occurring after the attacks (as well as Defendant's internal communications about those customers, transactions, and accounts) are highly relevant to ultimately proving Defendant's culpable state of mind. It is axiomatic that documents relate to events or statements that occurred prior to their creation, which may bear on a Defendant's liability. It is entirely logical to believe that transactions, emails, and other materials created even after the last attack could illuminate the Defendant's state of mind (and intent) during the attack and pre-attack period.

The operative relative time period from at least several other terrorism cases demonstrate that plaintiffs' temporal scope is well within the parameters of valid discovery. *See*, *e.g.*, *King v. Habib Bank Ltd.*, No. 20CV4322LGSOTW, 2023 WL 3558773, at *2 (S.D.N.Y. Apr. 21, 2023)

(permitting discovery for 4 years prior to attack); *Miller*, 2023 WL 2731681, at \*4 (same). Accordingly, the Court should compel discovery from January 1, 2012 to January 30, 2019.[9]

### 3. The Court Should Reject Defendant's Unsubstantiated Restrictions on the Requested Document Categories.

Plaintiffs have initially requested from Defendant account records, all transactional records (except for Turkish Lira accounts), and internal communications (including "Know-Your-Customer" and other compliance materials) for eight individuals and entities with close, documented ties to Hamas's complex scheme documented in the FAC—but only to the extent that these individuals and entities were customers of the Bank during the relevant period. Plaintiffs have also initially requested from Defendant transactional records (except for Turkish Lira accounts), for those eight entities and 87 additional individuals and entities with close, documented ties to Hamas, but again, only to the extent that these individuals and entities were customers of the Bank during the relevant period. These records are highly relevant to two key elements of Plaintiffs' aiding and abetting JASTA claims against Defendant: general awareness and substantial assistance. *See, e.g.*, *Miller*, 2023 WL 2731681, at \*5 ("Other information, such as account opening documents and internal communications about recipients, can also shed light on what [the defendant] Bank did or did not know about its customers and others to whom it was giving money from the Saudi Committee."). Bank account records, particularly transactional records, are also vital in proving both Defendant's state of mind and that Defendant provided substantial assistance to Hamas. Evidence that Defendant maintained accounts for, and provided assistance to, numerous

---

[9] The exceptions set forth in the Proposed Initial Order, are (1) for account opening records and banks account statements for the individuals and entities listed in RFP No.1, to the extent they extend further back than January 1, 2012 (2) transactional records for individuals and entities listed in RFP No. 2. where Plaintiffs have agreed to *initially* accept transactional data commencing on January 1, 2015 and (3) transactional records for individuals and entities listed in RFP No. 1 and 2 to the extent the accounts are in Turkish Lira—in which case Defendant can initially produce bank account statements but need not produce funds transfer data.

persons or entities despite knowing of their affiliation with Hamas—whether because of U.S. designations or other information in Defendant's possession obtained in conformity with its internal Know-Your-Customer and other compliance and monitoring guidelines—demonstrates its general awareness.

Indeed, these same categories of documents were found to be ***"undoubtedly relevant"*** in *Bartlett*:

> Given that the central allegations in the case concern Defendants' provision of financial services to individuals and entities associated with Hezbollah, bank account records, transactional records, compliance records, and internal and external communications regarding persons and entities associated with Hezbollah are undoubtedly relevant, as would be documents that provide direct evidence of a bank's subjective awareness of its role in terrorist attacks — internal memoranda, e-mails, and the like.

2023 WL 2734641, at *7.

Yet, Defendant seeks to impose multiple restrictions on their production. For RFP 1, Plaintiffs request bank account statements, compliance files, and customer emails, but Defendant only commits to producing "account statement *information*," "*core set* of compliance files," and "Relationship Manager" emails, respectively. *See infra* at 7-8. As noted above, Plaintiffs have no visibility into Defendant's IT systems or even the scope of potentially responsive records (the Bank has not yet even confirmed whether any of the three customers identified in the FAC did in fact maintain accounts during the time period). Where Plaintiffs have requested bank account statements of the kind routinely generated by nearly every financial institution in the world, Defendant responds that it will produce "account statement *information*." Where Plaintiffs have requested "internal reports (including investigative reports), all other Communications with the accountholder or concerning the accountholder" Defendant responds that it will produce a "*core*

*set* of compliance files." Without access to Defendant's systems and files Plaintiffs have no way to ascertain what records these undefined limitations may include or exclude.

In similar fashion, Defendant places unsubstantiated restrictions on certain transaction documents requested in RFP 2, including limiting documents concerning IHH to **<u>outgoing</u>** transactions and limiting information on letters of credit, bills of exchange, and loans ("Credit Records") to information relating to Gaza, the West Bank, or Hamas. But Defendant fails to acknowledge that IHH is designated a terrorist organization by Israel and that both funds collected by Defendant for IHH as well as those disbursed by it are potentially relevant to the Bank's substantial assistance to Hamas. Moreover, all such transactions (especially in U.S. dollars) are, at a minimum, relevant for Plaintiffs to establish personal jurisdiction.

Defendants also provide no discernible criteria for limiting Credit Records to those involving the Palestinian Territories and/or Hamas. As alleged in the FAC, Hamas operatives and its financial network span across multiple countries. Whether Defendant facilitates terrorism by moving money for Hamas in the Palestinian Territories, or laundered financial support from Iran or Qatar to Hamas in Turkey, all such transactions are relevant. And as a more practical matter, Defendant has not articulated a principled basis for determining Hamas-related and non-Hamas related transactions undertaken for the benefit of Hamas-affiliated individuals and entities. The Court should according reject all of the restrictions listed above and compel Defendant to comply with straightforward discovery.

## CONCLUSION

For the reasons set forth above, the Court should overrule Defendant's objections, grant Plaintiffs' motion, and issue an order directing Defendant to produce responsive information to Plaintiffs' initial discovery requests.

Dated:  May 19, 2025

Respectfully Submitted,

/s/ Kevin L. Attridge

Jonathan E. Missner (*pro hac vice*)
Robert B. Gilmore (*pro hac vice*)
Kevin L. Attridge (*pro hac vice*)
STEIN MITCHELL BEATO & MISSNER LLP
2000 K Street, Suite 600
Washington, D.C. 20006
Telephone: (202) 737-7777
Facsimile: (202) 296-8312

Gary M. Osen
Ari Ungar
Michael Radine
Dina Gielchinsky
Aaron Schlanger
OSEN LLC
190 Moore Street, Suite 272
Hackensack, NJ 07601
Tel: (201) 265-6400
Fax: (201) 265-0303

Gavriel Mairone
MM~LAW LLC
980 North Michigan Avenue, Suite 1400
Chicago, IL 60611
Tel: (312) 253-7444
Fax: (312) 275-8590

*Counsel for Plaintiffs*