# EXHIBIT C

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ESTATE OF EITAM HENKIN, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| -v- ) | No. 19-cv-05394-BMC |
| ) | |
| KUVEYT TÜRK KATILIM BANKASI A.Ş., ) | |
| ) | |
| Defendant. ) | |
| ) | |

## DEFENDANT'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendant Kuveyt Türk Katilim Bankasi A.Ş. ("Kuveyt Türk"), by undersigned counsel, hereby objects and responds to Plaintiffs' first set of requests for the production of documents ("Plaintiffs' requests") as follows:

## GENERAL OBJECTIONS

Kuveyt Türk's General Objections, as set forth herein, are to be considered objections and responses to each of the specific requests for production that follow. Neither the assertion of additional objections nor the reiteration or omission of any part of the General Objections in a given response is intended—and should not be construed—to obviate this incorporation or exclude the assertion of any of these General Objections with respect to that response. Kuveyt Türk's objections and responses shall not waive or prejudice any objections Kuveyt Türk may later assert.

1.      Kuveyt Türk objects to Plaintiffs' requests to the extent that any request purports to require Kuveyt Türk to produce information or documents protected by the attorney-client privilege, attorney work product protection, or any other privilege or protection. Any inadvertent production or disclosure of such privileged or protected documents or information shall not be

1

construed as a waiver of any applicable privilege or protection.  Nothing contained in these Responses is intended as, or shall in any way be deemed, a general, inadvertent, implicit, subject matter, separate, independent, or other waiver of any privilege or protection.

2.     Kuveyt Türk objects to Plaintiffs' requests to the extent that they seek information protected from disclosure under any law, rule, regulation, restriction, or order, including, but not limited to, Turkish law governing the disclosure of bank records or customer information.

3.     Kuveyt Türk objects to Plaintiffs' requests to the extent that they are cumulative or duplicative of another or any other discovery request served in this action.

4.     Kuveyt Türk expressly reserves the right to object to additional discovery into the subject matter of Plaintiffs' requests.  By producing information responsive to Plaintiffs' requests, Kuveyt Türk does not concede that the information requested or provided is (a) discoverable, relevant, or material to the subject matter of this action; (b) authentic; or (c) admissible, including in any filing or at any trial or other proceeding.

5.     Nothing in Kuveyt Türk's responses and objections herein shall be construed as a waiver of Kuveyt Türk's rights to (i) object on the grounds of relevance, materiality, hearsay, admissibility, or any other proper grounds to the use of any information provided in the response to the requests for production, or the subject matter thereof, for any purpose, in whole or in part, in any subsequent stage or proceeding in this or any other action; (ii) object on any and all grounds at any time, during any discovery procedure relating to the subject matter of these requests for production in this or any other action; (iii) object on any and all grounds to any further requests for production or any other discovery requests; or (iv) assert the attorney-client privilege, the attorney work product protection, protections under bank secrecy laws, sovereign immunity, or any other applicable immunity, protection, or prohibition against disclosure.  Kuveyt Türk's

2

objections and responses do not constitute and shall not be interpreted as Kuveyt Türk's agreement with, or admission as to the truth or accuracy of, any legal or factual characterization or allegation stated or implied in Plaintiffs' requests for production.

6.      Kuveyt Türk's objections and responses to Plaintiffs' requests should not be construed to waive, expressly or impliedly, Kuveyt Türk's personal jurisdiction defense or any other available defense or argument against Plaintiffs' claims in the above-captioned case.

7.      Kuveyt Türk's General Objections, Objections to Instructions and Definitions, and Specific Objections and Responses are based upon the information presently known to Kuveyt Türk. Kuveyt Türk is willing to meet and confer with Plaintiffs regarding its responses and objections to any of Plaintiffs' requests. Kuveyt Türk reserves the right to rely on facts, documents, and other evidence, which may subsequently develop or come to its attention, and to assert additional objections or supplemental responses should it discover that there is information or grounds for objections. Kuveyt Türk also reserves the right pursuant to Rule 26(f) of the Federal Rules of Civil Procedure to amend or supplement these responses.

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

8.      Kuveyt Türk objects to each of Plaintiffs' requests and to each Instruction and Definition to the extent those Instructions and Definitions purport to require a search of the entirety of the data and documents under Kuveyt Türk's control, as such a search would be oppressive, overly broad, unduly burdensome, and not proportional to the needs of the case.

9.      Kuveyt Türk objects to Instruction No. 1 to the extent that it purports to require Kuveyt Türk to produce information or documents beyond that required by Rules 26 and 34 of the Federal Rules of Civil Procedure and Local Civil Rule 26.3. Kuveyt Türk further objects to Instruction No. 1 to the extent that it purports to require Kuveyt Türk to produce information or

documents covered by the attorney-client privilege, attorney work product protection, or any other privileges or protections.

10.    Kuveyt Türk objects to Instruction No. 2 to the extent that it purports to require Kuveyt Türk to produce information or documents beyond that required by Rules 26 and 34 of the Federal Rules of Civil Procedure and Local Civil Rule 26.3.  Among other things, Kuveyt Türk does not have a duty to produce documents that are outside "its possession, custody, or control." Fed. R. Civ. P. 34(a)(1).  Nonetheless, Instruction No. 2 purports to require Kuveyt Türk to produce documents held by its "directors, officers, agents, affiliates, or investigators, or by [Kuveyt Türk's] attorneys or their agents, employees, representatives or investigators"—regardless of whether those persons and entities possess or control responsive materials apart from their relationship to Kuveyt Türk.  Kuveyt Türk further objects to Instruction No. 2 to the extent that it purports to require Kuveyt Türk to produce information or documents covered by the attorney-client privilege, attorney work product protection, or any other privileges or protections.

