# EXHIBIT F

**Monday, May 19, 2025 at 13:45:58 Eastern Daylight Time**

---

| | |
|---|---|
| **Subject:** | Re: Henkin v. Kuveyt Turk - Meet & Confer |
| **Date:** | Monday, May 19, 2025 at 12:24:55 PM Eastern Daylight Time |
| **From:** | Kevin Attridge |
| **To:** | Goldberg Knox, Emily, Pritsker, Gabrielle E., RHamburg@mayerbrown.com, Cottreau, Steve, Habib, Fahad A., CHoupt@mayerbrown.com, MHanchet@mayerbrown.com |
| **CC:** | Robert Gilmore, Jonathan Missner, Gary M. Osen, Michael Radine, Dina Gielchinsky, Aaron Schlanger, ctlaw@mm-law.com, Ari Ungar |

Emily,

Thank you for your email. I have provided Plaintiffs' responses in your message below in blue. We plan to seek relief from the Court today in line with our responses.

Best regards,

Kevin

**Kevin L. Attridge**
**Stein Mitchell Beato & Missner LLP**
2000 K Street, NW Suite 600
Washington DC 20006
**D** 202.661.0907
**C** 202.380.7870
kattridge@steinmitchell.com
www.steinmitchell.com

************************************************************
The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee.  It is the property of Stein Mitchell Beato & Missner LLP.  If the reader of this message is not the intended recipient or the employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by reply or by telephone at (202) 737-7777, and immediately destroy this communication and all copies thereof, including all attachments.
************************************************************

**From:** Goldberg Knox, Emily <egoldbergknox@jonesday.com>
**Date:** Friday, May 16, 2025 at 3:58 PM
**To:** Kevin Attridge <KAttridge@steinmitchell.com>, Pritsker, Gabrielle E. <gpritsker@jonesday.com>, RHamburg@mayerbrown.com <RHamburg@mayerbrown.com>, Cottreau, Steve <scottreau@jonesday.com>, Habib, Fahad A. <fahabib@jonesday.com>, CHoupt@mayerbrown.com <CHoupt@mayerbrown.com>, MHanchet@mayerbrown.com <MHanchet@mayerbrown.com>

**Cc:** Robert Gilmore <RGilmore@steinmitchell.com>, Jonathan Missner <JMissner@steinmitchell.com>, Gary M. Osen <gosen@osenlaw.com>, Michael Radine <mradine@osenlaw.com>, Dina Gielchinsky <dgielchinsky@osenlaw.com>, Aaron Schlanger <aschlanger@osenlaw.com>, ctlaw@mm-law.com <ctlaw@mm-law.com>, Ari Ungar <aungar@osenlaw.com>
**Subject:** RE: Henkin v. Kuveyt Turk - Meet & Confer

Dear Kevin,

Thank you for your email and for your additional explanation.  We address your points below and offer additional compromises in a further attempt to narrow the issues before the Court.

1. **Scope of Individuals and Entities**: As we have previously discussed, the Bank is willing to search for and produce certain documents (if any) associated with the 3 Relevant Customers that Plaintiffs set forth in the complaint.  But we do not agree with Plaintiffs' assessment that any individual or entity that Plaintiffs believe may have some connection to Turkey or Hamas is relevant or proportional to Plaintiffs' claims.

   Plaintiffs' Response: The parties understand each other's position. We plan to seek relief from the Court on this issue. All of our responses below are subject to Plaintiffs' position on this issue.

2. **Relevant Time Period**:  We accept your position setting January 1, 2015, as the start date for the Relevant Time Period.  However, for the reasons we've previously discussed, the Bank disagrees that discovery from several years before the last alleged attack is either relevant or proportional, and Plaintiffs' desire for a continuous time period does not render it so.  References to "Relevant Time Period" below refer to the time frame as defined by Kuveyt Türk—January 1, 2015 through December 31, 2015 and January 1, 2018 through January 30, 2019.

   Plaintiffs' Response: The parties appear to understand each other's position. To re-emphasize, Plaintiffs only agree to January 1, 2015 as an *initial* production start date for transfer records. Plaintiffs reserve the right to request records from the full relevant time period as defined by plaintiff after evaluation of the *initial* set of records. Therefore, if necessary, the parties agree to meet and confer over production of documents from the full relevant time period defined by Plaintiffs. We plan to seek relief from the Court to compel disclosure from Plaintiffs' relevant time period for RFP 1, 3 and 4, and Interrogatory No. 1. All of our responses below are subject to Plaintiffs' position on this issue.

We address your additional points below Request by Request.  To the extent we have reached agreement or have altered our position from our initial objections, our positions in this email and our email of May 14 amend our initial objections.

3. **Request for Production No. 1**: Kuveyt Türk is willing to produce, to the extent they exist, a broad swath of documents from the Relevant Time Period for the 3 Relevant Customers identified in Plaintiffs' Amended Complaint—IHH, Islamic University of Gaza, and Jihad Yaghmour.

   The documents Kuveyt Türk will produce are the following documents from the Relevant Time Period:

a. **Account opening documentation**

Kuveyt Türk will produce account opening documentation for the 3 Relevant Customers identified in Plaintiffs' Amended Complaint—IHH, Islamic University of Gaza, and Jihad Yaghmour—that transacted during the Relevant Time Period, if any.  We do not believe there is a dispute on this issue.

Plaintiffs' Response: There is no dispute on this issue other than the overarching scope objections regarding the relevant time period and entities/individuals (which goes for all of Plaintiffs' responses).

b. **Account statement information**

i.    Account statement information (*i.e.*, incoming and outgoing transactions) for the current accounts of Islamic University of Gaza and Jihad Yaghmour, if any, including dates, descriptions (if available), and amounts.  For any outgoing checks that fall within the scope of the above, Kuveyt Türk will produce images of checks that are located on Kuveyt Türk's core banking system.  We think the parties are in agreement on this issue.

Plaintiffs' Response: Plaintiffs cannot agree to Defendant's position because the scope of "account statement information" is undefined.

ii.    Regarding the charity IHH, we fail to understand how donations and other incoming transactions are relevant to Plaintiffs' claims.  As we have previously discussed, IHH is different from other customers.  Large charities like IHH have thousands of donors whose myriad small value donations and identities are not at all relevant to Plaintiffs' claims.  Producing information related to those transaction is irrelevant unnecessarily burdensome, threatens donor privacy, and is not proportional to the needs of the case.  We understood you to also recognize the difference between IHH and other customers, specifically your statement during the meet and confer that under Plaintiffs' allegations, you consider IUG and Yaghmour to be Hamas, thus acknowledging that you do not consider IHH to be Hamas (presumably because IHH is a well-known Turkish charity that operates throughout Turkey and other areas of the world).

Plaintiffs' Response: Plaintiffs cannot agree to this offer because IHH is a terrorist organization that provides financial, political and logistical support to HAMAS. Defendant also does not explain how it plans to segregate HAMAS v. non-HAMAS donations.

