Stein Mitchell
Beato & Missner LLP

KEVIN L. ATTRIDGE
kattridge@steinmitchell.com | Direct 202.601.0907

2000 K Street, NW Suite 600
Washington, DC 20006

P 202.737.7777
F 202.296.8312

www.steinmitchell.com

June 17, 2026

**VIA ECF**

Hon. Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

**Re: Plaintiffs' Request for Leave to Exceed Word Limit**
***Estate of Eitam Henkin, et al. v. Kuveyt Türk Katılım Bankası A.Ş.***
**No. 1:19-cv-05394-BMC**

Dear Judge Cogan:

This firm, Stein Mitchell Beato & Missner LLP, along with Osen LLC and MM-Law LLC, represent the Plaintiffs in the above-referenced action. Pursuant to the Court's April 24, 2026 Order Bifurcating Liability and Damages Discovery, ECF No. 122, and its May 4, 2026 Order Adopting Kuveyt Türk Katılım Bankası A.Ş.'s ("Defendant") and Plaintiffs' (together, the "Parties") Joint Proposed Second Amended Discovery Plan, ECF No. 123, the Parties' deadline to file motions to compel and any protective order motions relating to Turkish bank secrecy or assertion of attorney-client privilege or other protections is approaching on June 30, 2026.

Plaintiffs anticipate that addressing the many issues that the Parties have been unable to resolve will require more than 8,750 words to adequately brief, and therefore respectfully request leave to exceed the 8,750-word limit set forth in Your Honor's June 2026 Individual Practice Rule III(C)(1) and Local Rule 7.1(c). Specifically, Plaintiffs request an enlargement of their (1) opening Motion to Compel brief to 12,500 words[1] and (2) reply brief to 5,000 words.

Defendant opposes the relief requested on grounds that the number of unresolved issues is Plaintiffs' fault because they delayed in raising these disputes; Defendant contends that Plaintiffs should further meet and confer to attempt to resolve the disputes rather than seek more pages to address the disputes with the Court.

Unfortunately, Defendant backloaded its productions until the end of the document discovery period. Though Plaintiffs served their operative requests for production on February 6 and July 18, 2025, and repeatedly implored Defendant to commence its document productions on a rolling basis (particularly after the Court had ruled on the motion to compel and underscored Defendant's discovery obligations), Defendant did not make its first production until December 30, 2025, more than five months after the last requests were

[1] We request the same number of words for the Defendant's opposition.

served. And that initial production itself only comprised policies and procedures documents and public annual reports. Defendant did not make its first substantive production of banking statements, risk-ranking data, and transaction monitoring alert records until February 26, 2026, and did not produce the first set of SWIFT messages until March 12, 2026. In fact, the bulk of the parties' disputes that will require judicial intervention pertain to the documents Defendant produced on April 10, 2026. And Defendant continued making significant productions on the eve of the documentary discovery deadline, with productions on April 20, 29, and 30, 2026, and May 22, 2026, followed by its privilege log served on May 12, 2026.

It has therefore taken Plaintiffs considerable time to review and analyze the bank's long-delayed document and data productions, particularly given that some of those productions were in a native raw data format, and many documents were in Turkish.[2] The Parties have exchanged 21 letters regarding Defendant's document and written discovery since late April and have taken part in three lengthy videoconferences to attempt to resolve these discovery disputes. Plaintiffs have repeatedly asked Defendant at the very least to confirm whether the parties are at an impasse with respect to these disputes sufficiently in advance of the approaching motion to compel deadline in two weeks.

At the time of this filing the disputes that remain between the parties include, but are not limited to:

- Defendant has produced records for a main branch of one customer, but has not produced any records for 39 branches and affiliates of the same customer on the ground that they were not listed in the amended complaint and are therefore not relevant;
- Defendant has limited certain categorical discovery to only the four bank customers and not the full list of 19 individuals and entities identified in the Court's prior orders (ECF Nos. 99 & 105);
- Based upon Plaintiffs' review of Defendant's productions, Plaintiffs identified multiple additional Hamas-associated accountholders and counterparties for whom Plaintiffs requested Defendant search for account, transaction, and compliance records. Defendant has not yet agreed to search for these records, let alone produce them;
- Similarly, based upon Plaintiffs' review of Defendant's productions, Plaintiffs identified multiple account numbers for which Plaintiffs requested Defendant apply previously agreed-upon search terms. Defendant has not yet agreed to search for these records, let alone produce them;
- Defendant has sought to substitute a log of transactions instead of the actual business records reflecting such transactions;

[2] Moreover, Plaintiffs raised several issues earlier in discovery, but only after Plaintiffs actually received and analyzed Defendant's documents were Plaintiffs able to confirm that the collection and production deficiencies they had previously identified were in fact material.

- Defendant has withheld or redacted 195 pages of records based on assertions of relevance, Turkish bank secrecy laws, "Turkish professional privilege," and purported "third-party privacy" interests;
- Defendant has declined to produce multiple responsive compliance records, including but not limited to risk scoring methodology and due diligence records. This dispute includes Defendant's attempt to substitute a log of compliance issues rather than the underlying documentation;
- Defendant has declined to search all relevant custodian files for responsive records; and
- Defendant has yet to clarify whether it has searched and produced all documents associated with deposits, checks, cash transactions, and gold (XAU) activity, among other categories of documents, including by declining to clarify whether such records exist.

This is a non-exhaustive list of the number of discovery disputes that remain outstanding at the time of this correspondence. As the list demonstrates, the number and complexity of disputes (assuming they remain unresolved before the June 30 deadline) will be difficult to sufficiently address within the default word limit.

Plaintiffs' request for extended briefing is timely as Plaintiffs are raising this issue consistent with the requirements of the Court's Individual Practices. Plaintiffs thank the Court for its consideration of this request.

Respectfully Submitted,

*/s/ Kevin L. Attridge*
Kevin L. Attridge (*pro hac vice*)

*Counsel for Plaintiffs*

CC: All Counsel of Record (via ECF)