11.    Kuveyt Türk objects to Instruction No. 3 to the extent that it purports to require Kuveyt Türk to produce information or documents beyond that required by Rules 26 and 34 of the Federal Rules of Civil Procedure and Local Civil Rule 26.3.  For example, Kuveyt Türk does not have a duty to produce "the original of each Document requested, together with all non-identical copies and drafts of such Documents."  Rather, it has a duty to produce "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things."  Fed. R. Civ. P. 26(a)(1)(A)(ii).

12.    Kuveyt Türk objects to Instruction No. 4 to the extent that it purports to impose a requirement that is inconsistent with Rules 34(b)(2)(B) and (b)(2)(E) of the Federal Rules of Civil Procedure and any protective order or discovery protocol entered by the Court in the above-

4

captioned case.  Kuveyt Türk will serve a privilege log consistent with any protective order and discovery protocol entered by the Court in the above-captioned case.

13.     Kuveyt Türk objects to Instruction No. 5 to the extent that it purports to require Kuveyt Türk to produce information or documents beyond that required by Rules 26 and 34 of the Federal Rules of Civil Procedure and Local Civil Rule 26.3.  Kuveyt Türk further objects to Instruction No. 5 as vague, ambiguous, unduly burdensome, and uncertain in its use of the terms "mention," "discuss," "refer to," "explain," "implicated by," and "attached to."  Kuveyt Türk also objects to Instruction No. 5 as ambiguous, overbroad, unduly burdensome, and not proportional to the needs to the case to the extent that it would require Kuveyt Türk to produce documents that "mention," "discuss," "refer to," "explain,"  "implicate[]," or are "attached to" responsive documents that are not themselves relevant to a claim or defense of any party.

14.     Kuveyt Türk objects to Instructions Nos. 6, 7, and 9 to the extent those instructions purport to impose requirements inconsistent with Rule 34(b)(2)(E) of the Federal Rules of Civil Procedure and any discovery protocol entered by the Court in the above-captioned case.  Kuveyt Türk will produce documents consistent with the Federal Rules of Civil Procedure and any discovery protocol entered by the Court.

15.     Kuveyt Türk objects to Instruction No. 8 as vague, ambiguous, unduly burdensome, and uncertain in its use of the terms "department," "branch," and "office."  Kuveyt Türk  further objects to Instruction No. 8 to the extent that it purports to require Kuveyt Türk to produce information or documents covered by the attorney-client privilege, attorney work product protection, or any other privileges or protections.  Kuveyt Türk further objects to Instruction No. 8 as overly broad, unduly burdensome, and not proportional to the needs of the case.  Production of documents that "identify the department, branch or office in whose possession [the documents]

5

were located and, where applicable, the natural person in whose possession they were found and the business address of each Document's custodian(s)" would require Kuveyt Türk to review extensive metadata associated with each potentially responsive document and take other unduly burdensome steps.  Kuveyt Türk will produce documents consistent with any discovery protocol entered by the Court in the above-captioned case.

16.    Kuveyt Türk objects to Instruction No. 10 to the extent that it purports to require Kuveyt Türk to produce information or documents beyond that required by Rules 26 and 34 of the Federal Rules of Civil Procedure and Local Civil Rule 26.3.  Kuveyt Türk further objects to Instruction No. 10 as unduly burdensome to the extent it seeks to require production of information related to documents that "once existed and ha[ve] subsequently been lost, destroyed, or [are] otherwise missing."

17.    Kuveyt Türk objects to Instruction No. 11 to the extent that it purports to require Kuveyt Türk to produce information or documents covered by the attorney-client privilege, attorney work product protection, or any other privileges or protections.  Kuveyt Türk further objects to Instruction No. 11 to the extent that Plaintiffs seek information protected from disclosure under any law, rule, regulation, restriction, or order, including Turkish law governing the disclosure of bank records or customer information.

18.    Kuveyt Türk objects to Instruction No. 12 as unduly burdensome to the extent it purports to require information beyond what is required under Rule 26(b)(5) of the Federal Rules of Civil Procedure.  Subject to this objection, for any requested documents not subject in whole or in part to production based on a claim of privilege or any other basis,  Kuveyt Türk will serve a privilege log consistent with any protective order and discovery protocol entered by the Court in the above-captioned case.

19.     Kuveyt Türk objects to the definitions of "You," "your," "Defendant," or "Kuveyt Türk" to the extent that Plaintiffs' definition purports to require Kuveyt Türk to produce information or documents beyond that required by Rules 26 and 34 of the Federal Rules of Civil Procedure and Local Civil Rule 26.3.  Kuveyt Türk further objects to the definition as overbroad, unduly burdensome, seeking information that is neither relevant nor proportional to the needs of the case, and as purporting to seek information not in the possession, custody, or control of Kuveyt Türk.  For example, the definition includes, among other objectionable aspects, "parents" and "subsidiaries," without regard for the relationship between those entities and Kuveyt Türk.  Kuveyt Türk will interpret the terms "You," "your," "Defendant," or "Kuveyt Türk" to refer to Kuveyt Türk Katilim Bankasi A.Ş.

20.     Kuveyt Türk objects to the definition of "Agent" as overbroad, unduly burdensome, seeking information that is neither relevant nor proportional to the needs of the case, and as purporting to include persons or entities outside the scope of Kuveyt Türk's possession, custody, or control.

21.     Kuveyt Türk objects to the definition of "Meeting" as overbroad, vague, and unduly burdensome to the extent it purports to cover, among other things, "any … contemporaneous presence of two or more persons."  Kuveyt Türk will interpret the term "Meeting" according to its natural meaning.