As a result, for IHH, Kuveyt Türk will produce, to the extent it exists, account statement information for *outgoing* transactions for IHH's checking and savings accounts, if any, including dates, descriptions (if available), and amounts for the Relevant Time Period.  For any transactions related to checks that fall within the scope of the above, Kuveyt Türk will produce images of checks that are located

on Kuveyt Türk's core banking system.

Plaintiffs' Response: Plaintiffs additionally do not agree with Defendant limiting production to outgoing transactions. All incoming transactions, except Turkish Lira, are at a minimum relevant for personal jurisdiction.

c. **Compliance files**

Kuveyt Türk will search for and produce documents concerning the 3 Relevant Customers from the Bank's core set of compliance files, after the application of an agreed set of search terms concerning the 3 Relevant Customers.  These include, but are not limited to, documents sufficient to show Kuveyt Türk's periodic, numerical assessments of the risk associated with these customers related to accounts at Kuveyt Türk (if any) during the Relevant Period.

Plaintiffs' Response: We agree to the extent Defendant is willing to produce *all* compliance files. However, Plaintiffs cannot agree to Defendant's position because the scope of "core set of compliance files" is undefined, so we therefore have no visibility into whether Plaintiffs would receive a full set of documents.

We note that your email incorrectly asserts that with respect to your request for all "Know Your Customer" data concerning the accountholder, Kuveyt Türk has agreed only to produce documents sufficient to show periodic, numerical assessments of the risk associated with these customers.  To the contrary, that is just one example of the types of documents that may be produced from the Bank's core set of compliance files.  We will produce any compliance information regarding the 3 Relevant Customers in that set of files.  As such, we think the parties are in agreement on this issue.  Please let us know if you disagree and on what basis.

Plaintiffs' Response: We agree with Defendant producing all compliance files, but Plaintiffs cannot agree to Defendant's position as written because the scope of "core set of compliance files" is undefined.

d. **Communications**

Kuveyt Türk will produce communications with or concerning the 3 Relevant Customers located on Kuveyt Türk's primary repository for customer inquiries, complaints, and other communications.  Kuveyt Türk also will search for and produce non-privileged emails to or from the relevant Relationship Manager(s) for the 3 Relevant Customers from the Relevant Period that it can locate, if any, after application of an agreed set of search terms concerning the 3 Relevant Customers.

Plaintiffs' Response: Plaintiffs cannot agree to Defendant's position because the term "Relationship Manager" is undefined.

Your email incorrectly states that the Bank is "only willing to produce customer communications opposed to communications *about* customers."  Indeed, the search terms applied to the emails to or from the relevant Relationship Manager(s) for the 3

Relevant Customers should capture communications, if any, about the 3 Relevant Customers.  As such, we think the parties are in agreement on this issue.

Plaintiffs' Response: We agree regarding the production of email both with and about customers.  However, Plaintiffs again cannot agree to Defendant's position because the term "Relationship Manager" is undefined.

4. **Request for Production No. 2**: We understand from our discussions that Request 2 is focused on jurisdictional issues, which relate to USD transfers through the United States.  Kuveyt Türk is willing to produce the following from the Relevant Period, to the extent it exists, for the 3 Relevant Customers—IHH, Islamic University of Gaza, and Jihad Yaghmour:

Plaintiffs' Response: RFP No. 2 is not only relevant to jurisdictional issues. It is also focused on liability issues, including general awareness and substantial assistance.

   a. **Swift Transfer Information**

Documents sufficient to show relevant information for USD transfers through the United States during the Relevant Period to or from the 3 Relevant Customers' current account. Relevant information (where available) includes the date of each transfer, the amount, the currency, the recipient, the recipient's bank, the sender, the sender's bank, the correspondent banks involved in the transfer, and remittance information.

Plaintiffs' Response: The parties appear to be in agreement on this issue to the extent it covers both incoming and outgoing USD transfers through the United States.

We had initially proposed that such information will be related only to MT103 messages.  We understand that you have requested that the bank also produce information from MT202 messages.  Although we continue to believe that MT202 messages are not relevant to Plaintiffs' claims because those messages are not generally generated for customer transfers, the Bank is willing to search for and produce the information above for any USD SWIFT transaction through the United States to or from the 3 Relevant Customers' current account(s) during the Relevant Time Period, whether through MT103 or MT202, if it exists.

Plaintiffs' Response: The parties appear to be in agreement on this issue. As we have stated, Plaintiffs reserve their right to request the underlying documents, if necessary, after they have an opportunity to review the initial information produced.

We have also removed any transaction threshold amounts in response to your position, to facilitate an agreement on this point.  As a result, we believe the parties are now in agreement on these issues except with respect to the scope of Relevant Customers.

Plaintiffs' Response: The parties appear to be in agreement on this issue.

   b. **Forms**

Documents sufficient to show the types of forms provided by Kuveyt Türk to customers in connection with initiating SWIFT transfers.

Plaintiffs' Response: Plaintiffs request all "forms provided by Kuveyt Turk to customers to initiate funds transfers and receive notifications of receipts of funds transfers." The parties therefore appear to be in disagreement on this issue. We plan to move for all such documents.

c. **Letters of Credit, Bills of Exchange, and Guarantees**

Documents sufficient to show letters of credit, bills of exchange, and guarantees from the Relevant Period in USD that relate to Gaza or the West Bank or relate to a transaction with Hamas, if any.

Plaintiffs' Response: Plaintiffs cannot agree to the limitations det by Defendant. We plan to seek relief from the Court on this issue.

With these revisions, other than the scope of individuals and entities and the Relevant Time Period, we believe the parties are in agreement on Request for Production 2.

Plaintiffs have not raised any issues concerning the Bank's responses and objections to Requests for Production 3 and 4 and Interrogatory 1. As such, we assume the parties agree on those Requests except as to the Relevant Time Period.

Plaintiffs' Response: Correct, we will only seek relief from the Court for these requests regarding the parties' dispute over the relevant time period.

Best,
Emily

Emily Goldberg Knox
Associate
**JONES DAY® – One Firm Worldwide®**
555 California Street, 26th Floor
San Francisco, CA 94104
Office +1.415.875.5815

---

**From:** Kevin Attridge <KAttridge@steinmitchell.com>
**Sent:** Thursday, May 15, 2025 6:25 AM
**To:** Pritsker, Gabrielle E. <gpritsker@jonesday.com>; Goldberg Knox, Emily <egoldbergknox@jonesday.com>; RHamburg@mayerbrown.com; Cottreau, Steve <scottreau@jonesday.com>; Habib, Fahad A. <fahabib@jonesday.com>; CHoupt@mayerbrown.com; MHanchet@mayerbrown.com
**Cc:** Robert Gilmore <RGilmore@steinmitchell.com>; Jonathan Missner <JMissner@steinmitchell.com>; Gary M. Osen <gosen@osenlaw.com>; Michael Radine <mradine@osenlaw.com>; Dina Gielchinsky <dgielchinsky@osenlaw.com>; Aaron Schlanger <aschlanger@osenlaw.com>; ctlaw@mm-law.com; Ari Ungar <aungar@osenlaw.com>

**Subject:** Re: Henkin v. Kuveyt Turk - Meet & Confer

Dear Gabby,

As you know, the Court has set a deadline for our motion to compel. We have expressed repeatedly in our meet-and-confers and related correspondence that Defendant has placed wholly unreasonable restrictions on discovery, and that the meet and confer process has so far done little to move Defendant from its original objections. As we view it, Defendant is only willing to produce a very small fraction of information in response to Plaintiffs' straightforward initial discovery requests. Indeed, your latest proffer listing the document categories that Defendant is willing to produce is filled with more limitations and caveats than previously asserted.