22.     Kuveyt Türk objects to the definition of "Employee" to the extent that it purports to include persons or entities outside the scope of Kuveyt Türk's employment or control.  Kuveyt Türk further objects to the definition of "Employee" to the extent that it purports to cover, among others, "Defendant's agents."  Kuveyt Türk will interpret the term "Employee" according to its natural meaning.

7

23.     Kuveyt Türk objects to the definition of "Account-Related Documents" as vague, ambiguous, unduly burdensome, and uncertain in its use of undefined terms and phrases such as "account opening documentation," "data," "accountholder," "risk-based assessments," "internal reports," "investigative reports," "Communications with the accountholder or concerning the accountholder," "account statements," "cancelled checks," and "deposit slips."   For example, Plaintiffs do not explain whether or how "accountholder" is different from "customer" in the definition.

Kuveyt Türk further objects to the definition of "Account-Related Documents" to the extent that it is overbroad, unduly burdensome, and calls for information that is not relevant to any party's claims or defenses or proportional to the needs of the case.  Among other things, Plaintiffs' request for "all other Communications with the accountholder or concerning the accountholder" would likely require a voluminous collection and review of documents with no clear relevance to Plaintiffs' claim.

Kuveyt Türk further objects to the definition's reference to "enhanced due diligence as defined in 31 CFR § 1010.610" to the extent that it purports to impose a duty on Kuveyt Türk to comply with 31 C.F.R. § 1010.610.  Kuveyt Türk is not subject to the requirements of 31 C.F.R. § 1010.610.  *See* 31 C.F.R. § 1010.605(e).

Kuveyt Türk also objects to the definition of "Account-Related Documents" to the extent it purports to include any information protected from disclosure under any law, rule, regulation, restriction, or order, including Turkish law governing the disclosure of bank records or customer information.  Following resolution of any disputes related to Turkish bank confidentiality laws and regulations relevant to the production of documents in response to Plaintiffs' requests, Kuveyt Türk is willing to meet and confer with Plaintiffs regarding the implications of those laws and

8

regulations with respect to any categories of documents or information described in Plaintiffs' definition.

To the extent described below, Kuveyt Türk will interpret "Account-Related Documents" to mean documents collected from, or created by, the customer in connection with the process of commencing banking services that are readily accessible in Kuveyt Türk's core banking system; documents reflecting transaction information, including the dates, descriptions (if available), and amounts for outgoing transactions, if any, greater than $10,000 U.S. dollar ("USD") or the approximate equivalent in other currencies from the customer's current account(s) (*i.e.*, the accounts used to facilitate routine deposits, withdrawals, and payments); documents reflecting checks written by the customer, processed by the check recipient's bank, and totaling more than $10,000 USD or its approximate equivalent, if any, that are readily accessible in Kuveyt Türk's core banking system; and documents sufficient to show Kuveyt Türk's periodic, numerical assessments of the risk associated with the customer.

24.    Kuveyt Türk objects to the definition of "Fund transfers records" as vague, ambiguous, unduly burdensome, and uncertain to the extent that the definition provides an open-ended and non-exhaustive list of what Plaintiffs purport to include in that definition.

Kuveyt Türk further objects to the definition of "Fund transfers records" as vague, overbroad, ambiguous, unduly burdensome, and uncertain in its use of undefined terms and phrases such as "electronic funds transfers," "SWIFT … messages," "CHIPS … messages," "letters of credit," "bills of exchange," "guarantees," "book entry transfers," "other payment messaging systems," "screening," "reporting," "transactions," "forms," "initiate," and "notifications of receipt of funds transfers."

Kuveyt Türk further objects to the definition of "Fund transfers records" to the extent that it calls for information that is not relevant to any party's claims or defenses or proportional to the needs of the case.  It is difficult to conceive how any "letters of credit," "bills of exchange," or "guarantees" issued to purported customers, for example, relate to the three attacks that Plaintiffs allege give rise to their claims; Plaintiffs' amended complaint lacks any allegations that such financial instruments precipitated or in any ways relate to those attacks.

Kuveyt Türk also objects to the definition of "Fund transfers records" to the extent it purports to include any information protected from disclosure under any law, rule, regulation, restriction, or order, including Turkish law governing the disclosure of bank records or customer information.  Following resolution of any disputes related to Turkish bank confidentiality laws and regulations relevant to the production of documents in response to Plaintiffs' requests, Kuveyt Türk is willing to meet and confer with Plaintiffs regarding the implications of those laws and regulations on any categories of documents or information described in Plaintiffs' definition.

To the extent described below, Kuveyt Türk will interpret "Fund transfers records" to mean documents sufficient to show, for each incoming and outgoing USD transfer totaling more than $10,000 USD that appears from Kuveyt Türk's records to have been effectuated through a U.S. bank to or from the customer's current account(s) over the SWIFT messaging system, information (where available) describing each transfer, including the date of each transfer, the amount, the currency, the recipient, the recipient's bank, the sender, the sender's bank, the correspondent banks involved in the transfer, and remittance information; and documents sufficient to show the types of forms provided by Kuveyt Türk to the customer in connection with the SWIFT transfer processes related to accounts at Kuveyt Türk.