Nonetheless, because it is always our goal to reduce the number of discovery issues the Court has to address, we'll make one final attempt to explain our positions to see if you are willing to resolve at least some of the multiple outstanding issues before Monday's deadline.

**Scope of Individuals / Entities.** We request that Defendant reconsiders its position limiting discovery to the three customers alleged in the amended complaint. The entities and individuals listed in RFPs 1 and 2 all have close ties to Hamas, and therefore, if they – like the three accountholders already identified – are customers of the bank, any information on their customer status, transactions, and other account records (as requested) are central to this case. Take Salah Arouri (SDGT) as an example. Plaintiffs' amended complaint describes his critical role in the senior leadership of Hamas, its terror apparatus and his efforts in Turkey on Hamas's behalf. FAC ¶¶ 299, 303-08, 424-26. Therefore, if Salah Arouri were a customer of Defendant during the relevant period it would be self-evidently relevant to Plaintiffs' claims that Defendant provided substantial assistance to Hamas. Please let us know if Defendant will produce information beyond IUG, IHH, and Yaghmour.

**Relevant Time Period.** As we previously indicated, we would compromise by initially accepting transactional records beginning from the first quarter of 2015. Coupled with production of complete sets of bank account statements, we would be in a much better position to evaluate whether such information is appropriate and sufficient, but we cannot categorically agree to not seek records and information before 2015 nor can we accept the premise that records from the period between the first attack and the last attack are not (highly) relevant. You also explained that Defendant's core banking system was updated in Q1 2015, and that it would be burdensome to produce documents earlier than January 2015. But without gaining a sense of what records are available after Q1 2015 and what records exist for particular customers prior to that time, we cannot evaluate the burden of collecting documents from pre-2015 or weigh the importance of that information. We therefore propose Defendant agree to initially produce records for the period from January

2015 until January 30, 2019, without waiver by the parties as to any burden or scope arguments for records before that date.

**Outgoing /Incoming Funds transfers** We cannot agree to limiting Defendant's production to outgoing funds transfers. Plaintiffs are entitled to all funds transfers for individuals and entities the Court determines are relevant to this action.

**$10,000 Threshold.** To the extent that Defendant agrees to produce complete sets of bank account statements for all accounts for entities the Court determines are relevant to this action, we are open to setting a threshold for producing funds transfer records for incoming domestic transactions. Certainly, Plaintiffs will want all USD transactions regardless of amount, but would be prepared to defer production of any Turkish Lira (TRY) transactions until we have analyzed the bank account statements for those accounts. At that point, we can discuss a threshold amount or even perhaps identify a specific subset of TRY transactions that will be sufficient.

**Specific Document Categories.** We cannot agree to restrictions you place on the types of information Defendant is willing to produce. By way of example, Plaintiffs requested account statements through RFP 1, but you only commit to providing select information that is further limited to outgoing transactions greater than $10,000. Plaintiffs also requested all 'Know Your Customer' data created concerning the accountholder including risk-based assessments of customers and transactions, but your response suggests Defendant will only produce documents sufficient to show periodic, numerical assessments, which is responsive to only a small portion of Plaintiffs' request. In addition, Plaintiffs requested in RFP 1 "all other communications with the accountholder or concerning the accountholder", but it appears that you are only willing to produce customer communications opposed to communications *about* customers. In other words, Defendant is only willing to produce a small fraction of the documents requested through RFP 1. In addition, there is simply no basis to withhold MT202 transactions executed for the benefit of individuals and entities the Court determines are relevant to this action. Bank-to-bank transfers are relevant if they are the means by which individuals and entities the Court determines are relevant to this action transferred or received funds. The method MT202 message vs. MT103 message is ultimately irrelevant for either jurisdictional or substantive liability purposes. *See, e.g., Linde v. Arab Bank PLC*, 269 F.R.D. 186, 192 (E.D.N.Y. 2010) ("it was 'simply not acceptable' for the Bank to 'withhold the documents showing the funds transfers through New York which plaintiffs seek to make their case.'" *citing* December 13, 2006 decision by the Court discussing withholding of MT202 records and ordering them produced.)

The limitations you place on the documents requested through RFP 2 appear to be just as restrictive. For example, you limit the documents to those "relating to Gaza or the West Bank." But transactions involving the financing of Hamas all ultimately relate to the Palestinian Territories, *e.g.,* a letter of credit issued for a transaction *for Hamas* in Turkey is

just as relevant a transaction overtly earmarked for "Gaza."

Please let us know by COB tomorrow (Friday) if Defendant has reconsidered any of the issues set forth above.

Best regards,
Kevin

**Kevin L. Attridge**
**Stein Mitchell Beato & Missner LLP**
2000 K Street, NW Suite 600
Washington DC 20006
**D** 202.661.0907
**C** 202.380.7870
kattridge@steinmitchell.com
www.steinmitchell.com

*********************************************************
The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee.  It is the property of Stein Mitchell Beato & Missner LLP.  If the reader of this message is not the intended recipient or the employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by reply or by telephone at (202) 737-7777, and immediately destroy this communication and all copies thereof, including all attachments.
*********************************************************

**From:** Pritsker, Gabrielle E. <gpritsker@jonesday.com>
**Date:** Wednesday, May 14, 2025 at 10:58 AM
**To:** Kevin Attridge <KAttridge@steinmitchell.com>, Goldberg Knox, Emily <egoldbergknox@jonesday.com>, RHamburg@mayerbrown.com <RHamburg@mayerbrown.com>, Cottreau, Steve <scottreau@jonesday.com>, Habib, Fahad A. <fahabib@jonesday.com>, CHoupt@mayerbrown.com <CHoupt@mayerbrown.com>, MHanchet@mayerbrown.com <MHanchet@mayerbrown.com>
**Cc:** Robert Gilmore <RGilmore@steinmitchell.com>, Jonathan Missner <JMissner@steinmitchell.com>, Gary M. Osen <gosen@osenlaw.com>, Michael Radine <mradine@osenlaw.com>, Dina Gielchinsky <dgielchinsky@osenlaw.com>, Aaron Schlanger <aschlanger@osenlaw.com>, ctlaw@mm-law.com <ctlaw@mm-law.com>, Ari Ungar <aungar@osenlaw.com>
**Subject:** RE: Henkin v. Kuveyt Turk - Meet & Confer

Dear Kevin,

We understand from your email that Plaintiffs have declared an impasse and do not intend to continue discussions aimed at reaching agreement on any aspect of the scope of discovery in this case. As indicated in my May 7 email, we had hoped that the parties could agree on at least some of the issues raised in your email, and believed the parties had productive (and ongoing) discussions around the relevant time frame for discovery and the imposition of some reasonable materiality threshold for transactional information. We understand from your note that Plaintiffs are no longer willing to discuss either issue.