10

25.     Kuveyt Türk objects to the definition of "Most Relevant Period" as overly broad, unduly burdensome, not relevant to a claim or defense of any party, and not proportional to the needs of the case on the grounds that it is not reasonably limited in temporal scope.  Plaintiffs allege that the attacks that give rise to their claims occurred in October 2015, November 2015, and December 2018.  There must be a reasonable temporal nexus between the alleged attacks and the alleged aiding and abetting.  *E.g.*, *Weiss v. Nat'l Westminster Bank, PLC.*, 993 F.3d 144, 165 (2d Cir. 2021); *Siegel v. HSBC N. Am. Holdings, Inc.*, 933 F.3d 217, 225 (2d Cir. 2019).  Plaintiffs seek documents and information from more than three and a half years before the first attack, from more than three years between the second and final attacks, and from more than one month after the final attack.  The temporal scope is overly broad, unduly burdensome, not relevant to a claim or defense of any party, and not proportional to the needs of the case.  Unless otherwise set forth in Kuveyt Türk's Specific Objections and Responses below, Kuveyt Türk will interpret the phrase "Most Relevant Period" to mean the time period from July 31, 2015 (approximately two months before the first alleged attack) to November 19, 2015 (the date of the second alleged attack) and from October 13, 2018 (approximately two months before the final alleged attack) to December 13, 2018 (the date of the final alleged attack).

## SPECIFIC OBJECTIONS AND RESPONSES

## REQUEST NO. 1

All Account-Related Documents for any accounts maintained at Kuveyt Türk (during the Most Relevant Period) by the following persons and entities:

      a.      IHH
      b.      Islamic University of Gaza
      c.      Jihad Muhammad Shaker Yaghmour (a/k/a Jihad Yaghmour; a.k.a. Jihat Yahgmur; a.k.a. Cihat Yagmur; a.k.a. Jihat Yagmur)

d.      Jamal N. al-Khoudary (a/k/a Jamal Naji Shehadeh al-Kudari; a.k.a. Jamal al-Khudari; a.k.a. Jamal Naji Khudari; a.k.a. Jamal Naji Elkhoudary)

e.      Abu Ubaydah Khayri Hafiz al-Agha

f.      Saleh al-Arouri (a/k/a Salih al-Aruri; a.k.a. Salih al-Aruri; a.k.a. Salah al-Arouri; a.k.a. Saleh Muhammad Suleiman al-Aruri; a.k.a. Salah al-Aruri; Saleh al-Aruri; a.k.a. Salih Muhammad Sulayman Saleh al-Aruri; a.k.a. Salih Muhammad Sulayman; a.k.a. Abu Muhammad; a.k.a. Salih Dar Sulaiman; a.k.a. Salih Suleiman)

g.      Ansaar International e.V.

h.      Deniz Feneri Welfare and Solidarity Association

## RESPONSE TO REQUEST NO. 1

Kuveyt Türk incorporates its General Objections and Objections to Instructions and Definitions as if fully stated herein.  Kuveyt Türk objects to Request No. 1 as overly broad, unduly burdensome, and seeking information not relevant to a claim or defense of any party or proportional to the needs of the case on the grounds that it is not reasonably limited in temporal scope.  Specifically, Kuveyt Türk objects to the definition of "Most Relevant Period" as overly broad, unduly burdensome, not relevant to a claim or defense of any party, and not proportional to the needs of the case to the extent it purports to require production of information from time periods with no reasonable nexus to the alleged attacks or any related conduct.  As explained above, Kuveyt Türk will interpret the phrase "Most Relevant Period" to mean the time period from July 31, 2015 to November 19, 2015 and from October 13, 2018 to December 13, 2018.

Kuveyt Türk further objects to Request No. 1 as vague, ambiguous, unduly burdensome, and uncertain in its use of the term "maintained."  And Kuveyt Türk objects to Request No. 1 as overly broad, unduly burdensome, and seeking information not relevant to a claim or defense of any party or proportional to the needs of the case.  Among other things, Plaintiffs do not allege that Jamal N. al-Khoudary, Abu Ubaydah Khayri Hafiz al-Agha, or Saleh al-Arouri are customers of Kuveyt Türk, much less that they used any purported accounts at Kuveyt Türk in connection

with planning or executing any of the three attacks that Plaintiffs allege give rise to their claims. Plaintiffs do not include *any* allegations as to Ansaar Intenational e.V. and Deniz Feneri Welfare and Solidarity, or even mention these entities in the amended complaint. Plaintiffs' requests as to those persons and entities amount to fishing expeditions and are not proper for discovery under Rules 26 or 34 of the Federal Rules of Civil Procedure or under Local Civil Rule 26.3. Relatedly, to the extent Request No. 1 purports to require a search of the entirety of the data and documents under Kuveyt Türk's control, that request is oppressive, overly broad, unduly burdensome, and not proportional to the needs of the case.

Kuveyt Türk further objects to Request No. 1 to the extent that it seeks information that Kuveyt Türk is prohibited from disclosing under Turkish law or that is protected from disclosure by the attorney-client privilege, attorney work product protection, or any other privilege or protection. No such documents or information will be produced, and any inadvertent production shall not be deemed a waiver of any privilege or protection.