We continue to believe that the parties should (and must) try to narrow the issues through the meet and confer process before filing discovery motions so as not to burden the Court with unnecessary disputes. Nevertheless, because you have indicated that Plaintiffs do not believe that further meet and confer discussions would be helpful, and we have not yet even discussed our respective positions on certain specific documents you request, we outline the Bank's positions below. We also correct an apparent misunderstanding as it relates to what the Bank agreed to produce in response to Request for Production No. 2.

We remain available to discuss the below or any other issue at your convenience.

A. **<u>Request for Production No. 1</u>**: Kuveyt Türk is willing to produce, to the extent they exist, documents from the Relevant Time Period for the 3 Relevant Customers identified in Plaintiffs' Amended Complaint—IHH, Islamic University of Gaza, and Jihad Yaghmour.

The parties dispute the Relevant Time Period. As noted, Kuveyt Türk was willing to discuss expanding its originally proposed time frame to January 1, 2015 – December 31, 2015 and January 2018 – January 30, 2019, but Plaintiffs are not willing to consider any proposal that narrows the time span Plaintiffs have defined, that seeks discovery from more than 3 years before each of the attacks. References to "Relevant Time Period" below refer to the time frame as defined by Kuveyt Türk. The documents to be produced are the following:

1. Account opening documents for the 3 Relevant Customers identified in Plaintiffs' Amended Complaint—IHH, Islamic University of Gaza, and Jihad Yaghmour—that transacted during the Relevant Time Period.

2. Account statement transaction information for outgoing transactions for the 3 Relevant Customers' current accounts including dates, descriptions (if available), and amounts for transactions greater than $10,000 USD or the equivalent in other currencies for the Relevant Time Period. The Bank is willing to discuss a different materiality threshold and expanding transaction information to savings accounts as well. As we previously explained, the Bank proposed the $10,000 as a reasonable and proportional limitation to minimize the burden of collecting and producing small dollar transactions unlikely to be material in establishing substantial assistance or substantial jurisdictional contacts. Additionally, IHH is a large Turkish charity that is likely to have thousands of donors in Turkey whose small value donations and identities are not at all relevant to Plaintiffs' claims. For similar reasons, the Bank has proposed limiting production to outgoing transactions, given Plaintiffs' claim that the 3 Relevant Customers provided resources or funding to Hamas.

For any outgoing checks that fall within the scope of the above, Kuveyt Türk will produce images of outgoing checks processed by the check recipient's bank that are located on

Kuveyt Türk's core banking system.

3. Kuveyt Türk will search for and produce documents concerning the 3 Relevant Customers from the Bank's core set of compliance files, after the application of an agreed set of search terms concerning the 3 Relevant Customers.  These include documents sufficient to show Kuveyt Türk's periodic, numerical assessments of the risk associated with these customers related to accounts at Kuveyt Türk (if any) during the Relevant Period.

4. Communications with or concerning the 3 Relevant Customers located on Kuveyt Türk's primary repository for customer inquiries, complaints, and other communications.  Kuveyt Türk will search for and produce non-privileged emails to or from the relevant Relationship Manager(s) for the 3 Relevant Customers from the Relevant Period that it can locate, if any, after application of an agreed set of search terms concerning the 3 Relevant Customers.

B. **__Request for Production No. 2__**: We understand from our discussions that Request 2 is focused on jurisdictional issues, which relate to USD transfers through the United States. Kuveyt Türk is willing to produce the following from the Relevant Period, to the extent it exists, for the 3 Relevant Customers—IHH, Islamic University of Gaza, and Jihad Yagmour:

1. Documents sufficient to show, relevant information for USD transfers through the United States over $10,000 USD during the Relevant Period to or from the 3 Relevant Customers' current account.  Relevant information (where available) includes the date of each transfer, the amount, the currency, the recipient, the recipient's bank, the sender, the sender's bank, the correspondent banks involved in the transfer, and remittance information.  Kuveyt Türk is willing to consider lifting the materiality threshold on these transfers.

   Note that contrary to your email, the Bank has not agreed to produce data from MT202 messages.  As we previously explained, MT202 messages are used in interbank transfers to move funds between financial institutions, acting as a transfer instruction from one bank to another.  MT202 messages thus do not appear relevant in light of Plaintiffs' allegations, as no bank-to-bank transfers are implicated by the allegations.

2. Documents sufficient to show the types of forms provided by Kuveyt Türk to customers in connection with initiating SWIFT transfers.

3. Documents sufficient to show letters of credit, bills of exchange, and guarantees from the Relevant Period in USD that relate to Gaza or the West Bank, if any.

Best,
Gabby

Gabrielle Pritsker
Partner
**JONES DAY® – One Firm Worldwide**℠
51 Louisiana Ave., N.W.
Washington, D.C. 20001-2113
Office +1.202.879.3685

**From:** Kevin Attridge <KAttridge@steinmitchell.com>
**Sent:** Friday, May 9, 2025 5:07 PM
**To:** Pritsker, Gabrielle E. <gpritsker@jonesday.com>; Goldberg Knox, Emily <egoldbergknox@jonesday.com>; RHamburg@mayerbrown.com; Cottreau, Steve <scottreau@jonesday.com>; Habib, Fahad A. <fahabib@jonesday.com>; CHoupt@mayerbrown.com; MHanchet@mayerbrown.com
**Cc:** Robert Gilmore <RGilmore@steinmitchell.com>; Jonathan Missner <JMissner@steinmitchell.com>; Gary M. Osen <gosen@osenlaw.com>; Michael Radine <mradine@osenlaw.com>; Dina Gielchinsky <dgielchinsky@osenlaw.com>; Aaron Schlanger <aschlanger@osenlaw.com>; ctlaw@mm-law.com; Ari Ungar <aungar@osenlaw.com>
**Subject:** Re: Henkin v. Kuveyt Turk - Meet & Confer

Counsel,

Thank you for your summary. The parties appear to be at an impasse for items 1 and 2 in your email (the scope for the relevant entity/individuals to be searched and relevant time period), so we plan to seek relief from the Court on those issues. Similarly, for the reasons stated on our call, we continue to disagree with your proposal of implementing a materiality threshold amount for transaction information and will likewise raise this issue with the Court.