Subject to and without waiving the foregoing Specific Objections, General Objections, or Objections to Instructions and Definitions, Kuveyt Türk responds as follows: after entry of a protective order by the Court in the above-captioned case and the resolution of any legal restrictions on production, Kuveyt Türk will produce documents located after a reasonably diligent search, if any, for the alleged customers described in Request No. 1 as "IHH," "Islamic University of Gaza," and "Jihad Muhammad Shaker Yaghmour" in the following categories: (a) documents collected from, or created by, any of these customers in connection with the process of commencing banking services that are readily accessible in Kuveyt Türk's core banking system; (b) documents reflecting transaction information during the redefined Most Relevant Period, including the dates, descriptions (if available), and amounts for outgoing transactions, if any,

13

greater than $10,000 USD or the approximate equivalent in other currencies from these customers' current account(s); (c) documents during the redefined Most Relevant Period reflecting images of checks written by these customers, processed by the check recipient's bank, and totaling more than $10,000 USD or its approximate equivalent, if any, that are readily accessible in Kuveyt Türk's core banking system; and (d) documents sufficient to show Kuveyt Türk's periodic, numerical assessments of the risk associated with these customers related to accounts at Kuveyt Türk during the redefined Most Relevant Period.  Kuveyt Türk will produce non-duplicative, non-privileged documents in its possession, custody, or control, to the extent not prohibited by Turkish bank confidentiality laws, that are responsive to Plaintiffs' request, and are from the time period July 31, 2015 to November 19, 2015 and October 13, 2018 to December 13, 2018.

## REQUEST NO. 2

To the extent such persons and entities were customers of the Defendant during the Most Relevant Period, all Fund Transfers Records for such persons and entities during the Most Relevant Period:

a.  Ali Abdulkareem Abduljaleel Abduljaleel
b.  Advancity Co.
c.  AG Yapi Co.
d.  Abu Ubaydah Khayri Hafiz al-Agha
e.  Usaab Abdullah Jubair al-Ahmed
f.  Musa Daud Muhammad Akari
g.  Al Aqsa Foundation
h.  Ahmed M. M. Alaqad
i.  Usama Ali (a/k/a Osama Ali; a.k.a. Oussama Ali; a.k.a. Oussama Abd-El-Karim Ali; a.k.a. Osama Radwan; a.k.a. Osama Abd Al Karim Radwan; a.k.a. Usama Ali Rizwan)
j.  Al-Markaziya Li-Siarafa (a/k/a Al Mutahadun Company; a.k.a Al Mutahadun for Exchange)
k.  Amer Kamal Sharif Alshawa (a/k/a Amar al-Shava; a.k.a. Amer Alshava; a.k.a. Amer al-Shava; a.k.a. Amer al-Shawa; a.k.a. Amer Kamel Alshawa)
l.  Oveida Amira

14

m.  Ansaar International e.V.

n.  Azzam Aqraa (a/k/a Azzam Hassani al-Aqraa)

o.  Arab China Trading Company (a/k/a Arab Company To State Trading; a.k.a. Arab Trading Company China)

p.  Saleh al-Arouri (a/k/a Salih al-Aruri; a.k.a. Salih al-Aruri; a.k.a. Salah al-Arouri; a.k.a. Saleh Muhammad Suleiman al-Aruri; a.k.a. Salah al-Aruri; Saleh al-Aruri; a.k.a. Salih Muhammad Sulayman Saleh al-Aruri; a.k.a. Salih Muhammad Sulayman; a.k.a. Abu Muhammad; a.k.a. Salih Dar Sulaiman; a.k.a. Salih Suleiman)

q.  Hasmet Aslan; (a/k/a Hisham Younis Yahia Qafisheh a.k.a. Hisham Younis Yahya Qafisheh; a.k.a. Hisham Yunis lchiyeh Qafisheh; a.k.a. Hisham Yunis Yahya Qafishih; a.k.a. Hisham Yunis Yahya Qufayshah)

r.  Izaddin Atun

s.  Abdullah Abu Ayyash

t.  Husam Badran

u.  Ahmed Bahar (a/k/a Ahmed Mohamed Bahar)

v.  Tamer Barud

w.  Fadi al-Batsh

x.  Brothers for Money Exchange and Remittances (a/k/a Samir Exchange)

y.  Buy Cash Money and Money Transfer Company

z.  Deniz Feneri Welfare and Solidarity Association

aa.  Haroun Mansour Yaqoub Nasser al-Din (a/k/a Harun Mansur Ya'qub Nasir-al-Din; a.k.a. Haroun Nasser Aldin; a.k.a. Harun Nasr-al-Din; a.k.a. Serkan Kaya)

bb.  Musa Muhammad Salim Dudin

cc.  Ayman Ahmad Al-Duwaik (a.k.a. Aiman Ahmad R. al Duwaik; Aiman Ahmad Rashed al-Duwaik)

dd.  Essam Salih Mustafa Yussuf

ee.  Expert Yapi Co.

ff.  Filistin Dayanışma Derneği (FIDDER)

gg.  Geneva Exchange in Gaza

hh.  Nasim Hamada

ii.  Harakat al-Muqawama al-Islamiyya (a/k/a Hamas)

jj.  Abd al-Hakim Hanani

kk.  Ismail Haniyeh (a/k/a Ismail Abdel Salam Ahmed Haniyeh; a.k.a. Ismail Haniya; a.k.a. Ismail Haniyah; a.k.a. Ismail Haniyyah; a.k.a. Ismael Haniyah; a.k.a. Ismael Haniya; a.k.a. Ismayil Haniyeh; a.k.a. Ismail Hanieh)

ll.  Khalil Isma'il Ibrahim al-Hayya

mm.  Herzallah Exchange

nn.  Thair Abd Al Raziq Shukri Hirzallah (a/k/a Thair Abd Al Razzaq Shukri Hirzallah; a.k.a. Tha'ir 'Abd-al-Raziq Shukri Hirzallah; a.k.a. Thafir Hirzallah)

oo.  Samir 'Abd Al-Mu'in 'Abd Hirzallah (a/k/a Abd al-Mu'in 'Abd Ismail Hirzallah; a.k.a. Samer Abdulmoaien Abed Herzallah; a.k.a. Sameer Abdel Mueen Abed Herzallah; a.k.a. Sameer Abdulmooti Herzallah; a.k.a. Samir Herzallah)