For the account opening documents, we understand that defendant is willing to produce such documents regardless of their age as long as a transaction occurred during the relevant time period for the entity/person at issue.  However, because the parties are not in agreement regarding the scope of the relevant entities/persons and relevant time period, in that respect RFP 1 will also be subject to our motion.

Regarding RFP 2, we understand that defendant will produce certain information from MT103 and MT202 documents that appears in its core banking system but not the underlying documents.  Plaintiffs are willing to start with the core banking system records, which may ultimately help us narrow future requests to specific MT103 and MT202 transactions, but Plaintiffs do not waive their right to ask for the underlying documents (or the other transfer records requested in RFP 2) after assessing the produced information.  This is in line with the case management plan, which anticipates that Plaintiffs may refine their further requests based on information produced in response to initial discovery. Finally, in similar fashion to RFP 1, we plan to raise RFP 2 with the Court because the parties are not in agreement regarding the scope of the relevant entities and relevant time period, and to the extent this request is affected by Defendant's materiality objection.

Have a nice weekend.

Best regards,
Kevin

**Kevin L. Attridge**
**Stein Mitchell Beato & Missner LLP**
2000 K Street, NW Suite 600
Washington DC 20006
**D** 202.661.0907
**C** 202.380.7870
kattridge@steinmitchell.com
www.steinmitchell.com


*************************************************************
The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee.  It is the property of Stein Mitchell Beato & Missner LLP.  If the reader of this message is not the intended recipient or the employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by reply or by telephone at (202) 737-7777, and immediately destroy this communication and all copies thereof, including all attachments.
*************************************************************


**From:** Pritsker, Gabrielle E. <gpritsker@jonesday.com>
**Date:** Wednesday, May 7, 2025 at 10:53 PM
**To:** Kevin Attridge <KAttridge@steinmitchell.com>, Goldberg Knox, Emily <egoldbergknox@jonesday.com>, RHamburg@mayerbrown.com <RHamburg@mayerbrown.com>, Cottreau, Steve <scottreau@jonesday.com>, Habib, Fahad A. <fahabib@jonesday.com>, CHoupt@mayerbrown.com <CHoupt@mayerbrown.com>, MHanchet@mayerbrown.com <MHanchet@mayerbrown.com>
**Cc:** Robert Gilmore <RGilmore@steinmitchell.com>, Jonathan Missner <JMissner@steinmitchell.com>, Gary M. Osen <gosen@osenlaw.com>, Michael Radine <mradine@osenlaw.com>, Dina Gielchinsky <dgielchinsky@osenlaw.com>, Aaron Schlanger <aschlanger@osenlaw.com>, ctlaw@mm-law.com <ctlaw@mm-law.com>, Ari Ungar <aungar@osenlaw.com>
**Subject:** RE: Henkin v. Kuveyt Turk - Meet & Confer

Counsel,

Thank you for our call this morning.  We thought the dialogue was productive.  Below we provide a summary of some of the key points from our discussion and reduce to writing the current status of our negotiations.  We are happy to jump on another call to the extent you think that would be productive.  We recognize that we are likely not reaching agreement on the scope of the entities and individuals to be searched but hope we can come to agreement on the remaining issues to reduce the scope of disputes that the parties have to raise with the Court.

1. **Entities and Individuals**

   As noted in our objections, the Bank is willing to search for and produce certain documents

(if any) associated with the three alleged customers that Plaintiffs set forth in the complaint. As we explained, the Bank has considered your explanation for why the additional individuals and entities identified in RFP Nos. 1 and 2 are relevant to Plaintiffs' claims and should be within the scope of discovery, namely that Plaintiffs believe these individuals and entities have some connection to Turkey and Hamas. We do not agree with Plaintiffs' assessment of relevance and proportionality. None of these individuals or entities, beyond the three at issue, have any stated connection to either Kuveyt Türk or the attacks, and the majority of those that have been designated were designated after the attacks at issue. Indeed, as the Court noted in denying Kuveyt Türk's request to bifurcate jurisdictional and merits discovery, "the discovery plaintiffs seek from defendant will likely be straightforward, including defendants' records for the accounts of the customers identified in the amended complaint and any relevant policies defendant had in place during the relevant time period." Plaintiffs' position is inconsistent with the Court's statements regarding discovery and would undermine the Court's basis for denying bifurcation.

2. **Relevant Time Frame**

As discussed on the call, we do not believe the case law you cited supports discovery over three years prior to the attacks in this case. Amongst other reasons, those cases involve thousands of plaintiffs and numerous attacks alleged to have been part of a sophisticated terror campaign, whereas the attacks at issue here are three individual, lone wolf attacks. And even with much broader claims than we have in this case, one of the three cases you cite (*Bartlett*) permitted discovery from only one year prior to the first attack at issue, not the three and a half Plaintiffs seek here.

Nonetheless, we indicated an openness to expanding the relevant time frame set forth in our objections notwithstanding the burden associated with doing so, if Plaintiffs were willing to compromise to reduce the discovery burden on the Bank in other areas. That new time frame consists of the following time periods to be searched: (a) January 2015 (about 9 months before the first two attacks) though December 31, 2015 and (b) January 2018 (approximately a year before the final attack) through January 30, 2019 (as you requested). As we noted, the Bank's current core banking system came into full implementation in Q1 2015, making production of certain documents and data much more burdensome before that time.

You indicated your hesitancy to agree to a non-continuous time frame between the first two attacks (in October and November 2015) and the third attack over three years later (in December 2018). You also noted that you would consider whether you were willing to agree to the start of the period in January 2015. We disagree that a continuous time frame between the attacks is either relevant or proportional: one year before the third attack is reasonable in light of the nature of that attack. Any negotiated time frame could apply to Plaintiffs' interrogatory request as well.

3. **Document Categories**

We asked you to raise any objections you had to the variety of documents that the Bank agreed to provide in its responses and objections. During that discussion, you raised

questions concerning the materiality threshold, SWIFT records, and account opening
documents.

    A. **<u>Materiality Threshold:</u>** We discussed the $10,000 threshold, which we proposed as
a reasonable and proportional limitation for checking account and SWIFT transactions
(in response to RFP Nos. 1 & 2). Some of the reasons we expressed for this threshold
include the burdens of collecting and producing such information, and that
transactions below that amount would not be material in establishing substantial
assistance under the ATA and would not be material to the jurisdictional inquiry. We
also explained that IHH is a large Turkish charity that is likely to have thousands of
donors in Turkey whose small value donations and identities are not at all relevant to
Plaintiffs' claims. You noted that Plaintiffs may agree to a materiality threshold for
transactions in local currency, but may not agree that a threshold should apply to US
dollar transfers through the United States. We understand that you will revert to us for
further discussion.