| pp. | The Foundation for Human Rights and Freedoms and Humanitarian Relief ("IHH") |
|---|---|
| qq. | Imas Company |
| rr. | Intimaa – The International Campaign to Preserve the Palestinian Identity |
| ss. | Islamic University of Gaza |
| tt. | Jamal Issa (a/k/a Jamal Abu Baker) |
| uu. | IYS Yapi Co. |
| vv. | Daram Jabarin |
| ww. | Zaher Ali Moussa Jabarin (a/k/a Zahar Jabarin; a.k.a. Zaher Ali Mousa Jabarin; a.k.a. Zahir Jabarin; a.k.a. Zahir Ali Mousa Jabbareen; a.k.a. Zaher Ali Mousa Jibril) |
| xx. | Zaher Jabarin (a/k/a Zahir Ali Mousa Jabbareen; a.k.a. Zaher Ali Mousa Jabarin; a.k.a. Zahir Jabarin; a.k.a. Zahar Jabarin; a.k.a. Zaher Ali Mousa Jibril) |
| yy. | Walid Mohammad Mustafa Jadallah (a/k/a Waleed Mohammad Mustafa Jad Allah; a.k.a Walid Jadallah) |
| zz. | Ahmad Sadu Jahleb (a/k/ Yousef Aljihlib; a.k.a. Ahmed Jahleb; a.k.a. Ahmed Sadu Yousef Jahleb; a.k.a. Ahmad Saado Yusuf Jakhlab) |
| aaa. | Yussef Taher Mahmoud al Karem |
| bbb. | Majid Abu Katish |
| ccc. | Mehmet Kaya (a/k/a Muhammad Kaya) |
| ddd. | Mehmet Kaya |
| eee. | Ayman Mohammad Abu Khalil (a/k/a Bakri Hanifa) |
| fff. | Reda Ali Khamis |
| ggg. | Khdamati Geneva Company for Electronic Services |
| hhh. | Jamal N. al-Khoudary (a/k/a Jamal Naji Shehadeh al-Kudari; a.k.a. Jamal al-Khudari; a.k.a. Jamal Naji Khudari; a.k.a. Jamal Naji Elkhoudary) |
| iii. | Hamed al-Khoudary |
| jjj. | Mahmoud Lawisi |
| kkk. | Arwa Saleh M. Mangoush (a/k/a/ Saleh Mabrouk O. Mangoush) |
| lll. | Salama Aziz Muhammad Mari (a/k/a Salame Aziz Muhammad Mara'i) |
| mmm. | Muhammad Masri |
| nnn. | Ismael Salman Mosleh (a/k/a Ismail Tash; a.k.a. Isma'il Tash; a.k.a. Ismail Salman) |
| ooo. | Mohammed Mushanish |
| ppp. | Zakaria Najib |
| qqq. | Fawaz Mahmud Ali Nasser |
| rrr. | Maher Rebhi Obeid |
| sss. | Ahmed Sharif Abdallah Odeh (a/k/a Ahmad Odeh; a.k.a. Ahmed Odeh; a.k.a. Ahmed Sharif Abdullah Odeh; a.k.a. Ahmed Charif Abdellah Ouda; a.k.a. Ahmad Udih) |
| ttt. | Ebru Özkan |
| uuu. | Esmail Qaani (a/k/a Esmail Ghani; a.k.a.Ismail Akbar Nezhad; a.k.a. Esmaeil Ghaani Akbarnejad; a.k.a.Esmail Qani; a.k.a. Esma'il Gha'ani; a.k.a. Esmail Ghaani; a.k.a. Esma'il Qa'ani) |