    B. **<u>SWIFT Records:</u>** Regarding SWIFT transactions in RFP No. 2, the Bank has agreed to
produce data from the key SWIFT data fields for US dollar transfers effectuated
through the United States. You indicated that data from MT202 messages should be
included. We explained our view that MT202 messages do not appear relevant
because those relate to bank-to-bank transfers. You indicated that MT202 messages
may be relevant here because, in some other cases you are involved in or aware of,
individual customers may be behind MT202 transfers. However, we note that Plaintiffs
make no such allegations in this case. Nonetheless, the Bank is considering Plaintiffs'
position.

    C. **<u>Account Opening Documents:</u>** We also clarified our objections and proposal
regarding account opening documentation. As we noted, the Bank plans to produce
account opening documentation (regardless of the date of account opening) for any of
the three alleged customers at-issue (if any) that had any transactions in the relevant
time frame (which we are negotiating with you as noted above). We noted, however,
that the Bank would not produce account opening documentation for a person who
did not have transactions within the relevant time frame. We hope this clarified our
position.

Best,
Gabby

Gabrielle Pritsker
Partner
**<u>JONES DAY® – One Firm Worldwide</u>**℠
51 Louisiana Ave., N.W.
Washington, D.C. 20001-2113
Office +1.202.879.3685

---

**From:** Pritsker, Gabrielle E.
**Sent:** Monday, May 5, 2025 4:10 PM
**To:** Kevin Attridge <KAttridge@steinmitchell.com>; Goldberg Knox, Emily

<egoldbergknox@jonesday.com>; RHamburg@mayerbrown.com; Cottreau, Steve
<scottreau@jonesday.com>; Habib, Fahad A. <fahabib@JonesDay.com>; CHoupt@mayerbrown.com;
MHanchet@mayerbrown.com
**Cc:** Robert Gilmore <RGilmore@steinmitchell.com>; Jonathan Missner <JMissner@steinmitchell.com>;
Gary M. Osen <gosen@osenlaw.com>; Michael Radine <mradine@osenlaw.com>; Dina Gielchinsky
<dgielchinsky@osenlaw.com>; Aaron Schlanger <aschlanger@osenlaw.com>; ctlaw@mm-law.com; Ari
Ungar <aungar@osenlaw.com>
**Subject:** RE: Henkin v. Kuveyt Turk - Meet & Confer

Thanks Kevin,

I just sent through an invitation for Wednesday morning.

Best,
Gabby

Gabrielle Pritsker
Partner
**JONES DAY® – One Firm Worldwide℠**
51 Louisiana Ave., N.W.
Washington, D.C. 20001-2113
Office +1.202.879.3685

---

**From:** Kevin Attridge <KAttridge@steinmitchell.com>
**Sent:** Monday, May 5, 2025 9:52 AM
**To:** Pritsker, Gabrielle E. <gpritsker@jonesday.com>; Goldberg Knox, Emily
<egoldbergknox@jonesday.com>; RHamburg@mayerbrown.com; Cottreau, Steve
<scottreau@jonesday.com>; Habib, Fahad A. <fahabib@jonesday.com>; CHoupt@mayerbrown.com;
MHanchet@mayerbrown.com
**Cc:** Robert Gilmore <RGilmore@steinmitchell.com>; Jonathan Missner <JMissner@steinmitchell.com>;
Gary M. Osen <gosen@osenlaw.com>; Michael Radine <mradine@osenlaw.com>; Dina Gielchinsky
<dgielchinsky@osenlaw.com>; Aaron Schlanger <aschlanger@osenlaw.com>; ctlaw@mm-law.com; Ari
Ungar <aungar@osenlaw.com>
**Subject:** Re: Henkin v. Kuveyt Turk - Meet & Confer

Gabby, thanks. We have a conflict tomorrow at 4pm, but we are open tomorrow from 9-10am ET
and on Wednesday from 9-11am ET. If any of those times work on your end, please circulate an
invite.

Best regards,
Kevin

**Kevin L. Attridge**
**Stein Mitchell Beato & Missner LLP**
2000 K Street, NW Suite 600
Washington DC 20006
**D** 202.661.0907

**C** 202.380.7870
kattridge@steinmitchell.com
www.steinmitchell.com

**********************************************************
The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Stein Mitchell Beato & Missner LLP. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by reply or by telephone at (202) 737-7777, and immediately destroy this communication and all copies thereof, including all attachments.
**********************************************************

**From:** Pritsker, Gabrielle E. <gpritsker@jonesday.com>
**Date:** Monday, May 5, 2025 at 9:23 AM
**To:** Kevin Attridge <KAttridge@steinmitchell.com>, Goldberg Knox, Emily <egoldbergknox@jonesday.com>, RHamburg@mayerbrown.com <RHamburg@mayerbrown.com>, Cottreau, Steve <scottreau@jonesday.com>, Habib, Fahad A. <fahabib@jonesday.com>, CHoupt@mayerbrown.com <CHoupt@mayerbrown.com>, MHanchet@mayerbrown.com <MHanchet@mayerbrown.com>
**Cc:** Robert Gilmore <RGilmore@steinmitchell.com>, Jonathan Missner <JMissner@steinmitchell.com>, Gary M. Osen <gosen@osenlaw.com>, Michael Radine <mradine@osenlaw.com>, Dina Gielchinsky <dgielchinsky@osenlaw.com>, Aaron Schlanger <aschlanger@osenlaw.com>, ctlaw@mm-law.com <ctlaw@mm-law.com>
**Subject:** RE: Henkin v. Kuveyt Turk - Meet & Confer

Counsel,

I hope you had a nice weekend. Our apologies but 3 pm ET today does not work for our side. We are available tomorrow at 4 pm ET and can send a calendar invitation if that works.

Best,
Gabby


Gabrielle Pritsker
Partner
**JONES DAY® – One Firm Worldwide℠**
51 Louisiana Ave., N.W.
Washington, D.C. 20001-2113
Office +1.202.879.3685

**From:** Pritsker, Gabrielle E.
**Sent:** Friday, May 2, 2025 7:45 PM
**To:** Kevin Attridge <KAttridge@steinmitchell.com>; Goldberg Knox, Emily <egoldbergknox@jonesday.com>; RHamburg@mayerbrown.com; Cottreau, Steve

[scottreau@jonesday.com](scottreau@jonesday.com); Habib, Fahad A. <[fahabib@JonesDay.com](fahabib@JonesDay.com)>; [CHoupt@mayerbrown.com](CHoupt@mayerbrown.com); [MHanchet@mayerbrown.com](MHanchet@mayerbrown.com)
**Cc:** Robert Gilmore <[RGilmore@steinmitchell.com](RGilmore@steinmitchell.com)>; Jonathan Missner <[JMissner@steinmitchell.com](JMissner@steinmitchell.com)>; Gary M. Osen <[gosen@osenlaw.com](gosen@osenlaw.com)>; Michael Radine <[mradine@osenlaw.com](mradine@osenlaw.com)>; Dina Gielchinsky <[dgielchinsky@osenlaw.com](dgielchinsky@osenlaw.com)>; Aaron Schlanger <[aschlanger@osenlaw.com](aschlanger@osenlaw.com)>; [ctlaw@mm-law.com](ctlaw@mm-law.com)
**Subject:** RE: Henkin v. Kuveyt Turk - Meet & Confer

Counsel,

We are checking on our side whether that timing works and will be in touch.