| | |
|---|---|
| vvv. | Hisham Younis Yahia Qafisheh (a/k/a Hisham Younis Yahya Qafisheh; a.k.a. Hisham Yunis Yahya Qafisih; a.k.a. Hisham Yunis Yahya Qufayshah; a.k.a. Hasmet Aslan; a.k.a.Hisham Yunis lchiyeh Qafisheh) |
| www. | Abd Al-Rahman Ismail Abd Al-Rahman Ghanimat(a/k/a Abd al Rahman Ghanimat; a.k.a. Abd al Rahman Ranimat) |
| xxx. | Marwan Mahdi Salah Al-Rawi (a/k/a Marwan Alrawi; a.k.a. Marwan Mahdi al-Rawi) |
| yyy. | Redin Exchange (a/k/a Redin Danışmanlık İç Ve Dış Ticaret Limited Şirketi) |
| zzz. | Abdallah Yusuf Faisal Sabri (a/k/a Abdallah Sabri) |
| aaaa. | Mahir Jawad Yunis Salah (a/k/a Maher Jawad Yunis Salah a.k.a. Maher Salah) |
| bbbb. | Sense Sanitary Company |
| cccc. | Ezat Shahin (a/k/a Izzat Shahin) |
| dddd. | Zuhair Shamlakh (a/k/a Zuhir Yunes Hammed Shamalch; a.k.a. Zuheir Shamlakh,; a.k.a. Zahir Younes Shmalach) |
| eeee. | Ahmed Shamlakh (a/k/a Ahmed Abd al-Rahman Ahmed; a.k.a. Ahmad Shabbir Shamlakh; a.k.a. Ahmad Shamallakh) |
| ffff. | Alaa Shamlakh (a/k/a Ala' Yunis Hamid Shamallakh; a.k.a. Alla Y. H. Shamallakh) |
| gggg. | Imad Younes Shamlakh (a/k/a Imad Y. Shamallakh) |
| hhhh. | Amer Kamal Sharif al-Shava (a/k/a Amar Al-Shava; a.k.a. Amer Alshava; a.k.a. Amer Al-Shava; a.k.a. Amer Al-Shawa; a.k.a. Amer Kamel Alshawa) |
| iiii. | Yahya Sinwar (a/k/a Yehya al-Sinwar; a.k.a. Yahya Ibrahim Hassan Sinwar; a.k.a. Yehia Sinwar; a.k.a. Yehiyeh Sinwar) |
| jjjj. | Smart Import Export Foreign Trade Limited Company (a/k/a Smart Ithalat Ihracat Dis Ticaret Limited Sirketi) |
| kkkk. | Smart İthalat İhracat Diş Ticaret Limited Şirketi (a/k/a Smart Import Foreign Trade Limited Company) |
| llll. | Ismael Tash (a/k/a Ismail Salman Mosleh; a.k.a. Isma'il Tash) |
| mmmm. | Tikkno Plus Ic Ve Dis |
| nnnn. | Trend Gayrimenkul Yatirim Ortakligi A.S. (a/k/a Anda Gayrimenkul; f.k.a. Anda Real Estate And Construction Industry Trade Limited Company; f.k.a. Anda Turk; f.k.a. Anda-Turk; f.k.a. Anda-Turk Co.; a.k.a. Trend Gayrimenkul Yatirim Ortakligi A.S.; a.k.a. Trend Gayrimenkul Yatirim Ortakligi Anonim Sirketi; a.k.a. Trend Real Estate Investment Partnership; a.k.a. Trend Real Estate Investment Partnership, Joint Stock Company) |
| oooo. | Faris al-Umari |
| pppp. | Uzmanlar Co. |
| qqqq. | Vahid Suleiman |
| rrrr. | Al Wefaq Co. For Exchange |
| ssss. | Jihad Muhammad Shaker Yaghmour (a/k/a Jihad Yaghmour; a.k.a. Jihat Yahgmur; a.k.a. Cihat Yagmur; a.k.a. Jihat Yagmur) |
| tttt. | Bulent Yildrim |
| uuuu. | Mahmoud Khaled al-Zahar (a/k/a Mahmoud Khaled Zahhar; a.k.a. AL ZAHAR, Mahmoud Khaled al Zahar; a.k.a. Mahmoud Khaled Zahhar; a.k.a. Mahmoud al-Zahar; a.k.a. Mahmoud Zahar; Mahmoud Khaled Zahhar; a.k.a. |

17

Mahmoud Khaled al Zahar; a.k.a. Mahmoud Khaled Zahhar; a.k.a. Mahmoud Khaled al Zahar; a.k.a. Mahmoud al-Zahar; a.k.a. Mahmoud Zahar)

vvvv.    Abdul Fattah al Zari'i

## RESPONSE TO REQUEST NO. 2

Kuveyt Türk incorporates its General Objections and Objections to Instructions and Definitions as if fully stated herein. Kuveyt Türk objects to Request No. 2 as vague, ambiguous, overly broad, unduly burdensome, and seeking information not relevant to a claim or defense of any party or proportional to the needs of the case on the grounds that it is not reasonably limited in temporal scope. Specifically, Kuveyt Türk objects to the definition of "Most Relevant Period" as overly broad, unduly burdensome, not relevant to a claim or defense of any party, and not proportional to the needs of the case to the extent it purports to require production of information from time periods with no reasonable nexus to the alleged attacks or any related conduct. As explained above, Kuveyt Türk will interpret the phrase "Most Relevant Period" to mean the time period from July 31, 2015 to November 19, 2015 and from October 13, 2018 to December 13, 2018.

Kuveyt Türk further objects to Request No. 2 as overly broad, unduly burdensome, and seeking information not relevant to a claim or defense of any party or proportional to the needs of the case. Among other things, Plaintiffs do not allege that the vast majority of persons and entities listed in Request No. 2 are customers of Kuveyt Türk, much less that they used any purported accounts at Kuveyt Türk, or services provided by Kuveyt Türk, in connection with planning or executing any of the three attacks that Plaintiffs allege give rise to their claims. Plaintiffs do not include *any* allegations as to 192 of the persons, entities, and aliases listed in Request No. 2, or even mention these persons or entities in the amended complaint. Of the remaining persons and entities identified in Request No. 2 that are actually mentioned in the amended complaint, only 3

18

are alleged to be customers of Kuveyt Türk. Plaintiffs' requests as to the vast majority of persons and entities listed in Request No. 2, therefore, amount to fishing expeditions and are not proper for discovery under Rules 26 or 34 of the Federal Rules of Civil Procedure or under Local Civil Rule 26.3. Relatedly, to the extent Request No. 2 purports to require a search of the entirety of the data and documents under Kuveyt Türk's control, that request is oppressive, overly broad, unduly burdensome, and not proportional to the needs of the case.

Kuveyt Türk further objects to Request No. 2's demand for "Fund Transfers Records" to the extent the definition of that term purports to include "documents generated by Kuveyt Türk as part of its screening and reporting of transactions," which is apparently duplicative of the definition of "Account-Related Documents" insofar as the latter calls for "data created concerning the accountholder including risk-based assessments of customers and transactions." The apparent overlap between those categories renders both definitions ambiguous and confusing.

Kuveyt Türk further objects to Request No. 2 to the extent that it seeks information that Kuveyt Türk is prohibited from disclosing under Turkish law or that is protected from disclosure by the attorney-client privilege, attorney work product protection, or any other privilege or protection. No such documents or information will be produced, and any inadvertent production shall not be deemed a waiver of any privilege or protection.