Best,
Gabby

Gabrielle Pritsker
Partner
**JONES DAY® – One Firm Worldwide℠**
51 Louisiana Ave., N.W.
Washington, D.C. 20001-2113
Office +1.202.879.3685

---

**From:** Kevin Attridge <[KAttridge@steinmitchell.com](KAttridge@steinmitchell.com)>
**Sent:** Friday, May 2, 2025 4:23 PM
**To:** Pritsker, Gabrielle E. <[gpritsker@jonesday.com](gpritsker@jonesday.com)>; Goldberg Knox, Emily <[egoldbergknox@jonesday.com](egoldbergknox@jonesday.com)>; [RHamburg@mayerbrown.com](RHamburg@mayerbrown.com); Cottreau, Steve <[scottreau@jonesday.com](scottreau@jonesday.com)>; Habib, Fahad A. <[fahabib@jonesday.com](fahabib@jonesday.com)>; [CHoupt@mayerbrown.com](CHoupt@mayerbrown.com); [MHanchet@mayerbrown.com](MHanchet@mayerbrown.com)
**Cc:** Robert Gilmore <[RGilmore@steinmitchell.com](RGilmore@steinmitchell.com)>; Jonathan Missner <[JMissner@steinmitchell.com](JMissner@steinmitchell.com)>; Gary M. Osen <[gosen@osenlaw.com](gosen@osenlaw.com)>; Michael Radine <[mradine@osenlaw.com](mradine@osenlaw.com)>; Dina Gielchinsky <[dgielchinsky@osenlaw.com](dgielchinsky@osenlaw.com)>; Aaron Schlanger <[aschlanger@osenlaw.com](aschlanger@osenlaw.com)>; [ctlaw@mm-law.com](ctlaw@mm-law.com)
**Subject:** Re: Henkin v. Kuveyt Turk - Meet & Confer

Counsel,

We are available to meet and confer at 3pm EST on Monday.  Please send a Zoom invite for that time. Meanwhile, thank you for replying to my email from Monday, April 28th. Below you will find our clarifications and corrections in response to your email.

**RFP Entities and Individuals**: It appears that you have misconstrued our request as proposed during the meet and confer. Rob Gilmore specifically asked whether your client would be willing to run account searches in its system for *each* entity listed in the RFPs – a threshold exercise he stated would pose little burden in an effort to identify customers.

The request relating to the SDGTs is separate, and was raised for the purpose of understanding your client's position on producing *documents* (opposed to just accountholder statuses) for individual and entity accountholders beyond the three found in the complaint.  As Gary Osen stated during our meeting, SDGTs are highly relevant

discovery targets and Defendant's position regarding these subjects would therefore indicate whether it has *any* willingness to produce documents beyond the three accountholders. Please let us know whether your client is willing to execute the account search and provide its position on producing documents relating to SDGTs, as set forth above and in my previous email.

**<u>Temporal Scope for RFPs</u>**: During the call, we stated that Defendant's objections to the RFPs' temporal scope contradicted the law and offered to provide cases demonstrating the validity of our requested scope (which we sent to you in a follow-up email). Regardless, we interpret from your email that you are willing to confer with your client about this issue and provide a response.

**<u>Document Categories</u>**: Contrary to your characterization, it appears that the parties have the same understanding of Defendant's position regarding the requested scope of document categories. You expressed during our call, as reflected in my prior email, that Defendant needs "an assessment on a customer-specific basis." Therefore, we never suggested that Defendant intended to provide "a definitive answer in a vacuum" at this time.

**<u>Expanded RFPs</u>**: We proposed to expedite the service of expanded RFPs to streamline discovery for Defendant's benefit. In other words, this was nothing more than us offering an *option* for Defendant to address inevitable discovery requests. Although it is curious why you are declining to raise our offer with your client, your response makes clear that you are unwilling to provide us with a response "at this time." We request that you let us know whether you plan to raise our offer with your client at any time in the near future.

Best regards,
Kevin

**Kevin L. Attridge**
**Stein Mitchell Beato & Missner LLP**
2000 K Street, NW Suite 600
Washington DC 20006
**D** 202.661.0907
**C** 202.380.7870
kattridge@steinmitchell.com
www.steinmitchell.com

**********************************************************
The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee.  It is the property of Stein Mitchell Beato & Missner LLP.  If the reader of this message is not the intended recipient or the employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by reply or by telephone

at (202) 737-7777, and immediately destroy this communication and all copies thereof, including all attachments.
***********************************************************

---

**From:** Pritsker, Gabrielle E. <gpritsker@jonesday.com>
**Date:** Thursday, May 1, 2025 at 8:05 PM
**To:** Kevin Attridge <KAttridge@steinmitchell.com>, Goldberg Knox, Emily <egoldbergknox@jonesday.com>, RHamburg@mayerbrown.com <RHamburg@mayerbrown.com>, Cottreau, Steve <scottreau@jonesday.com>, Habib, Fahad A. <fahabib@jonesday.com>, CHoupt@mayerbrown.com <CHoupt@mayerbrown.com>, MHanchet@mayerbrown.com <MHanchet@mayerbrown.com>
**Cc:** Robert Gilmore <RGilmore@steinmitchell.com>, Jonathan Missner <JMissner@steinmitchell.com>, Gary M. Osen <gosen@osenlaw.com>, Michael Radine <mradine@osenlaw.com>, Dina Gielchinsky <dgielchinsky@osenlaw.com>, Aaron Schlanger <aschlanger@osenlaw.com>, ctlaw@mm-law.com <ctlaw@mm-law.com>
**Subject:** RE: Henkin v. Kuveyt Turk - Meet & Confer

Counsel,

Thank you for this summary. We seek to clarify our position and understanding below. In addition, we will need more time to discuss with our client but propose we have another meet and confer this upcoming Monday. Please let us know available times on your side.

**Turkish Law**: Your summary below omits our discussion regarding any potential Turkish law constraints. As we explained on the call, while the concepts and principles are similar between Turkish law and Rule 26, the analysis for each is separate and will depend on the context. As we noted, we will need to consult with our client and potentially Turkish law experts about any expansion of discovery beyond that contemplated in the Bank's responses and objections to plaintiffs' discovery requests.

**RFP Entities and Individuals**: We have a slightly different understanding of what you asked us to discuss with our client with regard to the entities and individuals identified in the RFPs. Specifically, we understood you to ask whether the Bank is willing to (1) identify whether any of the SDGTs listed in the RFPs are or were Bank customers and (2) produce information on those entities and individuals that are customers, if any. In other words, we did not understand Plaintiffs to be requesting that we consider searching for all of the entities and individuals listed in the RFPs, the majority of which are not named in the Complaint or alleged to have any connection to the Bank.