Subject to and without waiving the foregoing Specific Objections, General Objections, or Objections to Instructions and Definitions, Kuveyt Türk responds as follows: after entry of a protective order by the Court in the above-captioned case and the resolution of any legal restrictions on production, Kuveyt Türk will produce documents located after a reasonably diligent search, if any, for the alleged customers described in Request No. 2 as "IHH," "Islamic University of Gaza," and "Jihad Muhammad Shaker Yaghmour," in the following categories from the

19

redefined Most Relevant Period: (a) documents sufficient to show, for each incoming and outgoing USD transfer totaling more than $10,000 USD that appears from Kuveyt Türk's records to have been effectuated through a U.S. bank to or from these customers' current account(s) over the SWIFT messaging system, information (where available) describing each transfer, including, the date of each transfer, the amount, the currency, the recipient, the recipient's bank, the sender, the sender's bank, the correspondent banks involved in the transfer, and remittance information; and (b) documents sufficient to show the types of forms provided by Kuveyt Türk to these customers in connection with the SWIFT transfer processes related to accounts at Kuveyt Türk. Kuveyt Türk will produce non-duplicative, non-privileged documents in its possession, custody, or control, to the extent not prohibited by Turkish bank confidentiality laws, that are responsive to Plaintiffs' request, and are from the time period July 31, 2015 to November 19, 2015 and October 13, 2018 to December 13, 2018.

**REQUEST NO. 3**

All documents reflecting relevant policies and procedures Defendant had in place during the relevant time period that related to preventing or detecting money laundering and terror financing.

**RESPONSE TO REQUEST NO. 3**

Kuveyt Türk incorporates its General Objections and Objections to Instructions and Definitions as if fully stated herein. Kuveyt Türk objects to Request No. 3 as overly broad, unduly burdensome, and seeking information not relevant to a claim or defense of any party or proportional to the needs of the case on the grounds that it is not reasonably limited in temporal scope. Among other things, Plaintiffs do not define the "relevant time period." Kuveyt Türk will

interpret the phrase "relevant time period" to mean the time period from July 31, 2015 to November 19, 2015 and from October 13, 2018 to December 13, 2018.  Additionally, Kuveyt Türk objects to the extent that the request seeks "All documents."  Kuveyt Türk will interpret this request to seek documents sufficient to show the subject of the request.

Kuveyt Türk further objects to Request No. 3 as vague, ambiguous, unduly burdensome, and uncertain in its use of the phrases "relevant policies and procedures" and "had in place."  And Kuveyt Türk objects to Request No. 3 to the extent that it seeks information that Kuveyt Türk is prohibited from disclosing under Turkish law or that is protected from disclosure by the attorney-client privilege, attorney work product protection, or any other privilege or protection.  No such documents or information will be produced, and any inadvertent production shall not be deemed a waiver of any privilege or protection.

Subject to and without waiving the foregoing Specific Objections, General Objections, or Objections to Instructions and Definitions, Kuveyt Türk responds as follows: after entry of a protective order by the Court in the above-captioned case and the resolution of any legal restrictions on production, Kuveyt Türk will produce responsive and non-privileged documents sufficient to show the policies and procedures Kuveyt Türk had in place from July 31, 2015 to November 19, 2015, and from October 13, 2018 to December 13, 2018, related to preventing or detecting money laundering and terror financing.

**REQUEST NO. 4**

All documents consulted, referenced, or otherwise used to prepare a response to Plaintiffs' First Set of Interrogatories in the above-captioned matter.

**RESPONSE TO REQUEST NO. 4**

Kuveyt Türk incorporates its General Objections and Objections to Instructions and Definitions as if fully stated herein.  Kuveyt Türk objects to Request No. 4 as overly broad, unduly burdensome, and seeking information not relevant to a claim or defense of any party or proportional to the needs of the case on the grounds that it is not reasonably limited in temporal scope.  Additionally, Kuveyt Türk objects to the extent that the request seeks "All documents." Kuveyt Türk will interpret this request to seek documents sufficient to show the subject of the request.

Kuveyt Türk further objects to Request No. 4 as vague, ambiguous, unduly burdensome, and uncertain in its use of the terms "consulted," "referenced," "otherwise used," and "prepare." And Kuveyt Türk objects to Request No. 4 to the extent that it purports to require Kuveyt Türk to produce information or documents protected by the attorney-client privilege, the attorney work product protection, or any other privilege or protection.  No such documents or information will be produced, and any inadvertent production shall not be deemed a waiver of any privilege or protection.

Subject to and without waiving the foregoing General Objections, Objections to Instructions and Definitions, or Specific Objections, Kuveyt Türk responds as follows: upon entry of a protective order by the Court in the above-captioned case, Kuveyt Türk will produce documents sufficient to show the information in the response to Plaintiffs' First Set of Interrogatories.

Dated: March 24, 2025

Respectfully submitted,


By: */s/ Gabrielle E. Pritsker*
    Steven T. Cottreau (NY Bar 4967485)
    Gabrielle E. Pritsker (NY Bar 5432208)
    JONES DAY
    51 Louisiana Avenue, N.W.
    Washington, D.C. 20001.2113
    (202) 879-3685
    GPritsker@jonesday.com

    Fahad A. Habib (*pro hac vice*)
    Emily F. Knox (*pro hac vice*)
    JONES DAY
    555 California Street, Suite 2600
    San Francisco, CA 94104.1500

    Mark G. Hanchet
    Christopher J. Houpt
    Robert W. Hamburg
    MAYER BROWN LLP
    1221 Avenue of the Americas
    New York, New York 10020

    *Attorneys for Defendant*
    *Kuveyt Türk Katilim Bankasi A.Ş.*