**Temporal Scope for RFPs**: We agree that you raised arguments as to why your request for 3.5 years prior to and a month or so after the relevant attacks is valid. During the call, we stated our own view that the time frame before the attacks is too long, particularly given the nature and history of these three particular attacks, which are the focus of the factual inquiry. For the time post-dating the attacks, we indicated our willingness to consider specific document types. We did not discuss taking this issue to our client. We are considering the issue and will come back to you on it.

**Document Categories**: We disagree with your summary of our discussion regarding the document categories. During the meet and confer, you asked us to clarify the meaning of the Turkish law restriction allowing production of only what is "necessary for the proof of the claim or defense." We indicated that we could not resolve this issue in generalities and that a response to this inquiry is context specific. As such, we could not provide a definitive answer in a vacuum.

**Expanded RFPs**: We agree that you offered to serve expanded discovery to minimize (in your view) the Bank's collection efforts, but we did not agree to discuss the proposal with our client and return to you with an answer at this time. Kuveyt Türk reserves its right to identify valid objections to Plaintiffs' discovery requests, including but not limited to burden. We will provide objections in response to your additional discovery requests as may be applicable.

Please let us know your availability on Monday to discuss the above.

Best,
Gabby

Gabrielle Pritsker
Partner
**JONES DAY® – One Firm Worldwide℠**
51 Louisiana Ave., N.W.
Washington, D.C. 20001-2113
Office +1.202.879.3685

---

**From:** Kevin Attridge <KAttridge@steinmitchell.com>
**Sent:** Monday, April 28, 2025 5:48 PM
**To:** Goldberg Knox, Emily <egoldbergknox@jonesday.com>; RHamburg@mayerbrown.com; Cottreau, Steve <scottreau@jonesday.com>; Pritsker, Gabrielle E. <gpritsker@jonesday.com>; Habib, Fahad A. <fahabib@jonesday.com>; CHoupt@mayerbrown.com; MHanchet@mayerbrown.com
**Cc:** Robert Gilmore <RGilmore@steinmitchell.com>; Jonathan Missner <JMissner@steinmitchell.com>; Gary M. Osen <gosen@osenlaw.com>; Michael Radine <mradine@osenlaw.com>; Dina Gielchinsky <dgielchinsky@osenlaw.com>; Aaron Schlanger <aschlanger@osenlaw.com>; ctlaw@mm-law.com
**Subject:** Re: Henkin v. Kuveyt Turk - Meet & Confer

Counsel:

I am writing to summarize this morning's discovery meet-and-confer. Please let us know if anything below is inconsistent with Defendant's recollection or understanding.

**RFP Entities and Individuals**

We first discussed the entities and individuals listed in plaintiffs' RFPs 1 and 2 beyond the three accountholders specifically identified in the Amended Complaint ("RFP Entities") as Defendant's customers. During that discussion, we explained that the RFP Entities are a substantially narrowed set of HAMAS-affiliated parties that have significant connections to Turkey, recipients of funds from Turkey or Hamas operatives linked to Turkey or Hamas's leadership in Turkey. Plaintiffs' position is that *if* an RFP Entity is a current or former customer of defendant, then producing the customer's records are relevant and

proportional for discovery.

Accordingly, we proposed a two-step approach to determine whether the gaps in the parties' positions on discovery in relation to the RFP Entities is bridgeable. First, Defendant would undertake a *threshold* search to determine whether any of the RFP Entities are current or former accountholders. We explained that the threshold search would place little burden on Defendant. You stated that you will confer with your client to determine its willingness to conduct those searches and will respond with Defendant's position by the end of the week.

For the second step, we requested that you confer with your client to determine its position on producing information relating to accountholders that have been designated as State Designated Global Terrorists, or SDGTs, recognizing that if Defendant's position is that accounts for Hamas-affiliated SDGT are not relevant, then further discussions about other RFP Entities are unlikely to be productive. You agreed to discuss this proposal with your client and provide a response to us by the end of this week.

### Temporal Scope for RFPs
We discussed that the RFPs request that defendant provides information for 3.5 years before first attack through the period a month after the final attack. Defendant's position is that this temporal scope for the RFPs is unreasonable. As we explained on the call, in addition to the fact that the amount and duration of assistance are key elements to plaintiffs' aiding and abetting claims, numerous cases have addressed this same issue and demonstrate that plaintiffs' temporal scope is well within the parameters of valid discovery. *See, e.g.*, *King v. Habib Bank Ltd.*, No. 20CV4322LGSOTW, 2023 WL 3558773 (S.D.N.Y. Apr. 21, 2023) (permitting discovery for 4 years prior to attack); *Miller v. Arab Bank*, PLC, No. 1:18-CV-2192 (HG)(PK), 2023 WL 2731681 (E.D.N.Y. Mar. 31, 2023) (same); *Bartlett v. Societe Generale de Banque au Liban SAL*, No. 19-CV-7 (CBA) (TAM), 2023 WL 2734641 (E.D.N.Y. Mar. 31, 2023) (up to 1 year after attack). You agreed to confer with your client regarding the temporal scope of plaintiffs' RFPs and provide a response to us by the end of this week.

### Document Categories
We also discussed Plaintiffs' request for all account-related documents and funds transfer records. You stated that defendant needs to first address the threshold proposals above, because determining defendant's position on the scope of the categories of documents requested will require an assessment on a customer-specific basis.

### Expanded RFPs
We offered to serve expanded discovery requests to facilitate Defendant's collection effort, *i.e.*, expand the requests to include e-mails and other communications to allow for Defendant to collect responsive information all at once. You agreed to discuss this proposal with your client. We ask that you provide us with a response by the end of this

week.

## **Pre-motion Procedure**

Both parties agreed that Judge Cogan's pre-motion procedure, including the filing a joint letter and holding a hearing in advance of the motion to compel, is likely not necessary because the Case Management Plan anticipates the motion to compel. You agreed that Defendant will not later argue that Plaintiffs were required to undertake Judge Cogan's (default) pre-motion procedure.

## **Translations of Relevant Turkish Law**

We requested that you provide use with the relevant Turkish Law raised in your April 14, 2025 letter. You stated that all relevant laws (in English) are provided through the links in your letter.


Best regards,
Kevin


**Kevin L. Attridge**
**Stein Mitchell Beato & Missner LLP**
2000 K Street, NW Suite 600
Washington DC 20006
**D** 202.661.0907
**C** 202.380.7870
kattridge@steinmitchell.com
www.steinmitchell.com

**********************************************************
The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee.  It is the property of Stein Mitchell Beato & Missner LLP.  If the reader of this message is not the intended recipient or the employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by reply or by telephone at (202) 737-7777, and immediately destroy this communication and all copies thereof, including all attachments.
**********************************************************


***This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.***
***This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.***
***This e-mail (including any attachments) may contain information that is private,

confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.***

***This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.***

***This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.***